UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| UNITEDHEALTHCARE SERVICES, INC., *et al.*, | ) ) ) | 3:21-CV-00364-DCLC-JEM |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| TEAM HEALTH HOLDINGS, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Team Health Holdings, Inc., AmeriTeam Services, LLC, and HCFS Health Care Financial Services, LLC, (collectively, "TeamHealth") Motion to Dismiss [Doc. 25]. Plaintiffs United HealthCare Services, Inc., United Healthcare Insurance Company, and UMR, Inc. (collectively, "United") responded [Doc. 41], and TeamHealth replied [Doc. 44]. This matter is now ripe for resolution. For the reasons that follow, Defendants' Motion to Dismiss [Doc. 25] is **DENIED**.

**I.      BACKGROUND**

United insures and offers claims administration services for healthcare plans offered by employers [Doc. 1, ¶¶ 14-16]. United also funds and administers fully insured healthcare plans [*Id.*, ¶ 26]. It pays claims for medical services submitted to its plans from its own assets [*Id.*]. United additionally provides self-funded healthcare plans, which are funded by contributions from employers and employees [*Id.*, ¶ 27]. It acts as a claims administrator for these plans and provides its services according to Administrative Services Agreements ("ASAs") [*Id.*]. By acting under the ASAs, United is a fiduciary for those plans under the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1002(21)(A) [*Id.*, ¶ 28]. Moreover, the ASAs allow United to recover

1

overpayments on claims resulting from fraud or abuse [*Id.*, ¶ 29]. United does not identify in its Complaint the specific ERISA plans at issue in this case but states that it will "following the entry of a HIPAA-qualified protective order." [*Id.*, ¶ 31].

TeamHealth is one of the largest emergency room staffing, billing, and collections companies in the United States [*Id.*, ¶ 41]. Specifically, TeamHealth acquires medical groups, who then contract with hospitals to staff emergency rooms with doctors and medical personnel [*Id.*, ¶¶ 42-43]. United asserts that TeamHealth operates through a "web of subsidiaries, affiliates, and contractors" known as the TeamHealth System [*Id.*, ¶ 44]. Team Health Holdings, Inc. is a Delaware corporation that is a holding company for the TeamHealth System [*Id.*, ¶ 18]. AmeriTeam Services, LLC is a Tennessee company that employs the officers and administrators of the TeamHealth System, sets policies for the System, and provides support operations to the System [*Id.*, ¶ 19]. HCFS Health Care Financial Services, LLC is a Florida company that provides billing, coding, and collection services for TeamHealth's medical groups [*Id.*, ¶ 20]. In 2017, Blackstone, a private equity firm, acquired TeamHealth for $6.1 billion [*Id.*, ¶ 41].[1]

United processes and pays close to one million insurance claims every day [*Id.*, ¶ 32]. It explains that the volume of claims it processes prevents it from reviewing each and every claim thoroughly [*Id.*]. The claims it receives typically are unaccompanied by medical records to substantiate the services provided in the claim [*Id.*, ¶ 33]. United uses a "largely automated" system to process claims, and it relies "on [medical] providers to supply truthful and accurate information with insurance claims," requiring that providers attest to the accuracy of the claims that they submit [*Id.*, ¶ 34]. TeamHealth is one of the providers that regularly submits claims to United. When submitting claims, TeamHealth uses Current Procedural Terminology ("CPT")

---

[1] Blackstone manages approximately $915 billion in assets. *See* https://www.blackstone.com/the-firm/.

codes and a standardized form that includes a certificate attesting the claim is "true, accurate, and complete." [*Id.*, ¶¶ 36-38]. CPT codes denote the type and degree of medical care that a patient received from a provider [*Id.*, ¶ 38].

TeamHealth uses non-medical staff to bill claims to insurers and claims administrators, like United [*Id.*, ¶ 47]. HCFS Health Care Financial Services, LLC ("HCFS"), specifically is the entity that performs the billing and coding for TeamHealth [*Id.*]. United contends that HCFS bills claims administrators according to policies set by Team Health Holdings, Inc. and AmeriTeam Services, LLC [*Id.*]. TeamHealth's medical personnel are not involved in the billing or coding process [*Id.*, ¶¶ 48-49].

United contends that, "[s]ince at least 2016," TeamHealth covertly and methodically engaged in upcoding [*Id.*, ¶ 1]. Upcoding occurs when a medical provider submits a claim using an inaccurate CPT code that denotes a higher level of medical care than was provided to receive a larger payment for the services actually rendered by the provider [*Id.*, ¶ 56]. In short, upcoding causes a claims administrator to overpay on a claim for medical services [*Id.*]. For emergency room services, TeamHealth uses CPT codes ranging from 99281 to 99285, with higher numbers indicating "more extensive and complex treatment" that is charged at a higher rate [*Id.*, ¶ 59]. For example, United pays on average $57.68 for services coded at 99281 while paying $446.61 for services coded at 99285 [*Id.*, ¶ 60]. Services coded at 99285 typically require medical professionals to treat problems of "high severity [that] pose an immediate significant threat to life or physiologic function." [*Id.*, ¶ 63]. According to United, some examples of medical issues coded at 99285 are critical trauma, chest pain, sepsis, third- and fourth-degree burns, hypothermia, and severe respiratory issues [*Id.*, ¶ 66]. Similarly, services coded at 99284 require medical professionals to treat problems of "high severity [that] require urgent evaluation." [*Id.*, ¶ 65]. Some examples of medical issues coded at 99284 are head injuries accompanied by the loss of

3

consciousness, kidney stones, dehydration requiring admission, headaches requiring admission, and abdominal pain substantiated with advanced imaging [*Id.*, ¶ 66].

In 2020, United analyzed claims submitted by TeamHealth and determined that 51% of its claims were coded at 99285 [*Id.*, ¶ 68]. United requested medical records from TeamHealth for 26,000 of those claims and determined that 62% of claims TeamHealth coded at 99285 and 99284 were not supported by medical records [*Id.*, ¶ 70]. According to United, those claims should have used lower CPT codes [*Id.*]. In 2021, United began reviewing all TeamHealth claims using the 99284 and 99285 codes [*Id.*, ¶ 71]. United explains that, so far, it has reviewed 47,000 TeamHealth claims and determined that 75% of those claims using the 99285 CPT code could not be supported by medical records [*Id.*, ¶ 72].

United does not list every claim it alleges TeamHealth improperly coded but does list 13 examples of allegedly improper 99285-coded claims that it found [*Id.*, ¶¶ 73-86]. Those examples include a patient diagnosed with strep throat who was given antibiotics and discharged, a patient who had a psoriatic arthritis flare up that was prescribed painkillers and discharged, a patient who complained of lower back pain with no previous history of such pain that was prescribed pain and anxiety medication and discharged, and a patient who complained of gastric pain after eating a chili dog at 12:00 a.m. who was given Maalox and discharged [*Id.*, ¶¶ 74-75, 79, 84]. United contends that these examples are representative of thousands of claims [*Id.*, ¶ 87].

United asserts that TeamHealth's upcoding was deliberate and fraudulent [*Id.*, ¶ 89]. United explains that TeamHealth's billing staff are not certified professional coders and that TeamHealth trains its billing staff itself using its own policies [*Id.*]. United states that TeamHealth's rate of 99284 and 99285 codes greatly exceeds the error rate for such codes, indicating intentional upcoding by TeamHealth [*Id.*, ¶ 91]. United similarly alleges that TeamHealth's rate of improper coding shows that it has a uniform policy and practice of upcoding

4

[*Id.*, ¶ 93].  United contends that "[m]uch of the direct evidence" for TeamHealth's alleged upcoding remains in TeamHealth's possession [*Id.*, ¶ 94].  United, however, asserts that documents from a separate whistleblower action against TeamHealth show that it imposed quotas for 99291 and 99292 codes, which denote medical services for critical care to critically ill or injured patients [*Id.*, ¶ 96].

United states that TeamHealth's alleged upcoding was difficult to uncover because of the number of separate affiliates and subsidiaries TeamHealth used to carry out its scheme [*Id.*, ¶ 104].  It contends that TeamHealth refused to identify all of its affiliates, which further obscured TeamHealth's alleged upcoding [*Id.*].  United estimates that it has overpaid on approximately 60% of TeamHealth claims using codes 99284 and 99285, presumably dating back to 2016 [*Id.*, ¶ 108].  United explains that, because of the volume of claims and the sensitive nature of the documents, it will produce "information identifying the universe of claims" after the entry of a HIPAA-qualified protective order [*Id.*, ¶ 109].

In addition to upcoding, United alleges that TeamHealth artificially inflates the charges for its services, demanding as much as three or four times the rates of other medical providers [*Id.*, ¶¶ 111-16].  United further alleges that TeamHealth bills for services performed by non-physician medical professionals as if a physician had performed those services, which results in a higher payment for TeamHealth [*Id.*, ¶¶ 123-30].  Moreover, TeamHealth allegedly engages in pass-through billing, wherein it bills for a provider's services using a different provider's credentials because the latter provider has a contract with an insurer while the former provider does not [*Id.*, ¶¶ 132-35].  Pass-through billing allows TeamHealth to be paid at, presumably, higher contract rates for services performed by a non-contracted provider [*Id.*, ¶ 132].

United brings the instant suit to recover for TeamHealth's alleged systemic upcoding and other improper activities.  In its Complaint, United alleges claims for: (1) common law fraud under

5

Tennessee law; (2) common law negligent misrepresentation under Tennessee law; (3) fraudulent insurance acts under Tenn. Code Ann. § 56-53-102; (4) unlawful insurance acts under Tenn. Code Ann. § 56-53-103; (5) violations of the Tennessee Consumer Protection Act ("TCPA") and the consumer protection statutes in California, Colorado, Florida, Illinois, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New York, and North Carolina; (6) declaratory and injunctive relief under ERISA; (7) civil violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act under 18 U.S.C. § 1962(c); (8) conspiracy to commit civil violations of the RICO Act under 18 U.S.C. § 1962(d); and (9) unjust enrichment [*Id.*, ¶¶ 137-240]. United asserts that any statute-of-limitations periods that apply to its claims were tolled before it discovered TeamHealth's alleged systemic upcoding because it lacked knowledge about TeamHealth's activities, and TeamHealth intentionally hid its actions from United [*Id.*, ¶ 136]. TeamHealth now moves to dismiss United's complaint [Doc. 25].

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court liberally construes the complaint in favor of the opposing party. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

To survive dismissal, the plaintiff must allege facts that are sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and dismissal is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In addition to the allegations contained in the complaint, a court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" in ruling on a 12(b)(6) motion to dismiss. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted). The Court also may take "judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).

## III.    DISCUSSION

### A.    Whether United's claims are barred by the statutes of limitations and repose

The statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c). "A motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). When the allegations in the complaint "affirmatively show that the claim is time-barred[,]" however, "dismissing the claim under Rule 12(b)(6) is appropriate." *Id.*

7

The statute of limitations for claims brought under the TCPA is one year. Tenn. Code Ann. § 47-18-110. The statute of limitations is three years under Colorado's, Illinois's, New Hampshire's, and New York's consumer protection acts from the events giving rise to the claims. Colo. Rev. Stat. § 6-1-115; 815 Ill. Comp. Stat. 505/10a; N.H. Rev. Stat. Ann. § 358-A:3; *Gaidon v. Guardian Life Ins. Co. of America*, 750 N.E.2d 1078, 1082 (N.Y. 2001). For claims under North Carolina's, Nevada's, Nebraska's, Florida's, and California's consumer protection acts, the statute of limitations is four years. N.C. Gen. Stat. § 75-16.2; Nev. Rev. Stat. 11.190(2)(d); Neb. Rev. Stat. § 59-1612; Fla Stat. § 501.207; Cal Bus. & Prof. Code § 17208. The statute of limitations for fraud, negligent misrepresentation, and unjust enrichment in Tennessee is three years when the gravamen of the complaint sounds in fraud or misrepresentation. Tenn. Code Ann. § 28-3-105. Claims for fraudulent and unlawful insurance acts under Tennessee law are subject to a five-year statute of limitations and, for claims seeking treble damages, a three-year statute of limitations. Tenn. Code Ann. §§ 56-53-107 to -107(c). Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).

The statute of limitations for a RICO claim is subject to the discovery rule, such that the limitations period does not begin to run until "a party knew, or through the exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 435 (6th Cir. 2005) (citing *Rotella v. Wood*, 528 U.S. 549, 553–55 (2000)); *see also Taylor Group v. ANR Storage Co.*, 24 F. App'x 319, 325 (6th Cir. 2001) ("The limitations period for RICO claims accrues when a plaintiff knew or should have known of an injury"). Similarly, for state tort actions under Tennessee law, the "discovery rule" determines the accrual of the claim. *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn. 1990). Under the discovery rule, "the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when[,] in the exercise of reasonable care and diligence, it should

8

have been discovered." *Id.* (citing *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975)); *see also Robinson v. Baptist Memorial Hosp.*, 464 S.W.3d 599, 608 (Tenn. Ct. App. 2014).

TeamHealth argues that United's claims are barred in part by the relevant statutes of limitations and repose [Doc. 26, pgs. 13-19]. United responds, in relevant part, that TeamHealth's arguments are not proper at this stage of litigation [Doc. 41, pg. 10]. It contends that inquiry notice is a question of fact inappropriate for resolution on a motion to dismiss [*Id.*, pgs. 11-12].

In this case, it is not possible—at this stage—to determine when the statute of limitations expired because United has alleged that TeamHealth engaged in a cover-up that prevented it from discovering TeamHealth's scheme of upcoding and billing physician's assistant services at a physician's rate. [Doc. 1, ¶¶ 104, 136]. Thus, the allegations in the complaint do not "affirmatively show that the claim is time-barred." *Cataldo*, 676 F.3d at 547. Further, it is improper to dismiss at the pleadings stage a claim where the plaintiff pleads delayed discovery. [*See* Doc. 1, ¶ 94]; *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1340 (E.D. Mich. 2011) (plaintiff's allegations that it did not discover RICO scheme until a time within the limitation period was sufficient to preclude dismissal at pleadings stage on statute of limitations grounds); *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, 2014 WL 5427170, at *7 (E.D. Mich. Oct. 24, 2014) (argument that plaintiff should have known of RICO scheme at earlier time cannot be resolved at pleadings stage). TeamHealth's motion to dismiss is **DENIED** in this respect.

### B. Whether United has stated its fraud and negligent misrepresentation claims under Fed. R. Civ. P. 9(b) and 12(b)(6)

Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, Rule 9(b) allows general allegations about a defendant's knowledge to avoid a Rule 12(b)(6) motion to dismiss. *Id.*;

*Smith v. General Motors LLC*, 988 F.3d 873, 883 (6th Cir. 2021). "The adequacy of 9(b) pleadings in the face of a motion to dismiss under 12(b)(6) are analyzed under the *Twombly/Iqbal* framework." *Smith*, 988 F.3d at 883. "To satisfy Rule 9(b), the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Id.* (internal quotations omitted). Additionally, "parties bringing a fraudulent concealment claim must specify the who, what, when, where, and how of the alleged omission." *Id.* at 884 (internal quotations omitted). The Sixth Circuit, however, reads Rule 9(b) "liberally" because of the "influence of Rule 8, which requires a short and plain statement of the claim." *Advoc. Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (internal quotations omitted).

Moreover, the Sixth Circuit has held that "it is a principle of basic fairness that a plaintiff should have an opportunity to flesh out [its] claim through evidence unturned in discovery." *Williams v. Duke Energy Intern., Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (internal quotations omitted) (alteration adopted). "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Id.* (internal quotations omitted). "Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control." *Id.* (internal quotations omitted).

Under Tennessee law, a party commits common law fraud when he "intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him." *Brown v. Birman Managed Care Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001) (internal quotes omitted). "The representation must have been made with knowledge of its falsity and with a fraudulent intent." *Id.* "The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that misrepresentation to his

injury." *Id.* at 66-67. "[T]o succeed on a claim for negligent misrepresentation, a plaintiff must establish that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information." *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (internal quotes omitted).

TeamHealth contends that United has failed to plead its fraud and negligent misrepresentation claims with sufficient particularity under Rule 9(b) [Doc. 26, pgs. 20, 22]. It contends that United's statements are conclusory and inadequate to support its claims [*Id.*, pg. 20]. TeamHealth asserts that United does not identify the number of claims at issue or the relevant time period [*Id.*]. It contends that United also fails to explain which TeamHealth subsidiaries or affiliates provided the medical services at issue [*Id.*]. TeamHealth argues that United does not identify which assertions or statements were fraudulent or misrepresented and does not provide identification to allow the Court to assess the allegations [*Id.*, pgs. 20-21].

United responds that it has satisfied the requirements of Rule 9(b) [Doc. 41, pg. 14]. It notes that it specified that TeamHealth's fraud began in 2016 and continues today [*Id.*, pg. 15]. It also notes that it alleged HCFS submitted thousands of insurance claims to United that included false information under policies set by TeamHealth Holdings and AmeriTeam Services [*Id.*]. United explains that it alleged TeamHealth used inaccurate CPT codes and falsified claims for services provided by non-physician medical personnel [*Id.*]. United also notes that TeamHealth possesses "much of the evidence of its own fraud, including the records United requires." [*Id.*, pg. 16]. Additionally, United argues that the Court must draw all reasonable inferences in its favor [*Id.*, pgs. 17-18].

United alleges the "who, what, where, when, and how" required by Fed. R. Civ. P. 9(b) by describing the nature of TeamHealth's alleged fraudulent upcoding scheme, explaining how the

scheme works, the roles of each entity involved in the scheme, and the timing of when these alleged fraudulent acts took place. *Smith*, 988 F.3d at 883; [Doc. 1, ¶¶ 1, 47-49, 56, 70-72, 89, 91, 93, 104, 108]. United lists 13 examples of alleged upcoding by TeamHealth and states that it will provide information identifying the universe of allegedly upcoded claims after the Court enters an appropriate protective order. [Doc. 1, ¶¶ 73-86, 109]. The 13 examples bolster United's fraud and negligent misrepresentation claims, further showing that United pleaded those claims with sufficient particularity. Thus, United pleads the elements of common law fraud and negligent misrepresentation with sufficient particularity as to TeamHealth. Fed. R. Civ. P. 9(b). Accordingly, TeamHealth's motion to dismiss is **DENIED** in this respect.

### C.    Whether United has stated a claim for fraudulent and unlawful insurance acts

A party commits a fraudulent insurance act under Tenn. Code Ann. § 56-53-102 when he presents information containing false representations related to a claim for payment or benefit pursuant to an insurance policy. Tenn. Code Ann. § 56-53-102. Further, Tenn. Code Ann. § 56-53-102(b) makes it unlawful to attempt to commit a fraudulent insurance act as defined above. *Id.* § 56-53-102(b). A person who violates Tenn. Code Ann. § 56-53-102 faces criminal penalties. *Id.* § 56-53-104. Similarly, Tenn. Code Ann. § 56-53-103 prohibits the same conduct as § 56-53-102 and imposes civil remedies for injured parties. *Id.* §§ 56-53-103, 56-53-107.

TeamHealth contends that United has failed to state a claim for fraudulent or unlawful insurance acts under Tennessee law [Doc. 26, pg. 22-24]. It asserts that United did not identify specific instances of fraud or unlawful insurance acts. [*Id.*]. United responds that it has pleaded its fraudulent and unlawful insurance law claims with sufficient particularity [Doc. 41, pgs. 18-19].

United pleads its claims with sufficient particularity as to TeamHealth. Fed. R. Civ. P. 9(b). As noted above, United alleges that TeamHealth engaged in fraudulent upcoding, which requires TeamHealth submit false insurance claims [Doc. 1, ¶¶ 1, 47-49, 56, 70-72, 89, 91, 93,

104, 108]; *see generally* Tenn. Code Ann. § 56-53-103.  Further, United supports its claims with specific examples and the exhibit attached to its Complaint that includes the dates of each example, with the relevant billing information [Docs. 1, ¶¶ 73-86; 1-1, pg. 1] Thus, United pleads its fraudulent and unlawful insurance act claims with sufficient particularity.  Fed. R. Civ. P. 9(b). Accordingly, TeamHealth's motion to dismiss is **DENIED** in this respect.

> ### D. Whether United has pleaded its TCPA and other state consumer protection statute claims with particularity

The TCPA makes it unlawful for individuals to represent "that goods or services have . . . characteristics . . . that they do not have."  Tenn. Code Ann. § 47-18-104(b)(5). Similarly, it also makes it unlawful to represent "that goods or services are of a particular standard, quality or grade . . . if they are of another."  *Id.* § 47-18-104(b)(7).  The TCPA prohibits representing that a service, replacement, or repair is needed when it is not.  *Id.* § 47-18-104(b)(13). To recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . ." Tenn. Code Ann. § 47-18-109(a)(1); *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115-16 (Tenn. Ct. App. 2005).  "The defendant's conduct need not be willful or even knowing, but if it is, the TCPA permits the trial court to award treble damages." *Tucker*, 180 S.W.3d at 115-16.

TeamHealth argues that United failed to plead its TCPA and other state consumer protection statute claims [Doc. 26, pgs. 24-26].  TeamHealth contends that, because United does not list the elements for each specific statute it cites, United has failed to state its claims [*Id.*, pg. 25].  TeamHealth asserts that United does not allege that wrongful conduct occurred in California, Colorado, Illinois, Michigan, Minnesota, New Hampshire, and North Carolina [*Id.*, pgs. 25-26].

13

United responds that it has pleaded its TCPA and state consumer protection statute claims with sufficient particularity [Doc. 41, pgs. 18-19].

As to United's TCPA claim, United pleads the elements of a violation of the TCPA with sufficient particularity as to TeamHealth. Tenn. Code Ann. § 47-18-104(b)(5). United explains how TeamHealth engaged in upcoding and misrepresented the medical services it provided, which resulted in United overpaying on claims for those medical services [Doc. 1, ¶¶ 1, 47-49, 56, 70-72, 89, 91, 93, 104, 108]. United's assertions establish that TeamHealth allegedly engaged in an unfair and deceptive act that resulted in a loss of money to United. Tenn. Code Ann. ¶ 47-18-109(a)(1).

As to the other state consumer protection acts cited in the Complaint, United lists examples from a range of TeamHealth facilities across the country. [Doc. 1, ¶¶ 73-86]. Those examples include Nevada, Nebraska, New York, Arizona, and Florida. [Doc. 1, ¶¶ 73-86]. At this stage of litigation, the examples that United lists show the nationwide scope of TeamHealth's allegedly improper upcoding scheme. Thus, the factual allegations, which must be taken as true, support an inference that TeamHealth violated the consumer protection statutes in California, Colorado, Florida, Illinois, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New York, and North Carolina. Accordingly, TeamHealth's motion to dismiss is **DENIED** in this respect.

### E. Whether United has stated a claim under ERISA, 29 U.S.C. § 1132(a)(3)

Under ERISA, a plan fiduciary may obtain injunctive or "other appropriate equitable relief" to redress ERISA violations or enforce the plan. 29 U.S.C. § 1132(a)(3). To seek such relief, the fiduciary must show that the defendant breached the plan documents or violated ERISA in some other way. *Cataldo*, 676 F.3d at 556. The fiduciary must also act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions" of ERISA. 29 U.S.C. § 1104(a)(1)(D).

14

TeamHealth states that United does not assert that it has violated ERISA [Doc. 26, pg. 26]. It states that United does not specify which ERISA plans are at issue and that United does not allege that it acted contrary to a provision of an ERISA plan "limiting reimbursement to services that were actually provided to the member." [*Id.*, pg. 27]. TeamHealth asserts that United is not bringing its claims for overpayment under the terms of an ERISA plan and, thus, its ERISA claim must be dismissed as a matter of law [*Id.*, pg. 28]. United responds that it seeks equitable relief under its ERISA claim to keep TeamHealth from continuing to fraudulently upcode [Doc. 41, pg. 29]. It explains that it alleges each ERISA plan it administers "only permits reimbursement for services rendered," which TeamHealth has violated by inaccurately billing for services [*Id.*, pgs. 29-30].

TeamHealth is correct that United does not specify which ERISA plans are at issue in its claim seeking injunctive relief under § 1132(a)(3). That, however, is not enough to dismiss United's ERISA claims at this stage of litigation. First, United indicates that the number of plans at issue is voluminous, thereby making it impractical to specify and attach the details of each plan. United alleges a significant level of misconduct by TeamHealth, with over $100 million in allegedly fraudulent upcoding. [Doc. 1, ¶ 1]. Those allegations show that specifying the plans at issue at this stage would be impossible without overwhelming the Court and TeamHealth in documents early on. The interests of judicial economy counsel that United be allowed to produce the relevant documents for its ERISA claim in the normal course of discovery.

Second, the Court must construe the allegations in favor of United and accept its factual allegations as true. *Meador*, 902 F.2d at 475. In that light, United has pleaded its claim for relief under § 1132(a) because it alleges that: (1) it is a plan administrator permitted to seek recovery of fraudulent payments on behalf of certain ERISA plans; (2) TeamHealth falsely represented that physicians provided services to United's plan members when those services were provided by

15

someone other than a physician; and (3) TeamHealth's misrepresentations violated the terms of the ERISA plans that United administers. [Doc. 1, ¶¶ 27-31, 202-10]. United's allegations satisfy its pleading obligations at this stage of litigation. United will produce the plans at issue during discovery and specify which provisions have been violated by TeamHealth's alleged conduct. TeamHealth's motion to dismiss is **DENIED** in this respect.

### F.    Whether United's RICO claims are subject to reverse preemption

Under Fed. R. Civ. P. 8(a), a pleading may contain a demand for "relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). Further, Rule 8(d)(3) states that a "party may state as many separate claims or defenses as it has, regardless of consistency." *Id.* 8(d)(3); *Kentucky Home Mut. Life Ins. Co. v. Duling*, 190 F.2d 797, 802 (6th Cir. 1951) (citing former Fed. R. Civ. P. 8(e)(2)); *Jacobson v. Coon*, 165 F.2d 565, 567 (6th Cir. 1948) ("It is clear, however, . . . that a party may state as many supporting claims or defenses as he has, regardless of consistency."). The Federal Rules of Civil Procedure "have the same status as any other federal law under the Supremacy Clause." *Gallivan v. United States*, 943 F.3d 291, 295 (6th Cir. 2019).

The McCarran–Ferguson Act states that no federal law "shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . ." 15 U.S.C. § 1012(b). Courts, however, must narrowly construe the McCarran-Ferguson Act. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 513 (6th Cir. 2010). To determine whether the reverse preemption rule applies, the Court must consider three questions. *Id.* at 514. First, the Court must determine whether the federal statute at issue specifically relates to the business of insurance. *Id.* If the federal law does not relate to the business of insurance, the Court next determines whether the state statute at issue was enacted to regulate the business of insurance and then whether the federal statute would invalidate, impair, or

16

supersede the state statute. *Id.* If the Court answers the last two questions affirmatively, the federal statute is preempted by the state insurance laws. *See id.*

TeamHealth contends that United's RICO claims are reverse preempted under the McCarran-Ferguson Act [Doc. 26, pg. 28]. But the RICO Act is not a law that specifically relates to insurance, and both parties admit the same. *See Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999); [Docs. 26, pg. 28; 41, pg. 20]. Thus, the Court next determines whether the Tennessee laws at issue in United's insurance claims were enacted to regulate the business of insurance. *Riverview Health Inst. LLC*, 601 F.3d at 514. The Sixth Circuit has held that "[w]here a state law protects state insurance-policyholders, it is a law enacted . . . for the purpose of regulating the business of insurance." *Id.* at 514–15.

As discussed above, United brings its claims under Tennessee's statutes prohibiting fraudulent and unlawful insurance acts. The statutes provide a private right of action and set out remedies for parties injured by acts prohibited by the statutes. *See* Tenn. Code Ann. §§ 56-53-102, 56-53-103. Moreover, those statutes clearly express an intent to protect Tennessee insurance-policyholders by prohibiting the presentation of information on behalf of an "insured, claimant or applicant to an insurer, insurance professional or a premium finance company" that contains false representations or that conceals a material fact regarding a claim for payment under any insurance policy. *See* Tenn. Code Ann. §§ 56-53-102(a)(1)(B), 56-53-103(a)(1)(B). Thus, insurance-policyholders are the object of the protections provided under Tennessee's statutes prohibiting fraudulent and unlawful insurance acts. Therefore, the state statutes at issue in United's Tennessee insurance claims were enacted to regulate the business of insurance. *See Riverview Health Inst. LLC*, 601 F.3d at 514–15.

Finally, the Court must determine whether United's RICO claims invalidate, impair, or supersede Tennessee's insurance laws. *Id.* at 514. A party seeking reverse preemption under the

17

McCarran–Ferguson Act "cannot simply point to additional procedural measures included in a federal law without identifying some substantive aspect of the state law that is being invalidated, impaired or superseded. . . . [which is] a question of what effect RICO has on the state law." *Id.* at 515 (internal quotations omitted). The McCarran–Ferguson Act does not "preclude federal regulation merely because the regulation imposes liability additional to, or greater than, state law." *Humana Inc.*, 525 U.S. at 309. And the Act does not preclude the application of federal law, as long as the federal law at issue does not directly conflict with state regulation, frustrate state policy, or interfere with a state administrative regime. *Id.* at 310.

In *Humana Inc.*, a group of plaintiffs brought suit against an insurance company, alleging both insurance fraud claims under Nevada law and federal RICO claims. *Id.* at 311. Under Nevada law, Nevada's Insurance Commissioner could bring criminal charges for insurance fraud, and the plaintiffs had a private right of action to bring claims for insurance fraud and misrepresentation. *Id.* at 312. The Supreme Court noted that Nevada law provided a different remedial scheme for the plaintiffs than allowed under their federal RICO claims. *Id.* With those differences in mind, the Court concluded that the plaintiffs' RICO claims did not frustrate Nevada policy and were not preempted by the McCarran–Ferguson Act because the plaintiffs' RICO claims complemented Nevada's insurance laws. *Id.* at 313.

In reaching that conclusion, the Court examined the availability of a private right of action under the state insurance scheme, the availability of a state common law remedy, and the possibility that other state statutes provide the basis for suit. *Id.* at 311-14; *see also Riverview Health Inst. LLC*, 601 F.3d at 517. According to TeamHealth, United's RICO claims would impair Tennessee's insurance laws because those laws provide the exclusive and sole remedy for fraudulent insurance acts [Doc. 26, pg. 29]. United responds that Tennessee's insurance laws do not foreclose common law fraud or TCPA claims related to insurance fraud [Doc. 41, pg. 21, 23].

18

United contends that Tennessee's insurance laws contemplate plaintiffs bringing multiple claims for fraudulent conduct [*Id.*].

Tennessee's insurance scheme provides a private right of action for plaintiffs harmed by fraudulent and unlawful insurance acts. *See* Tenn. Code Ann. §§ 56-53-103, 56-53-107. Indeed, United asserts such claims in its Complaint. [Doc. 1, ¶¶ 162-88]. Further, Tennessee's insurance scheme does not preclude common law remedies or the application of other state statutes. United brings claims for common law fraud and misrepresentation, as well as a claim under the TCPA. [*Id.*, ¶¶ 137-61, 189-201]. Importantly, TeamHealth does not contend that those claims are precluded by Tennessee's insurance scheme. Although Tennessee's insurance scheme limits remedies for a private right of action, that limitation only applies to private actions under Tennessee's insurance laws and only prevents courts from implying damages not explicitly allowed by Tennessee's insurance laws for private actions. *See* Tenn. Code Ann. § 56-53-108. Tennessee's insurance scheme does not limit damages for other claims that arise from fraudulent or unlawful insurance acts. Thus, these three factors weigh against reverse preemption of United's RICO claims.

In *Humana Inc.*, the Supreme Court next considered the availability of punitive damages and whether the damages available under the state insurance scheme could exceed the damages recoverable under RICO, even considering RICO's treble damages provision. *Humana Inc.*, 525 U.S. at 311-14; *see also Riverview Health Inst. LLC*, 601 F.3d at 517. TeamHealth notes that, although a civil RICO plaintiff retains the full amount of treble damages awarded, Tennessee law mandates that one-third of any treble damages awarded be paid to the state to further insurance fraud investigations and prosecutions [Doc. 26, pg. 29]. TeamHealth explains that this discrepancy shows United's claims are preempted [*Id.*, pg. 30]. United responds that its RICO claims are not preempted because Tennessee did not intend to limit remedies for insurance fraud violations [Doc.

19

41, pgs. 20-21]. It characterizes the remedies available under Tennessee law and a federal civil RICO claim as complementary [*Id.*, pg. 21].

That Tennessee requires one-third of damages recovered under its insurance statutes to be returned to the state is insufficient to establish that United's RICO claims are preempted. Neither set of remedies conflict with each other. Tennessee's insurance scheme does not prohibit the recovery of other remedies, and the RICO Act similarly does not exclude other remedies. Indeed, both Tennessee's insurance scheme and the RICO Act allow for the recovery of treble damages and attorney's fees. *Compare* Tenn. Code Ann. § 56-53-107(c) *with* 18 U.S.C. § 1964(c). Even if the Court agrees that Tennessee's insurance scheme provides different remedies than the RICO Act, Fed. R. Civ. P. 8(d)(3) allows plaintiffs to plead inconsistent claims for relief at this stage of litigation. Fed. R. Civ. P. 8(d)(3). Thus, these two factors weigh against reverse preemption of United's RICO claims.

Lastly, the Supreme Court in *Humana Inc.* considered the absence of a position by the state regarding any interest in state policy and the fact that insurers have relied on RICO to eliminate insurance fraud. *Humana Inc.*, 525 U.S. at 311-14; *see also Riverview Health Inst. LLC*, 601 F.3d at 517. At this stage, Tennessee has not filed a brief expressing a view on the impact of United's RICO claims on its insurance scheme. Moreover, the Supreme Court acknowledged that insurers also rely on RICO claims to eliminate insurance fraud, which is also the case here. *Humana Inc.*, 525 U.S. at 314. Accordingly, the last two factors weigh against reverse preemption of United's RICO claims, and United's RICO claims do not invalidate, impair, or supersede Tennessee's insurance laws. TeamHealth's motion to dismiss is **DENIED** in this respect.

### G. Whether United has pleaded its RICO claims with particularity

To state a RICO claim, a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*,

465 F.3d 719, 723 (6th Cir. 2006); *see also* 18 U.S.C. § 1962(c). Further, a pattern of racketeering activity must consist of "at least two predicate acts of racketeering activity occurring within a ten-year period." *Moon*, 465 F.3d at 723. "The alleged predicate acts may consist of offenses which are indictable under any of a number of federal statutes, including the mail (18 U.S.C. § 1341) and wire fraud statutes (18 U.S.C. § 1343)." *Id.* (internal quotations omitted).

The Court begins with the "enterprise" element. "A RICO 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *In re ClassicStar Mare Lease Litigation*, 727 F.3d 473, 490 (6th Cir. 2013) (internal quotations omitted). "The enterprise itself is not liable for RICO violations; rather, the 'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable." *Id.* To establish liability under § 1962(c), a plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Id.* "Under RICO, a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *Id.* "However, the distinctness requirement may be satisfied when the parent corporation uses the separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme." *Id.* at 493.

TeamHealth argues that United fails to state its RICO claims because it alleges that the enterprise consists exclusively of corporate affiliates [Doc. 26, pg. 32]. It asserts that United does not make the required showing of a separate "person" and "enterprise." [*Id.*]. United responds that it has identified the respective role of each Defendant in the upcoding scheme [Doc. 41, pg. 24-25]. United explains that it alleges that each Defendant is a "person" distinct from the "enterprise" at issue here [*Id.*, pg. 26]. United further argues that it has alleged a pattern of

21

racketeering activity that is separate from TeamHealth's legitimate business operations [*Id.*, pg. 27].

Here, United alleges that TeamHealth's enterprise consisted of TeamHealth, its subsidiaries, and other legal entities that TeamHealth used to staff emergency departments [Doc. 1 ¶¶ 18-20, 41, 47-49, 104]. United contends that each Defendant entered into an association-in-fact enterprise with each other and with the medical groups with whom TeamHealth affiliates [*Id.*, ¶¶ 47-49, 213]. United explains that TeamHealth conducted and directed the enterprise but did not bill patients or insurance companies under its own name, instead using HCFS to bill insurance companies and claims administrators [*Id.*, ¶¶ 47-49, 215]. Further, United explains how TeamHealth's alleged fraudulent upcoding scheme was separate from the rest of the activities in which the enterprise engaged, such as staffing emergency departments in hospitals and submitting legitimately coded claims [*Id.*, ¶¶ 18-20, 41, 217]. At this stage of litigation, United's allegations establish that TeamHealth used the "separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme." *In re ClassicStar Mare Lease Litigation*, 727 F.3d at 793.

"The term 'racketeering activity' is defined to include a host of so-called predicate acts, including 'any act which is indictable under . . . section 1341 (relating to mail fraud).'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (citing to 18 U.S.C. § § 1961(1)(B)). Under 18 U.S.C. § 1341, an individual who uses the mail to engage in a fraudulent scheme commits mail fraud and is subject to criminal penalties. *See* 18 U.S.C. § 1341. Similarly, racketeering activity includes wire fraud, and an individual commits wire fraud when he uses electronic communication to engage in a fraudulent scheme to obtain money. *See* 18 U.S.C. § 1343.

When pleading predicate acts of mail or wire fraud, "in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must (1) specify the statements that the plaintiff

22

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (internal quotations omitted). "A RICO plaintiff is not required to plead or prove first-party reliance on an allegedly false statement." *Id.*

United explained the fraudulent claims submitted by TeamHealth, when those claims were made, and how those claims were fraudulent in TeamHealth's upcoding scheme [Doc. 1, ¶ 220-21]. Specifically, United states that TeamHealth used the wires and mail to submit fraudulent claims, coordinate their unlawful activities, and obtain payment for their fraudulent claims. [*Id.*, ¶¶ 1, 47-49, 56, 70-72, 89, 91, 93, 104, 108, 221]. These allegations are sufficient to survive both Rule 9(b)'s heightened pleading requirement and the pleading requirements for mail and wire fraud predicates under the RICO act. *Id.*; Fed. R. Civ. P. 9(b); *Smith*, 988 F.3d at 883. Accordingly, TeamHealth's motion to dismiss is **DENIED** in this respect.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss [Doc. 25] is **DENIED**.

**SO ORDERED:**


                            s/ Clifton L. Corker
                            United States District Judge

23