```
 1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF TENNESSEE
 2                      KNOXVILLE

 3
    UNITED HEALTHCARE SERVICES,.  DOCKET NO. CV-3-21-364
 4  INC., ET AL,                .
                                .
 5       PLAINTIFFS,            .
                                .
 6           VS.                .  GREENEVILLE, TN
                                .  NOVEMBER 21, 2024
 7  TEAM HEALTH HOLDINGS, INC.,.  9:01 A.M.
    ET AL,                      .
 8                              .
         DEFENDANTS.            .
 9                              .
    .   .   .   .   .   .   .   .   .
10

11

12              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE CLIFTON L. CORKER
13             UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25
```

1    APPEARANCES:

2    FOR THE PLAINTIFFS:      ROBINS, KAPLAN, MILLER &
                              CIRESI, LLP
3                            JAMIE R. KURTZ, ESQ.
                              800 LASALLE AVENUE
4                            2800 LASALLE PLAZA
                              MINNEAPOLIS, MN 55402
5
                              PAINE TARWATER & BICKERS LLP
6                            KENDELL G. VONCKX, ESQ.
                              900 SOUTH GAY STREET
7                            2200 RIVERVIEW TOWER
                              KNOXVILLE, TN 37902
8
     FOR THE DEFENDANTS:      BAKER, DONELSON, BEARMAN,
9                            CALDWELL AND BERKOWITZ, PC
                              GARY C. SHOCKLEY, ESQ.
10                           1600 WEST END AVENUE, SUITE 2000
                              NASHVILLE, TN 37203
11
                              BAKER, DONELSON, BEARMAN,
12                           CALDWELL AND BERKOWITZ, PC
                              MATTHEW S. MULQUEEN, ESQ.
13                           165 MADISON AVENUE
                              SUITE 2000
14                           FIRST TENNESSEE BUILDING
                              MEMPHIS, TN 38103
15

16

17

18

19

20

21

22   COURT REPORTER:         KAREN J. BRADLEY
                              RPR-RMR
23                           U.S. COURTHOUSE
                              220 WEST DEPOT STREET
24                           GREENEVILLE, TN 37743

25   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED BY COMPUTER.

1    (CALL TO ORDER OF THE COURT AT 9:01 A.M.)

2              THE COURT:  GOOD MORNING.

3              ATTORNEYS:  GOOD MORNING, YOUR HONOR.

4              THE COURT:  WELCOME BACK TO GREENEVILLE.

5              MR. SHOCKLEY:  THANK YOU.

6              THE COURT:  YOU WANT TO CALL THE CASE.

7              THE CLERK:  CASE NUMBER 3:21-CV-364, UNITED

8    HEALTHCARE SERVICES, INC., ET AL VERSUS TEAM HEALTH

9    HOLDINGS, INC., ET AL.

10             THE COURT:  OKAY.  WE'RE HERE FOR A JOINT

11   STATUS CONFERENCE BASICALLY BECAUSE BASED ON THE FILINGS

12   THAT I'VE READ AND STUDIED OVER THE PAST WEEK THE

13   SCHEDULING ORDER IS NOT REALISTIC, I GUESS IS WHAT I HEAR

14   FROM EVERYBODY.  TELL ME WHY IT ISN'T AND WHAT WE CAN DO

15   ABOUT IT.

16             MR. SHOCKLEY:  THANK YOU, YOUR HONOR.  GARY

17   SHOCKLEY FOR THE DEFENDANT.

18             I'VE SPOKEN WITH MS. KURTZ, AND WE'VE AGREED I

19   WILL ADDRESS THIS QUESTION FIRST, BUT I'M SURE SHE WILL

20   CORRECT ME WHEN I GO ASTRAY HERE.

21             THE COURT:  OKAY.

22             MR. SHOCKLEY:  I BELIEVE WE WERE LAST WITH YOUR

23   HONOR IN FEBRUARY OF THIS YEAR WHEN WE ENTERED A SCHEDUL-

24   ING ORDER, AND THE PARTIES HAVE BEEN AT WORK OVER THE LAST

25   NINE MONTHS DEALING WITH VOLUMINOUS WRITTEN DISCOVERY IN

1    THE CASE, AND MS. KURTZ CAN FILL YOU IN ON THE DETAILS

2    FROM THEIR SIDE; BUT, SUFFICE IT TO SAY, ON OUR SIDE WE'VE

3    MADE 11 PRODUCTIONS OF OVER 100,000 PAGES SINCE THAT TIME,

4    INCLUDING A NUMBER OF WHAT THE PARTIES REFER TO AS THE

5    CENTRAL SOURCE DOCUMENTS. WE'VE MADE A COUPLE OF

6    PRODUCTIONS OF ESI, OVER 7,000 DOCUMENTS AND ABOUT 45,000

7    PAGES. WE ARE IN THE PROCESS OF FINISHING THAT UP NOW,

8    ANTICIPATE THAT ESI BEING DONE, THE PHASE ONE ESI, IN

9    ABOUT THREE WEEKS. WE'VE GOTTEN SOME PRODUCTIONS

10    RECENTLY, AND MS. KURTZ, AGAIN, CAN FILL YOU IN ON WHERE

11    THEY ARE, BUT I BELIEVE THEY ARE COMPLETE OR SIMILAR TO

12    THAT. THE PARTIES ENVISION A PHASE TWO OF ESI, HOPEFULLY

13    GOING TO SCHOOL ON WHAT WE'VE LEARNED FROM PHASE ONE; AND

14    THEN, OF COURSE, WE'LL HAVE DEPOSITIONS AND EXPERTS.

15    THAT PROCESS HAS TAKEN LONGER THAN I THINK

16    EITHER PARTY OR THE COURT ANTICIPATED TO GET THAT DONE.

17    THAT'S PARTLY BECAUSE OF THE NATURE OF THE CLAIMS AND

18    DEFENSES IN THE CASE. YOUR HONOR IS VERY FAMILIAR, IT'S A

19    NATIONWIDE CASE SPANNING OVER SEVEN OR EIGHT YEARS AND

20    ABOUT 700,000 DISPUTED CLAIMS, AS TO WHICH THE PARTIES

21    HAVE PRODUCED ALL OF THE MEDICAL RECORDS FOR A SAMPLE OF

22    THOSE 528.

23    THE COURT: 528.

24    MR. SHOCKLEY: THAT'S CORRECT, YOUR HONOR.

25    ALL THE BILLING RECORDS, ALL THE MEDICAL RECORDS, ALL THE

1   PLAN DOCUMENTS, AND I BELIEVE THERE ARE OVER A HUNDRED

2   THOUSAND PAGES OF THOSE PLAN DOCUMENTS ALONE.

3            SO BECAUSE OF THE AMOUNT OF TIME THAT'S TAKEN,

4   WE'VE SIMPLY BEEN UNABLE TO KEEP THE SCHEDULE THAT WE SET

5   FOR OURSELVES AND THAT YOUR HONOR ADOPTED BACK IN

6   FEBRUARY.  AS I SAID, WE HAVE CONFERRED WITH ONE ANOTHER

7   ABOUT WHAT'S LEFT IN THE CASE, WHAT'S REALISTIC, TO AVOID

8   COMING BACK TO THE COURT YET AGAIN TO ASK FOR MORE TIME.

9   WE BELIEVE A 12 MONTH TIME WOULD BE REASONABLE FOR THAT.

10  THE PLAINTIFF THOUGHT LESS TIME.  AGAIN, WE'VE CONFERRED,

11  WE'VE GOT, I BELIEVE, A CONSENSUS THAT WE THINK ADDING

12  APPROXIMATELY 9 MONTHS TO THE EXISTING MILESTONES WILL LET

13  US COMPLETE THE OUTSTANDING PHASE ONE ESI, THE PHASE TWO

14  ESI, THE DEPOSITIONS; AND WE DO HAVE 20 CUSTODIANS

15  IDENTIFIED FOR THE ESI, OR AT LEAST WE'VE GOT 10 NOW, WE

16  ANTICIPATE ANOTHER 5 FOR EACH SIDE, AND THE EXPERTS IN THE

17  CASE.  AND, AGAIN, THE PLAINTIFF HAS SOME SPECIFIC

18  THOUGHTS ON THE TRIAL DATE THAT I'LL LET MS. KURTZ

19  ADDRESS.  BUT, AGAIN, LONG STORY SHORT, THE PARTIES WOULD

20  PROPOSE THAT WE ADD APPROXIMATELY 9 MONTHS TO THE EXISTING

21  MILESTONES, AND MS. KURTZ CAN EXPLAIN THEIR POSITION ON

22  THAT AND THEIR VIEWS ON A TRIAL DATE.

23            THE COURT:  WHAT'S THE RATIONALE, IF YOU HAVE

24  UNDER THE ESI APPROACH, YOU HAVE AN INITIAL SET OF 5

25  CUSTODIANS, BUT YOU, YOU CERTAINLY ANTICIPATE ANOTHER SET,

1    SO THERE'S GOING TO BE A TOTAL OF, WHAT, 15 OR 10?

2              MR. SHOCKLEY:  TEN PER SIDE.

3              THE COURT:  TEN PER SIDE, SO 20 CUSTODIANS.

4    WHY, IF YOU KNOW -- APPARENTLY, ACCORDING TO THE FILINGS,

5    THE PARTIES ANTICIPATE FACT DEPOSITIONS FOR ALL OF THE 10

6    CUSTODIANS SELECTED BY EACH SIDE, ALONG WITH DEPOSITIONS

7    OF THE CORPORATE REPRESENTATIVES FOR EACH OF THE 6

8    PARTIES, WHY, WHY BREAK THIS UP INTO 2 PHASES?  IT SEEMS

9    LIKE THIS IS JUST -- THAT'S KIND OF SLOWING THINGS DOWN A

10   LITTLE BIT.

11             MR. SHOCKLEY:  THAT'S AN EXCELLENT QUESTION,

12   YOUR HONOR, AND THE RATIONALE, AT LEAST FROM OUR SIDE, IS,

13   IN A CASE LIKE THIS, MAYBE ANY CASE, BUT CERTAINLY IN A

14   CASE LIKE THIS, WE DON'T KNOW WHO WE ARE, WHO WE ARE

15   INTERESTED IN SEEING UNTIL WE GET SOME ROUGH IDEA OF THE

16   UNIVERSE.  IN OTHER WORDS, WE GET THE COMMUNICATIONS,

17   THERE MAY BE A SIXTH, SEVENTH, EIGHTH CUSTODIAN WHO IS

18   COPIED ON THE KEY DOCUMENTS OR ON MANY OF THE DOCUMENTS

19   THAT WE SIMPLY DIDN'T KNOW ABOUT THAT THE OTHER SIDE

20   HASN'T LISTED AS ONE OF THEIR 26(A)(1)(A) WITNESSES THAT

21   WE'RE INTERESTED IN.  IT HAS BEEN MY EXPERIENCE THAT

22   OFTEN, ALMOST INEVITABLY, IT BECOMES A MULTI-PHASE PROCESS

23   BECAUSE ONCE YOU GET IN AND DIGEST IT, THERE ARE THINGS

24   YOU DIDN'T KNOW ABOUT THAT YOU LEARN.  SO I THINK BOTH

25   SIDES IN ANTICIPATION OF THAT THOUGHT, LET'S START WITH

1   THE PEOPLE, BOTH SIDES ARE VERY CONFIDENT, OUR KEY PLAYERS

2   HERE WHOSE COMMUNICATIONS WE WANT, LET'S GO TO SCHOOL ON

3   THOSE AND FIGURE OUT WHO ARE UP TO FIVE MORE IDENTIFIED.

4   NOW, IT MAY BE, IF WE'RE LUCKY, THAT WE GET THOSE AND WE

5   THINK WE REALLY DON'T NEED ANOTHER FIVE, WE NEED ONE OR

6   TWO; BUT I THINK THAT WAS THE THOUGHT AT THE TIME AMONG

7   THE PARTIES IS, WE KNOW THERE WILL BE MULTIPLE PHASES,

8   LET'S ANTICIPATE THAT NOW AND SET SOME GUIDELINES AROUND

9   THAT.

10          THE COURT:  OKAY, OKAY.

11          MR. SHOCKLEY:  WE MAY OR MAY NOT HAVE BEEN

12  SUCCESSFUL IN THAT, BUT THAT WAS THE ORIGINAL GOAL.

13          THE COURT:  AS FAR AS THE 528 FILES, YOU SAID

14  THAT THE PRODUCTION, THE DOCUMENTS ASSOCIATED WITH THAT,

15  HAS THAT BEEN COMPLETE?

16          MR. SHOCKLEY:  I BELIEVE SO, YOUR HONOR.  I CAN

17  SAY FROM OUR SIDE WE HAVE PRODUCED ALL OF THE MEDICAL

18  RECORDS AND BILLING RECORDS ON THE 528.  I BELIEVE FROM MY

19  LAST CONVERSATION WITH MS. KURTZ THAT WE HAVE THE PLAN

20  DOCUMENTS ON THE OVERWHELMING MAJORITY.

21          NOW, I CAN TELL YOU THERE ARE, THERE ARE THREE

22  CLAIMS THAT WE'VE IDENTIFIED THAT WE'RE NOT ABLE TO MATCH

23  UP WITH A PLAN DOCUMENT, AND WE SIMPLY NEED TO CONFER ON

24  THAT.  IF WE'RE RIGHT, THEN I'M SURE THEY'LL GO BACK AND

25  LOOK FOR THEM, MAYBE WE'RE OVERLOOKING SOMETHING; BUT IT'S

1  MY UNDERSTANDING, AGAIN, MS. KURTZ WILL CORRECT ME IF I'M

2  WRONG, MY UNDERSTANDING IS ON 525 OF THE 528 THEY BELIEVE

3  THEY HAVE NOW PRODUCED THE APPLICABLE PLAN DOCUMENTS.

4  THE COURT:  OKAY, SO LAST TIME -- OR ONE OF THE

5  FILINGS IN OCTOBER WAS, YOUR CONCERN WAS THAT THE

6  PLAINTIFFS WEREN'T ADVISING YOU WHETHER THE SAMPLING WAS,

7  THEIR PRODUCTION OF DOCUMENTS REGARDING THE SAMPLING WAS

8  COMPLETE.  HAS THAT BEEN RESOLVED NOW?

9  MR. SHOCKLEY:  NO, YOUR HONOR.

10  THE COURT:  IT'S NOT BEEN.

11  MR. SHOCKLEY:  IT HAS NOT.  OUR CONCERN WAS WE

12  HAD A NUMBER OF DOCUMENTS ON THE CLAIMS, WE WERE UNABLE TO

13  CONFIRM AT THAT TIME, DO WE HAVE 100 PERCENT OF THE

14  DOCUMENTS ON ANY ONE OF THOSE 528.  WE SPOKE WITH

15  MS. KURTZ ON MONDAY OF THIS WEEK, HER UNDERSTANDING WAS

16  THAT THEY HAD NOW COMPLETED THAT PRODUCTION, THAT WE HAD

17  100 PERCENT OF THE DOCUMENTS ON THE 528.  SHE WAS GOING TO

18  GO BACK AND CHECK ON A COUPLE OF LOOSE ENDS AND MAKE SURE

19  THAT WAS CORRECT AND THAT THERE WEREN'T ANY OUTLIERS.  WE

20  THEN HAD OUR VENDOR DO A CHECK, AND, AS I SAID, WE ARE

21  ABLE TO MATCH UP PLAN DOCUMENTS AND CLAIM DOCUMENTS FOR

22  525.

23  THE COURT:  OKAY.

24  MR. SHOCKLEY:  THERE ARE 3 THAT WE HAVEN'T

25  THAT, AGAIN, INFORMATION WE GOT LAST NIGHT, THAT WE'LL

1    NEED TO WORK THROUGH AND SEE ON THOSE, AND WE'RE AWAITING

2    CONFIRMATION FROM JAMIE AS TO, YES, THIS IS 100 PERCENT

3    FOR THE OTHER 525.

4              THE COURT:  OKAY.  NOW, YOU INDICATED THAT FROM

5    THE DEFENDANTS' STANDPOINT YOU NEED TIME TO ANALYZE THESE

6    525 OR 528 CLAIMS, RIGHT, AS PART OF YOUR PROCESS OF

7    REVIEW?

8              MR. SHOCKLEY:  ON THE PLAN DOCUMENTS, THAT'S

9    CORRECT.

10             THE COURT:  ON THE PLAN DOCUMENTS.  AND WHAT DO

11   YOU ANTICIPATE -- I MEAN, WHAT'S, WHAT'S YOUR THOUGHT

12   PROCESS AND HOW MUCH TIME DO YOU THINK IS NECESSARY TO

13   COMPLETE A REVIEW OF THAT?  I MEAN, THESE -- I'M NOT SURE

14   EXACTLY, YOU'VE GOT THESE PLAN DOCUMENTS, ARE THEY

15   DIFFERENT FOR EACH PARTICULAR PATIENT, OR JUST -- TELL ME

16   WHY IS IT GOING TO TAKE YOU ALL SO LONG TO ANALYZE?

17             MR. SHOCKLEY:  THERE'S A WIDE VARIETY OF PLAN

18   DOCUMENTS.  SOME ARE FULLY-INSURED CLAIMS IN WHICH UNITED

19   BEARS THE RISK, SOME ARE SELF-INSURED EMPLOYERS FOR WHICH

20   UNITED SERVES AS AN ADMINISTRATIVE SERVICES ORGANIZATION.

21   WHAT WE'RE INTERESTED IN, YOUR HONOR, IS ON THOSE ASO

22   PLANS, WHAT DO THEY SAY ABOUT UNITED'S AUTHORITY TO PURSUE

23   THE CLAIMS THEY'RE PURSUING HERE.  WE HAVE LOOKED AT SOME

24   OF THOSE, AND I CAN TELL YOU THERE'S A WIDE VARIETY OF

25   TERMS, SOME HAVE ASSIGNMENTS, SOME REQUIRE NOTICE, SOME

1   HAVE TIME LIMITS.  AGAIN, THERE'S A NUMBER OF DIFFERENT

2   TERMS.  SO THEY'VE PRODUCED OVER 100,000 PAGES OF PLANS,

3   WHAT WE NEED TO DO NOW THAT THEY'RE COMPLETE IS GO

4   THROUGH, ANALYZE THOSE AND FIGURE OUT OF THE 528 WHICH ARE

5   ASO, WHAT ARE THE TERMS, WHAT ARE THE VARIATIONS BETWEEN

6   THOSE VARIOUS PLANS BECAUSE, AGAIN, OUR, OUR REVIEW OF A

7   DOZEN OF THOSE PLANS SUGGESTS THAT THERE IS A PRETTY BROAD

8   VARIATION FROM PLAN TO PLAN ABOUT WHAT THEY SAY, WHICH,

9   AGAIN, WE BELIEVE IS IMPORTANT IN, IN DEFENDING THE CASE.

10          THE COURT:  OKAY.  AND IS THAT, THE IMPORTANCE

11  OF DEFENDING IT, I MEAN, I GUESS YOU'RE TRYING TO GLEAN

12  WHETHER THEY, LIKE YOU MENTIONED, HAVE THE AUTHORITY TO

13  EVEN PURSUE A PARTICULAR CLAIM?

14          MR. SHOCKLEY:  THAT'S RIGHT, YOUR HONOR.  WE

15  THINK IT GOES TO STANDING TO PURSUE THESE CLAIMS.  WE

16  THINK IT GOES TO THE VALIDITY OF ANY ASSIGNMENT.  THERE

17  ARE TIME LIMITS IN SOME OF THEM, THERE ARE DOLLAR LIMITS

18  IN SOME OF THEM, AND, AGAIN --

19          THE COURT:  WILL THE PLAN ANSWER THAT QUESTION?

20  I MEAN, FROM A, FROM A --

21          MR. SHOCKLEY:  IT SHOULD.

22          THE COURT:  -- FROM THE WHOLISTIC STANDPOINT OF

23  THE ENTIRE CASE, LET'S SAY YOU HAVE ONE OR TWO OR FIVE OF

24  THE SAMPLING THAT THEY DON'T HAVE STANDING, HOW WILL THAT

25  IMPACT THE CASE GOING FORWARD?

1           MR. SHOCKLEY:  WE UNDERSTAND THAT UNITED

2    INTENDS TO RELY ON THAT SAMPLE OF 528 CLAIMS TO EXTRAPO-

3    LATE TO THE UNIVERSE OF 679,000 DISPUTED CLAIMS HERE.

4           THE COURT:  RIGHT.

5           MR. SHOCKLEY:  SO IF ONE OF THOSE CLAIMS THEY

6    LACK STANDING ON, IT HAS AN IMPACT ON THE FULL UNIVERSE OF

7    679,000.  IF 50 PERCENT OF THOSE CLAIMS DO, AGAIN, IT HAS

8    A PROPORTIONATE EFFECT ON THEIR ABILITY TO ASSERT THOSE

9    CLAIMS AND TO RECOVER DAMAGES ON BEHALF OF THE REAL PARTY

10   IN INTEREST HERE, THE SELF-INSURED EMPLOYER WHO PAID THE

11   CLAIM.

12          THE COURT:  OKAY.  AND I KNOW YOU ALL DO NOT

13   AGREE THAT THE 528 IS A STATISTICALLY REASONABLE SAMPLING;

14   IS THAT RIGHT?

15          MR. SHOCKLEY:  THAT'S CORRECT, YOUR HONOR.

16          THE COURT:  SO THAT'S STILL GOT TO BE LITIGATED

17   TOO?

18          MR. SHOCKLEY:  THAT'S CORRECT.

19          THE COURT:  OKAY.  OKAY.

20          ALL RIGHT.  HAS THE PLAINTIFF PRODUCED THESE

21   ADDITIONAL DOCUMENTS THAT I THINK YOU ALL ARE COMPLAINING

22   ABOUT NOT RECEIVING, THE GEOGRAPHICAL LOCATION DATA

23   ASSOCIATED WITH THESE CLAIMS, THE GROUP NAME, GROUP

24   NUMBER, POLICY NUMBER, HAS ALL THAT BEEN NOW -- IS THAT

25   RESOLVED TO YOUR KNOWLEDGE?

1          MR. SHOCKLEY:  WE DON'T KNOW, YOUR HONOR,

2    BECAUSE WE RECEIVED A PRODUCTION ON MONDAY --

3          THE COURT:  OKAY.

4          MR. SHOCKLEY:  -- OF THIS WEEK THAT WE'RE STILL

5    WORKING THROUGH.  THERE ARE A NUMBER OF OPEN ISSUES ON OUR

6    SIDE AND ON THEIR SIDE, AND, AGAIN, MR. MULQUEEN CAN

7    ADDRESS ANY OR ALL OF THOSE IN SOME DETAIL, BUT THERE ARE

8    OPEN ISSUES REMAINING, AGAIN, I THINK IT'S FAIR TO SAY FOR

9    BOTH SIDES, THINGS THAT WE THINK WE'RE OWED THAT WE

10   HAVEN'T YET RECEIVED, SOME OF WHICH ARE DESCRIBED IN THAT

11   OCTOBER 7 REPORT WE SUBMITTED.

12         THE COURT:  OKAY.  MR. MULQUEEN, DO YOU HAVE --

13         MR. MULQUEEN:  YEAH, HAPPY TO ANSWER THAT.

14         SO THE SPECIFIC DATA THAT YOUR HONOR JUST

15   MENTIONED, THE GEOGRAPHICAL LOCATION, I BELIEVE HAS BEEN

16   PRODUCED, WE'RE WORKING TO CONFIRM THAT.  THAT'S DATA AS

17   OPPOSED TO DOCUMENTS.

18         SOME OF THE OTHER CATEGORIES OF DOCUMENTS IN

19   OUR PRIOR UPDATES TO THE COURT WE THINK HAVE BEEN

20   PRODUCED.  THERE ARE SOME CATEGORIES THAT WE'RE STILL

21   WORKING ON THAT WE THINK HAVE NOT BEEN PRODUCED.  SO THERE

22   ARE A HANDFUL OF I THINK OPEN ISSUES THAT THE PARTIES ARE

23   GOING TO HAVE TO WORK ON WHERE THE PLAINTIFFS HAVE AGREED

24   TO PRODUCE DOCUMENTS OR INFORMATION THAT WE'RE HOPEFUL

25   THAT WE CAN CONTINUE WORKING ON COLLABORATIVELY, AND THEN

1   THERE ARE GOING TO BE PROBABLY A DECENT NUMBER OF DISPUTED

2   DISCOVERY ISSUES ON BOTH SIDES THAT WE THINK WILL HAVE TO

3   GET ADDRESSED, AND PART OF WHAT WE WANTED TO GET SOME

4   GUIDANCE ON TODAY FROM YOUR HONOR IS WHETHER YOUR HONOR

5   WANTED TO ADDRESS THOSE DISCOVERY DISPUTES OR HAVE THE

6   MAGISTRATE ADDRESS THOSE DISCOVERY DISPUTES.  I'M HAPPY TO

7   GO THROUGH KIND OF WHAT THOSE OPEN ISSUES MIGHT BE JUST TO

8   KIND OF GIVE YOUR HONOR A SENSE, BUT THERE'S LOTS OF

9   DIFFERENT ISSUES THAT ONE BY ONE COULD BE VERY COMPLEX AND

10  TIME CONSUMING, WHICH IS PART OF THE REASON WHY WE THINK

11  ADDITIONAL TIME IS NEEDED IN GENERAL.

12              THE COURT:  OKAY.

13              ALL RIGHT.  I GUESS I'LL HEAR FROM THE

14  PLAINTIFF NOW.

15              MR. SHOCKLEY:  THANK YOU, YOUR HONOR.

16              THE COURT:  THANK YOU, MR. SHOCKLEY.

17              MS. KURTZ:  GOOD MORNING, YOUR HONOR.

18              THE COURT:  GOOD MORNING.

19              MS. KURTZ:  JAMIE KURTZ FOR THE PLAINTIFF.

20              SO WE'RE IN AGREEMENT WITH ALMOST EVERYTHING

21  THAT MR. SHOCKLEY SAID IN TERMS OF BOTH THE ADDITIONAL

22  TIME NEEDED TO COMPLETE THE DISCOVERY.  I CAN ANSWER SOME

23  QUESTIONS ABOUT THE STATUS OF OUR PRODUCTIONS, IF THAT

24  WOULD BE HELPFUL TO YOU.  WE HAVE COMPLETED WHAT WE

25  BELIEVE IS THE PRODUCTION OF PLAN DOCUMENTS.  I UNDERSTAND

1    THERE MIGHT BE THREE CLAIMS WHERE THERE MIGHT HAVE BEEN

2    MISSED OR WHATEVER, WE WILL, OF COURSE, WORK WITH THE

3    DEFENSE ON THAT.

4              IN TERMS OF OUR ESI PRODUCTION, THAT THE FIRST

5    PHASE PRODUCTION FOR THE FIRST FIVE CUSTODIANS HAS NOW

6    BEEN COMPLETED BY UNITED, WE ARE WORKING ON FINISHING UP

7    OUR PRIVILEGE LOG RELATED TO THOSE FIVE CUSTODIANS' CLAIMS

8    AND EXPECT TO HAVE THAT PRIVILEGE LOG FOR THE DOCUMENTS

9    WITHHELD ENTIRELY AS PRIVILEGED PRODUCED BY EARLY

10   DECEMBER.  AND SO WE'RE IN THE PROCESS OF REVIEWING THE

11   TEAM HEALTH'S PRODUCTIONS, ESI PRODUCTIONS THAT THEY'VE

12   MADE THUS FAR, AND IDENTIFYING THE ADDITIONAL CUSTODIANS

13   WE THINK WE NEED.  MR. SHOCKLEY IS EXACTLY RIGHT IN TERMS

14   OF WHY WE DID THAT PHASE DISCOVERY, YOU KNOW, IT WAS A

15   HOPE THAT WE WOULDN'T HAVE TO GO BACK TO THE COURT

16   MULTIPLE TIMES TO ASK FOR MORE CUSTODIANS OR TO ARGUE

17   ABOUT WHETHER THE CORRECT CUSTODIANS WERE IDENTIFIED IN

18   THE FIRST INSTANCE.

19             IN TERMS OF THE REVIEW OF THE DOCUMENTS THAT --

20             THE COURT:  LET ME ASK YOU ON THAT, HELP ME

21   UNDERSTAND, GIVE ME A BETTER UNDERSTANDING OF THIS

22   CUSTODIAN.  I HEARD MR. SHOCKLEY EXPLAIN WHY IT WAS DONE

23   IN PHASES, TELL ME WHAT'S THE IMPORTANCE OF THE CUSTODIAN

24   AND, AND HELP ME, HELP ME FAMILIARIZE MYSELF BECAUSE I

25   HEAR, I HEAR WHAT YOU'RE SAYING ABOUT WE NEED THESE

1   CUSTODIANS, BUT TELL ME WHY IS THIS -- WHY DID YOU ALL DO

2   IT THIS WAY AND WHAT'S THE IMPORTANCE OF THE CUSTO -- IS

3   THE CUSTODIAN ONE OF THE RECORDS OR TELL ME, TELL ME.

4           MS. KURTZ:  YEAH.  SO THESE PARTIES HAVE BEEN

5   ADVERSE TO EACH OTHER MANY TIMES IN THE PAST, NOT JUST IN

6   TENNESSEE, BUT IN COURTROOMS ALL OVER THE COUNTRY, AND

7   THERE'S A HISTORY OF DISPUTES OF, IF YOU DO AN ESI

8   PRODUCTION WHERE THE PARTY WHO -- THE PRODUCING PARTY

9   IDENTIFIES 10 CUSTODIANS AND SEARCH TERMS, THOSE,

10  WHATEVER, THERE'S SOME NEGOTIATION THERE, THOSE DOCUMENTS

11  ARE PRODUCED.  WHEN THE RECEIVING PARTY HAS RECEIVED THE

12  DOCUMENTS, THERE HAVE BEEN A LOT OF DISPUTES ABOUT WHETHER

13  THE APPROPRIATE CUSTODIANS WERE IDENTIFIED IN THE FIRST

14  INSTANCE.

15          IN TERMS OF THE RELEVANCE OF CUSTODIAL

16  DISCOVERY, IT'S A FRAUD CASE, RIGHT; AND SO, YOU KNOW, WE

17  HAVE FOCUSED A LOT OF OUR, YOU KNOW, CUSTODIANS AND SEARCH

18  TERMS THUS FAR ON WHY ARE THEY DOING THIS, WHAT IS THE

19  COMPANY'S KNOWLEDGE MORE GENERALLY ABOUT THE ALLEGED UP-

20  CODING AND THINGS LIKE THAT.  SO WHILE THE PARTIES ARE

21  EXPERIENCED WITH ONE ANOTHER, THERE ARE MANY, MANY

22  INDIVIDUALS WHO HAVE TOUCHED PIECES OF THIS ON BOTH THE

23  UNITED SIDE AND TEAM HEALTH SIDE, AND THE PARTIES, YOU

24  KNOW, WERE UNCOMFORTABLE SAYING, OKAY, HERE ARE 10

25  CUSTODIANS, THESE ARE THE ONLY ONES THAT WILL BE SEARCHED

1  THROUGHOUT THE CASE, WITHOUT SEEING SOME OF THOSE

2  CUSTODIAL DOCUMENTS TO KNOW WHAT ARE THE OTHER CUSTODIANS

3  THAT WOULD BE IMPORTANT AND LIKELY TO HAVE RELEVANT

4  INFORMATION; JUST BECAUSE, YOU KNOW, AT THE BEGINNING OF A

5  CASE WHEN YOU'RE, YOU KNOW, EXCHANGING YOUR DISCLOSURES,

6  THERE'S SOME THAT ARE KNOWN -- SOME INFORMATION THAT'S

7  KNOWN TO THE OPPOSING PARTY, BUT THERE'S A LOT THAT IS

8  UNKNOWN IN TERMS OF WHO REALLY HAS THE MOST RELEVANT

9  DOCUMENTS, WHO WAS INVOLVED IN THE DECISION-MAKING

10 PROCESS, AND THAT'S JUST FOR UNITED'S SIDE.  I KNOW FOR

11 TEAM HEALTH THEY'RE FOCUSING ON DISCOVERY RELATED TO THE

12 POLICY THAT WE RELY ON TO SAY THAT THESE CLAIMS WERE

13 UPCODED, HOW WAS THAT POLICY DEVELOPED, HOW HAS IT CHANGED

14 OVER TIME.  AND, AGAIN, BY PRODUCING, YOU KNOW, 5

15 CUSTODIANS' DOCUMENTS IN THE FIRST INSTANCE, IT ALLOWS THE

16 RECEIVING PARTY TO HAVE A LITTLE BIT MORE CONFIDENCE IN

17 THE NEXT ROUND OF CUSTODIANS TO MAKE SURE THE RIGHT PEOPLE

18 ARE REALLY BEING IDENTIFIED AND NOT HAVE TO KEEP COMING

19 BACK TO THE COURT AND SAY, WELL, THEY PRODUCED THESE 10

20 CUSTODIANS, IT'S CLEAR THAT THEY SHOULD HAVE PROVIDED

21 THESE 3 INSTEAD, SO NOW WE NEED MORE OF THAT.

22          THE COURT:  OKAY.  HAS THE -- AS FAR AS THE ESI

23 DISCOVERY, YOU SAY THAT THE FIRST PHASE WILL BE COMPLETED

24 IN ANOTHER THREE WEEKS?

25          MS. KURTZ:  YEAH.  SO MY UNDERSTANDING FROM

1    TEAM HEALTH IS THAT THEY WILL COMPLETE THEIR LAST PHASE

2    ONE ESI PRODUCTION, I THINK BY DECEMBER 13TH WAS THE DATE

3    THAT MS. COLLINS IDENTIFIED.  WE'LL PRODUCE OUR PRIVILEGE

4    LOG BEFORE THEN, AND WE'RE ALREADY WORKING ON IDENTIFYING

5    THE NEXT SET OF CUSTODIANS BASED ON THE DOCUMENTS THAT

6    TEAM HEALTH HAS PRODUCED THUS FAR, AND I'M SURE TEAM

7    HEALTH IS DOING THE SAME.

8            THE COURT:  OKAY.  AND THEN PHASE TWO OF THIS

9    ESI, IS THIS GOING TO TAKE AS LONG AS PHASE ONE?

10           MS. KURTZ:  YOUR HONOR, RESPECTFULLY, I DON'T

11   BELIEVE SO.  I DON'T THINK -- PHASE ONE, ONE OF THE

12   REASONS WHY IT'S TAKEN SO LONG IS BECAUSE SO MUCH OF THE

13   PARTIES' EFFORTS WERE SPENT COLLECTING MEDICAL RECORDS,

14   PLAN DOCUMENTS, ADMINISTRATIVE SERVICES AGREEMENTS; AND

15   WHILE AT LEAST ON UNITED'S SIDE THAT SEEMS LIKE SOMETHING

16   THAT WOULD BE VERY EASY TO DO, IT'S NOT.  IT'S A MANUAL

17   PROCESS, AND THERE ARE MANY DIFFERENT, YOU KNOW,

18   AFFILIATES AND PLANS AND THINGS LIKE THAT.  SO IT HAS BEEN

19   A PAINFUL PROCESS FOR US TO COLLECT 528 CLAIMS WORTH OF

20   PLAN DOCUMENTS, ADMINISTRATIVE SERVICES AGREEMENTS AND

21   THINGS LIKE THAT.

22           I THINK BECAUSE SO MUCH OF THE PARTIES' EFFORTS

23   WERE FOCUSED ON THAT AND GETTING THOSE DOCUMENTS PRODUCED

24   BECAUSE IN MANY WAYS THEY ARE KEY CORE DOCUMENTS OF THE

25   CASE, THE ESI WAS A LITTLE BIT SLOWER IN TERMS OF THE

1    REVIEW PRODUCTIONS AND THINGS LIKE THAT.  BECAUSE THE BULK
2    OF THAT KIND OF NONCUSTODIAL DISCOVERY IS COMPLETED NOW, I
3    WOULD EXPECT THAT THE SECOND ROUND OF ESI IS FASTER, AND
4    THAT'S WHY WE THINK THAT THE NINE MONTH EXTENSION OF THE
5    CURRENT DEADLINES IS SUFFICIENT TO COMPLETE THE SECOND
6    ROUND OF ESI PRODUCTIONS, AS WELL AS DO ALL THE
7    DEPOSITIONS, FINALIZE, FINISH EXPERT REPORTS AND THINGS
8    LIKE THAT.
9            THE COURT:  HOW LONG DO YOU THINK THIS SECOND
10   PHASE IS GOING TO TAKE ON YOU ALL'S PART?
11           MS. KURTZ:  ON OUR PART?  WELL, ONCE WE -- SO
12   IT DEPENDS, OF COURSE, ON THE SEARCH TERMS.  THE FIRST
13   ROUND WE HAD A LOT OF BACK AND FORTH ABOUT WHAT ARE
14   REASONABLE SEARCH TERMS AND THINGS LIKE THAT.
15           THE COURT:  HAVE YOU ALL NOT DEVELOPED -- ARE
16   YOU ALL NOT GOING TO USE THE SAME SEARCH TERMS?
17           MS. KURTZ:  I THINK FOR THE MOST PART WE
18   PROBABLY WILL USE THE SAME SEARCH TERMS.  I CAN IMAGINE A
19   TERM HERE OR THERE BEING ADDED BASED UPON, YOU KNOW, WHAT
20   WE SEE IN THE DOCUMENTS, HOW THE OTHER SIDE IS REFERRING
21   TO CERTAIN THINGS.  SO I THINK THERE WILL BE SOME
22   NEGOTIATION ON SEARCH TERMS, BUT NOT TO THE EXTENT THAT IT
23   WAS IN THE FIRST ROUND.
24           THE COURT:  ONCE YOU AGREE TO THE SEARCH TERMS,
25   HOW -- I MEAN, HOW LONG WOULD IT TAKE TO DO, TO IMPLEMENT

1  THE SEARCH?

2          MS. KURTZ:  SO TO IMPLEMENT THE SEARCH IS VERY

3  FAST; BUT TO REVIEW THE DOCUMENTS, THAT'S WHAT TAKES TIME.

4  SO THE FIRST ROUND OF ESI, I BELIEVE THE SEARCH TERMS FOR

5  BOTH PARTIES HIT ON ABOUT 100,000 UNIQUE DOCUMENTS; AND SO

6  EVEN WITH A LARGE TEAM OF DOCUMENT REVIEWERS, WHEN YOU

7  HAVE THEM REVIEWING THE DOCUMENTS, DOING THE QC AND THINGS

8  LIKE THAT, IT CAN TAKE SEVERAL MONTHS TO, YOU KNOW, COM-

9  PLETE IT ONCE THE DOCUMENTS ARE INGESTED INTO THE SYSTEM.

10          THE COURT:  OKAY.  ALL RIGHT.  AND SO IF YOU --

11  SO REALLY THE PROCESS HERE IS, ALL RIGHT, BEGINNING PHASE

12  TWO, YOU ALL HAVE TO SIT DOWN AND NEGOTIATE, NUMBER ONE,

13  THE SEARCH TERMS; THEN YOU IMPLEMENT THE SEARCH, WHICH

14  DOESN'T TAKE LONG; THEN YOU'VE GOT A UNIVERSE THEN, A

15  DEFINED UNIVERSE OF DOCUMENTS NOW THAT YOU'RE GOING TO

16  HAVE TO ASSIMILATE, AND YOU'RE GOING TO HAVE YOUR TEAM OF

17  DOCUMENT EXAMINERS LOOK AT IT BEFORE YOU TURN IT OVER FOR

18  PRIVILEGED INFORMATION AND THAT, CREATE ANOTHER PRIVILEGE

19  LOG; AND THEN WE'LL BE LITIGATING WHETHER-THE-

20  PRIVILEGE-IS-APPROPRIATE-OR-NOT EXERCISE, I ASSUME.

21          MS. KURTZ:  HOPEFULLY WE WON'T BE LITIGATING

22  THAT.  WE'VE GOTTEN A ALONG PRETTY WELL THUS FAR, SO THAT

23  REMAINS TO BE SEEN.

24          THE COURT:  OKAY, AND YOU'RE THINKING THE TIME

25  FRAME TO DO THAT IS WHAT?

1          MS. KURTZ:  SO AS, AS WE LOOK AT, YOU KNOW, A

2     NINE MONTH EXTENSION OF CURRENT DEADLINES, YOU KNOW,

3     OBVIOUSLY, THE FACT AND EXPERT DISCOVERY DEADLINE IS THE

4     SAME, I THINK THE GOAL WOULD BE TO GET AT LEAST SOME

5     DEPOSITIONS DONE BEFORE THE EXPERT REPORT DEADLINE.  SO

6     UNDER KIND OF A NINE MONTH EXTENSION, I BELIEVE THAT WOULD

7     MAKE THE PLAINTIFFS' REPORTS DUE, I BELIEVE IT WAS JUNE

8     13TH OR SOMETHING AROUND MID JUNE, AND SO WE WOULD WANT --

9          THE COURT:  EXPERT REPORT?

10          MS. KURTZ:  EXPERT REPORT.  SO WE WOULD, YOU

11    KNOW, WANT TO MAKE SURE WE GET THAT SECOND ROUND OF ESI

12    DOCUMENTATION PRODUCED, MAYBE SOME DEPOSITIONS TAKEN

13    BEFORE THEN.  YOU KNOW, I THINK THAT WE CAN TAKE SOME

14    DEPOSITIONS AFTER, YOU KNOW, EXPERT REPORTS ARE DUE AS

15    YOUR HONOR'S SCHEDULE TYPICALLY ALLOWS.  SO NOT LOOKING TO

16    GET THROUGH FACT DISCOVERY BEFORE JUNE 13TH, BUT I THINK

17    HAVING A JUNE 13TH EXPERT REPORT DEADLINE WOULD ALLOW US

18    TO COMPLETE PRODUCTION OF THE PHASE TWO ESI DOCUMENTS AND

19    TAKE SOME OF THOSE DEPOSITIONS BEFORE THE EXPERT REPORTS

20    GO IN.

21          THE COURT:  OKAY.  WOULD IT BE HELPFUL IF WE

22    SET A DEADLINE FOR THE COMPLETION OF ESI PHASE TWO?

23          MS. KURTZ:  I THINK MAYBE IT COULD BE HELPFUL.

24    I'D WANT TO CONFER WITH TEAM HEALTH TO MAKE SURE THAT WE

25    ARE ON THE SAME PAGE ABOUT WHAT THAT DEADLINE MAKES SENSE,

1   BUT I COULD SEE A DEADLINE OF, YOU KNOW, APRIL OR SOME-
2   THING OF 2025 MAKING SENSE TO MAKE SURE THOSE DOCUMENTS
3   ARE PRODUCED.  WE CAN GET SOME DEPOSITIONS TAKEN IN THE
4   TWO MONTHS AFTER THE PRODUCTION BEFORE EXPERT REPORT
5   DEADLINES, BUT I'M HAPPY TO CONFER WITH MR. SHOCKLEY AND
6   MR. MULQUEEN ON THAT.
7            THE COURT:  MR. SHOCKLEY, WHAT DO YOU THINK?
8   I'LL CONFER WITH YOU RIGHT NOW.
9            MR. SHOCKLEY:  THANK YOU, YOUR HONOR.
10           I THINK IT, I THINK IT WOULD BE HELPFUL.  MY
11  THOUGHT IS IT WOULD MAKE SENSE FOR THE PARTIES TO CONFER
12  ON, ON ALL THE ISSUES THAT WE'VE IDENTIFIED, WHO ARE THOSE
13  PHASE TWO CUSTODIANS, WHAT ARE THE SEARCH TERMS, DO WE
14  HAVE NEW OR DIFFERENT ONES, AND THEN MAKE A REALISTIC
15  ESTIMATE OF HOW LONG WE THINK THAT PROCESS OF COLLECTING
16  THOSE CUSTODIANS' DATA, RUNNING THOSE SEARCHES, DOING THE
17  REVIEW AND PRODUCING THEM IS.  I WOULD HOPE WE COULD DO
18  THAT WITHIN 90 DAYS.  MY EXPERIENCE TELLS ME THAT I SHOULD
19  SAY TWICE AS LONG AS I THINK BECAUSE I'M USUALLY WRONG,
20  AND I'M -- ONE OF THE DIGITAL NATIVES COULD PROBABLY
21  ANSWER THAT QUESTION BETTER THAN I COULD; BUT I THINK IF
22  WE SET DOWN, HAD THAT DISCUSSION, THEN WE COULD -- TO THE
23  EXTENT YOUR HONOR THINKS A PHASE TWO SCHEDULE IS HELPFUL,
24  WE COULD CERTAINLY COME BACK AND GIVE YOU A DATE FOR THAT
25  AND TRY TO MAKE IT MAKE SENSE WITH THESE OTHER DATES WE'RE

1   PROPOSING.

2           THE COURT:  RIGHT.

3           MR. MULQUEEN:  AND I'D JUST ADD ONE THING TO

4   THAT.  I THINK PART OF CALCULATING A REALISTIC DEADLINE IS

5   WHAT ARE THE TERMS, CUSTODIANS, AND WHAT DOES THAT INITIAL

6   BODY OF DOCUMENTS LOOK LIKE THAT HAS TO BE REVIEWED

7   BECAUSE IF THAT INITIAL BODY IS 10,000 DOCUMENTS, THAT'S A

8   MUCH QUICKER REVIEW THAN 100,000 DOCUMENTS; AND SO I THINK

9   GENERALLY A DEADLINE WOULD BE HELPFUL BECAUSE REALIS-

10  TICALLY THE PARTIES WILL WORK TOWARDS A DEADLINE, AND I

11  THINK A LITTLE BIT MORE INFORMATION WOULD HELP US CRAFT,

12  IS APRIL REALISTIC, IS MAY REALISTIC, ET CETERA.

13          MR. SHOCKLEY:  AND TO THE EXTENT IT MIGHT BE

14  HELPFUL, I THINK PART OF THAT PROCESS WOULD BE, WE CAN RUN

15  TEST SEARCHES AND COME BACK WITH HIT COUNTS; AND IF A NEW

16  TERM COMES BACK WITH A MILLION HITS, THEN WE KNOW THAT'S

17  NOT REALISTIC, AND WE CAN WORK TO, TO NARROW THAT DOWN TO

18  SOMETHING THAT IS REALISTIC; AND I THINK IF WE HAVE THAT

19  DISCUSSION, WHICH IS GOING TO HAPPEN ANYWAY, BUT I THINK

20  IF WE HAVE THAT DISCUSSION, WE CAN REPORT BACK TO THE

21  COURT, GIVE YOU ESTIMATES OR DEADLINES AS YOU PREFER AND,

22  AND MAKE THAT PART OF THE PROCEDURE AS WELL.

23          THE COURT:  OKAY.

24          MS. KURTZ:  YEAH.  AND ALONG SIMILAR LINES,

25  MR. SHOCKLEY REFERENCED THAT, YOU KNOW, WE HAVE THOUGHTS

1    ON, YOU KNOW, A TRIAL DATE.  I UNDERSTAND THE COURT HASN'T

2    SET A TRIAL DATE BECAUSE WE'VE ASKED FOR SO MANY

3    EXTENSIONS, BUT I THINK HAVING A FIRM TRIAL DATE THAT

4    WE'RE WORKING TOWARDS WILL REALLY KEEP THE PARTIES ON

5    TRACK; AND SO KIND OF WITH THE PROPOSED, YOU KNOW, NINE

6    MONTH EXTENSION OF PENDING DEADLINES, YOU KNOW, WE WERE

7    THINKING, YOU KNOW, A TRIAL DATE, GIVEN WHATEVER YOUR

8    HONOR'S CALENDAR IS, IN APRIL, MAY OF 2026 IS REALISTIC.

9    IT'S -- THERE WON'T BE A LOT OF MESSING AROUND TIME FOR

10   US, BUT I THINK JUST HOLDING, YOU KNOW, HOLDING US TO THAT

11   DATE WILL HELP MAKE SURE WE'RE GETTING THIS DONE IN A

12   TIMELY FASHION.

13           THE COURT:  HOW LONG DO YOU THINK THIS TRIAL IS

14   GOING TO TAKE?

15           MS. KURTZ:  I BELIEVE THE PARTIES PREDICTED

16   THREE WEEKS, I COULD SEE IT GOING A LITTLE BIT SHORTER

17   THAN THAT, BUT THAT WAS WHAT WE HAD AGREED TO IN THE

18   INITIAL CASE MANAGEMENT, PROPOSED CASE MANAGEMENT ORDER.

19           THE COURT:  OKAY.  YOU KNOW, A LOT OF TIMES --

20   I KNOW WHEN I WENT TO BABY JUDGE SCHOOL, THEY SAID, SET A

21   TRIAL DATE AND DON'T MOVE IT; AND I HAVEN'T SET A TRIAL

22   DATE ON THIS ONE BECAUSE OF THE -- TO GIVE YOU ALL --

23   WELL, I MEAN, I WAS TRYING TO BE SENSITIVE TO THE

24   COMPLEXITY OF THE CASE AND SET A REALISTIC TRIAL DATE.  OF

25   COURSE, THIS CASE HAS GOT SOME AGE ON IT ALREADY.  AS OF

1  LAST MONTH, IT'S THREE YEARS OLD, AND THAT'S USUALLY A

2  BRIGHT LINE IN THE SAND FOR DISTRICT JUDGES BECAUSE THEY

3  DON'T LIKE TO HAVE -- WE DON'T LIKE TO HAVE CASES THAT ARE

4  TAKING SO LONG TO GET RESOLVED.

5          SO TO ANSWER YOUR QUESTION ABOUT HOW DO WE

6  RESOLVE DISCOVERY DISPUTES, I THINK I'M GOING TO BE

7  INVOLVED IN IT ONLY BECAUSE I THINK I'M FAMILIAR WITH THE

8  CASE, I THINK IT WOULD BE JUST SMARTER TO, FOR ME JUST TO

9  GIVE YOU AN ANSWER AND MOVE ON.  THAT WAY WE DON'T HAVE TO

10 HAVE A HEARING, REPORT AND RECOMMENDATION OR AN ORDER AND

11 THEN AN APPEAL FROM THAT ORDER, AND THAT WOULD JUST

12 SEEM -- THAT WOULD JUST GUM UP THE WORKS, I THINK.  SO I

13 THINK I'LL BE RESPONSIBLE FOR RESOLVING ANY DISCOVERY

14 DISPUTES ON THAT.

15          SO POTENTIALLY A TRIAL DATE IN APRIL OF 2026 IS

16 WHAT WE'RE THINKING.  MR. SHOCKLEY, DO YOU ALL THINK

17 THAT'S REALISTIC?

18          MR. SHOCKLEY:  WE DO, YOUR HONOR.

19          THE COURT:  OKAY.

20          MR. SHOCKLEY:  AND WHILE OCTOBER IS MY FAVORITE

21 MONTH TO BE IN EAST TENNESSEE, APRIL AND MAY ARE FINE TOO.

22          THE COURT:  OKAY.  ALL RIGHT.

23          ALL RIGHT.  LET ME ASK, MR. MULQUEEN, YOU HAD

24 SAID THAT THERE WERE A NUMBER OF DIFFERENT CONCERNS THAT

25 YOU HAVE ABOUT AREAS THAT YOU FEEL LIKE THERE'S DISAGREE-

 1    MENT ABOUT PRODUCTION OF DOCUMENTS OR ESI, GIVE ME A --

 2    I'LL TURN THE FLOOR OVER TO YOU TO KIND OF GIVE ME A

 3    SENSE OF --

 4              MR. MULQUEEN:  SURE.

 5              THE COURT:  -- WHAT YOU THINK.

 6              MR. MULQUEEN:  AND WE UNDERSTAND, YOU KNOW,

 7    WE'RE NOT -- WE DON'T HAVE A MOTION FILED, WE'RE NOT HERE

 8    TO NECESSARILY TALK ABOUT THE MERITS, BUT TO GIVE YOUR

 9    HONOR KIND OF A SENSE OF WHAT WE THINK IS PROBABLY GOING

10    TO COME AND PROBABLY SOON BECAUSE THE PARTIES HAVE BEEN

11    TALKING ABOUT A NUMBER OF SUBSTANTIVE DISPUTES ABOUT

12    DISCOVERY REQUESTS OVER THE LAST 9 TO 12 MONTHS THAT ARE

13    PROBABLY READY TO GET TEED UP WITH A FORMAL MOTION.

14              BEFORE I GET TO THOSE, ONE THING THAT I'M

15    CERTAIN THAT WE'LL HAVE TO WORK THROUGH PROBABLY WITH THE

16    COURT'S HELP IS REDACTIONS OF DOCUMENTS THAT HAVE BEEN

17    PRODUCED BY UNITED AND CONFIDENTIALITY DESIGNATIONS OF

18    DOCUMENTS.  SO UNITED HAS PRODUCED I THINK ABOUT 4,500

19    DOCUMENTS TOTAL TO DATE, AND A THOUSAND OF THOSE DOCUMENTS

20    HAVE BEEN REDACTED FOR CONFIDENTIAL BUSINESS REASONS, SO

21    NOT PRIVILEGED REDACTIONS, NOT PERSONAL HEALTH REDACTIONS,

22    BUT INFORMATION THAT UNITED BELIEVES IS JUST CONFIDENTIAL

23    BUSINESS INFORMATION.

24              THE DEFENDANTS' POSITION, AND WE'VE NOTED THIS

25    IN SOME OF THE STATUS REPORTS, IS THAT A PROTECTIVE ORDER

1   JUST SIMPLY DOESN'T ALLOW FOR REDACTION FOR CONFIDEN-

2   TIALITY.  WE THINK THAT SOME OF THE INFORMATION THAT'S

3   REDACTED, ALSO WE DON'T KNOW WHAT IT IS BECAUSE IT'S BEEN

4   REDACTED, BUT WE THINK IT'S POTENTIALLY RELEVANT TO OUR

5   DEFENSES, AND SO WE ANTICIPATE VERY LIKELY NEEDING TO WORK

6   THROUGH THAT ISSUE FOR PROBABLY A VERY LARGE NUMBER OF

7   DOCUMENTS.

8           SIMILAR ISSUE WITH DOCUMENTS THAT HAVE BEEN

9   DESIGNATED AS ATTORNEYS' EYES ONLY, THERE ARE, IF I LOOK

10  AT MY NOTES CORRECTLY, I THINK 1,316 DOCUMENTS THAT HAVE

11  BEEN DESIGNATED BY UNITED AS ATTORNEYS' EYES ONLY; SO THAT

12  MEANS THAT THEY'RE NOT JUST CONFIDENTIAL UNDER THE

13  PROTECTIVE ORDER, BUT WE CAN'T SHOW THOSE DOCUMENTS TO OUR

14  CLIENT.  AND, AGAIN, WE THINK THAT THERE ARE VERY LIKELY A

15  LARGE NUMBER OF THOSE DOCUMENTS THAT WE'RE GOING TO

16  DISAGREE WITH, AND WE'RE IN THE PROCESS OF WORKING THROUGH

17  THOSE RIGHT NOW.

18          THE PROTECTIVE ORDER CALLS FOR THE PARTIES TO

19  INITIALLY CONFER AND SEE IF WE CAN REACH AGREEMENT, I

20  SUSPECT, AND MS. KURTZ CAN OBVIOUSLY CLARIFY UNITED'S

21  POSITION, I SUSPECT THAT THERE WILL BE PROBABLY A GOOD

22  NUMBER OF DOCUMENTS THAT WE CAN'T REACH AGREEMENT ON AND

23  WE'LL HAVE TO BRING TO THE COURT'S ATTENTION.  SO THAT

24  ISSUE ALONE I THINK IS GOING TO BE POTENTIALLY A BIG ONE,

25  AND SUBSTANTIVELY WE'LL HAVE TO WORK THROUGH THAT; BUT

1   THEN ALSO WANTED TO GET SOME GUIDANCE FROM YOUR HONOR ON,
2   ASSUMING WE HAVE TO GET THERE, HOW WE RAISE THAT WITH THE
3   COURT.  I KNOW THE LOCAL RULES, LOCAL RULE 26.2 HAS
4   PROCEDURE FOR FILING DOCUMENTS UNDER SEAL BY MOTION, AND
5   YOU HAVE TO GET PERMISSION BEFORE YOU CAN ACTUALLY FILE A
6   DOCUMENT UNDER SEAL.  THE NATURE OF THESE KINDS OF
7   DISPUTES IS THAT IN ORDER TO GET THESE DOCUMENTS BEFORE
8   THE COURT, WE'LL PROBABLY HAVE TO BE FILING A LARGE NUMBER
9   OF DOCUMENTS, EITHER IN REDACTED FORM OR UNDER SEAL.
10  THAT'S GOING TO BE A COMPLICATED LOGISTICAL PROCESS FOR
11  THE PARTIES AND THE COURT, SO I JUST WANTED TO BRING THAT
12  TO THE COURT'S ATTENTION AND SEE IF THE COURT HAD ANY
13  GUIDANCE ON THAT; BUT THAT'S ONE OF THE ISSUES.  LET ME
14  STOP THERE BEFORE I GO ANY FURTHER.
15              THE COURT:  OKAY, SO WE'VE GOT SOME CONFIDENTI-
16  ALITY BUSINESS REASONS THAT YOU SAY ARE NOT LEGITIMATE FOR
17  REDACTION, ATTORNEYS' EYES ONLY ISSUE THAT MAY INVOLVE A
18  LOT OF DOCUMENTS, OVER 1,300, THAT WILL -- HAVE YOU -- ARE
19  YOU READY TO LIKE FILE A MOTION TO COMPEL?  HAVE YOU ALL
20  TALKED ABOUT THIS AT ALL OR --
21              MR. MULQUEEN:  WE'RE NOT READY TO FILE A MOTION
22  TO COMPEL TOMORROW, BUT WE'RE AT THE POINT NOW WHERE WE
23  ARE GETTING TOWARDS THE END OF OUR PROCESS ON THE DEFENSE
24  SIDE OF REVIEWING ALL OF THE DOCUMENTS THAT HAVE BEEN
25  PRODUCED IN THE LAST COUPLE OF MONTHS BY UNITED TO UNDER-

1   STAND, OKAY, OUT OF ALL THESE DOCUMENTS, WHICH ONES DO WE

2   HAVE DISPUTES WITH.  THE PROCESS IS THAT THE PARTIES THEN

3   ARE SUPPOSED TO CONFER --

4           THE COURT:  RIGHT.

5           MR. MULQUEEN:  -- AND THERE'S A 14 DAY WINDOW

6   UNDER THE PROTECTIVE ORDER TO DO THAT.

7           THE COURT:  RIGHT.

8           MR. MULQUEEN:  WE, WE HAVE CONFERRED ON ONE

9   DOCUMENT SO FAR, BUT THERE'S PROBABLY A LOT OF DOCUMENTS

10  THAT WE'RE ABOUT TO HAVE TO CONFER ON.

11          THE COURT:  IT SOUNDS LIKE THAT THERE'S A

12  CLASSIFICATION OF DOCUMENTS, LIKE THE AEO DOCUMENTS.  I

13  MEAN, AS A GENERAL RULE, I ASSUME YOU ALL ARE JUST GOING

14  TO HAVE TO GO ONE BY ONE THROUGH THAT OR IS IT --

15          MR. MULQUEEN:  I THINK WHAT WE'RE ENVISIONING

16  IS LIKELY PROBABLY A BIG SPREADSHEET THAT'S GOING TO HAVE

17  A BUNCH OF DOCUMENTS ON IT THAT WE WOULD SEND TO THE OTHER

18  SIDE AND THEN SIT DOWN AND TALK THROUGH.

19          A BIG CHUNK OF THOSE DOCUMENTS, THE REDACTED

20  DOCUMENTS AND THE AEO DOCUMENTS, ARE THE SAMPLE PLAN

21  DOCUMENTS, AND I THINK THERE'S PROBABLY, YOU KNOW, ONE OR

22  A SMALL NUMBER OF ISSUES THAT APPLY TO ALL THOSE

23  DOCUMENTS, WE CAN PROBABLY GET THROUGH RELATIVELY QUICKLY

24  WHETHER WE CAN AGREE OR NOT.  AND I THINK ON, ON THE ASO

25  PLAN DOCUMENTS, FOR EXAMPLE, I'M PRETTY SURE THE PARTIES

1    HAVE ALREADY CONFERRED AND JUST DISAGREE THAT CERTAIN, FOR
2    EXAMPLE, FEE INFORMATION IN THOSE DOCUMENTS WE'RE GOING TO
3    HAVE TO BRING TO THE COURT'S ATTENTION.
4            THERE'S PROBABLY A COUPLE OF HUNDRED DOCUMENTS,
5    SMALLER SUBSET BUT STILL A LARGE NUMBER, OF ESI CUSTODIAL
6    E-MAILS ESSENTIALLY THAT HAVE BEEN EITHER DESIGNATED AEO
7    OR REDACTED THAT ARE GOING TO BE A LITTLE BIT MORE
8    DIFFICULT TO WORK THROUGH, I THINK, FOR THE PARTIES AND
9    THE COURT BECAUSE THERE ARE INDIVIDUALIZED ISSUES PROBABLY
10   WITH THOSE DOCUMENTS.
11           THE COURT:  OKAY, AND WHAT OBSTACLE DO YOU FEEL
12   LIKE THESE DISCOVERY DISPUTES WILL HAVE ON THE PROGRESSION
13   OF THE CASE?  IT SOUNDS LIKE THIS IS GOING TO BE A -- THIS
14   IS A BIG ISSUE.
15           MR. MULQUEEN:  I THINK IT'S A BIG ISSUE.  I
16   DON'T THINK IT SHOULD STOP THE PROCESS WE'VE TALKED ABOUT
17   FOR PHASE TWO ESI COLLECTION AND PRODUCTION BECAUSE
18   WHETHER OR NOT SOMETHING IS REDACTED OR DESIGNATED
19   CONFIDENTIAL SHOULD NOT STOP THE PARTIES FROM PROCEEDING
20   ON PRODUCING OTHER DOCUMENTS.  THERE COULD -- THERE'S
21   OBVIOUSLY GOING TO BE SOME TIME INVOLVED IN RESOLVING THE
22   DISPUTE, AND THEN BASED ON, FOR EXAMPLE, DOCUMENTS THAT
23   ARE REDACTED THAT COULD POTENTIALLY BECOME UNREDACTED, WE
24   MAY BE LEARNING NEW INFORMATION THAT WOULD THEN INFORM
25   THINGS THAT WE DIDN'T REALIZE PREVIOUSLY THAT COULD INFORM

1    DISCOVERY.  SO THAT COULD POTENTIALLY RESULT IN SOME

2    ADDITIONAL FOLLOW-UP DISCOVERY REQUESTS OR MODIFICATIONS

3    OF SEARCH TERMS, BUT I THINK BY AND LARGE IT SHOULD NOT

4    STOP PHASE TWO FROM PROCEEDING.

5              THE COURT:  OKAY.  ANY OTHER AREAS THAT YOU

6    HAVE A CONCERN ABOUT?

7              MR. MULQUEEN:  YEAH.  I THINK WE'RE LIKELY TO

8    HAVE A MOTION TO COMPEL PROCESS, I THINK IN THE NEAR

9    FUTURE, ON A COUPLE OF SUBSTANTIVE ISSUES THAT WE'VE

10   SOUGHT DISCOVERY ON THAT UNITED HAS, HAS OBJECTED TO.

11             THE COURT:  WHAT ARE THOSE?

12             MR. MULQUEEN:  ON THE SAMPLE CLAIMS, THERE'S AT

13   LEAST ONE AREA WHERE WE'VE REQUESTED CERTAIN DATA OR

14   INFORMATION ON TERMINATION DATES FOR PLANS, AND WE THINK

15   THAT'S RELEVANT TO UNDERSTANDING, AS MR. SHOCKLEY

16   EXPLAINED, WHETHER OR NOT THE THREE UNITED PLAINTIFFS HAVE

17   STANDING TO BRING A CLAIM ON BEHALF OF, FOR EXAMPLE, AN

18   ASO PLAN MEMBER.  IF THE PLAN TERMINATED FOUR YEARS AGO,

19   FOR EXAMPLE, THAT MIGHT HAVE CONSEQUENCES FOR WHETHER

20   TODAY UNITED CAN BE BRINGING A CLAIM ON BEHALF OF THAT

21   PLAN.  SO WE THINK THAT IS SOMETHING THAT WE'RE GOING TO

22   HAVE TO RAISE.

23             ANOTHER AREA OF DATA OR INFORMATION RELATED TO

24   THE SAMPLE THAT WE THINK WE'RE GOING TO HAVE TO RAISE WITH

25   THE COURT IS FEE INFORMATION.  SO MUCH OF WHAT UNITED HAS

1    REDACTED FROM THE SAMPLE PLAN DOCUMENTS FOR THESE 528

2    CLAIMS HAS TO DO WITH FEES THAT UNITED CHARGES ITS

3    CUSTOMERS, AND UNITED CAN OBVIOUSLY EXPLAIN ITS POSITION

4    ON WHY THAT REDACTION IS APPROPRIATE.  WE THINK IT'S NOT

5    APPROPRIATE.  WE THINK THAT THOSE FEES IMPACT POTENTIALLY

6    OUR DEFENSES AND DAMAGES.

7            ONE OF UNITED'S CLAIMS, FOR EXAMPLE, IS UNJUST

8    ENRICHMENT.  OUR POSITION IS TO THE EXTENT UNITED HAS BEEN

9    GETTING PAID ON THINGS LIKE INVESTIGATING FRAUD, LOOKING

10   INTO UPCODING, SHARING WHAT UNITED TERMS SAVINGS WITH ITS

11   PLAN MEMBERS BASED ON A REDUCTION OF THE PRICE THAT THEY

12   PAY FOR OUT-OF-NETWORK CLAIMS, UNITED MAY BE GETTING PAID

13   MORE THAN DEFENDANTS ARE ON A PARTICULAR CLAIM OR BE

14   GETTING PAID SOMETHING THAT WE THINK WOULD IMPACT WHETHER

15   THEY -- WHETHER DEFENDANTS WERE UNJUSTLY ENRICHED AND

16   WHETHER UNITED HAS ACTUALLY SUFFERED DAMAGES.

17           SO WE'VE -- THE PARTIES HAVE TALKED ABOUT

18   POTENTIALLY UNREDACTING THOSE ASO PLAN DOCUMENTS, AND

19   PLAINTIFFS DON'T AGREE TO DO THAT.  WE'VE ASKED IN THE

20   ALTERNATIVE FOR DATA FOR THE 528 CLAIMS OR THE BROADER SET

21   OF CLAIMS IN GENERAL THAT WOULD DISCLOSE THAT INFORMATION

22   SO THE PARTIES WOULD NOT HAVE TO MANUALLY REVIEW THOSE

23   DOCUMENTS, AND I THINK THE PARTIES ARE AT AN IMPASSE ON

24   THAT ISSUE.

25           THE COURT:  OKAY.

1          MR. MULQUEEN:  THERE'S A BROADER SET OF

2    DOCUMENTS THAT WE'VE ALSO ASKED FOR REGARDING THE SHARED

3    SAVINGS PROGRAM, WHICH IS CONNECTED WITH SOME OF THOSE

4    SHARED SAVINGS FEE -- SOME OF THAT SHARED SAVINGS FEE

5    INFORMATION THAT I JUST MENTIONED, BUT THAT WOULD BE A

6    BROADER REQUEST THAT ALSO THE PARTIES ARE AT AN IMPASSE ON

7    REGARDING DOCUMENTS, E-MAILS, PDFS, THAT SORT OF THING ON

8    THE SHARED SAVINGS PROGRAM THAT UNITED HAS IMPLEMENTED

9    WITH ITS PLAN CUSTOMERS WHERE, AGAIN, IT REDUCES THE

10   AMOUNT OF PAYS FOR OUT-OF-NETWORK CLAIMS, WHICH IS WHAT

11   THIS CASE IS ABOUT, AND RECEIVES A CUT OF THAT, OF THAT

12   QUOTE UNQUOTE SAVINGS.

13         THERE'S A HANDFUL OF OTHER ISSUES THAT WE'RE

14   LIKELY TO HAVE TO RAISE.  WE HAVE ASKED, FOR EXAMPLE, FOR

15   CODING ACUITY INFORMATION AND CORPORATE STRUCTURE

16   DOCUMENTS RELATED TO A COMPETITOR OF DEFENDANTS CALLED

17   SOUND PHYSICIANS, WHICH IS ACTUALLY A EMERGENCY ROOM

18   STAFFING COMPANY VERY SIMILAR TO DEFENDANTS THAT UNITED

19   OWNS.  AND SO WE HAVE ASKED FOR CODING INFORMATION,

20   CORPORATE STRUCTURE DOCUMENTS TO -- FROM DEFENDANTS'

21   PERSPECTIVE TO SEE, OKAY, WELL, HOW DOES THE CODING LOOK

22   BY A GROUP THAT UNITED OWNS COMPARED TO OUR CODING.  HOW

23   DOES THE CORPORATE STRUCTURE OF THAT ENTITY LOOK COMPARED

24   TO OUR CORPORATE STRUCTURE BECAUSE THE PLAINTIFFS HAVE

25   ALLEGED THAT OUR CORPORATE STRUCTURE IS PART OF A

1   FRAUDULENT RICO ENTERPRISE. OUR POSITION IS, OBVIOUSLY,

2   THIS IS PERFECTLY NORMAL, AND WE WANT TO SHOW THAT'S

3   PERFECTLY NORMAL.

4           THERE'S A HANDFUL OF OTHER CATEGORIES OF

5   DOCUMENTS, BUT THAT GIVES YOUR HONOR A FLAVOR OF, I THINK,

6   SOME OF THE DISPUTES WE'RE LIKELY TO RAISE.

7           THE COURT: OKAY.

8           MS. KURTZ: YOUR HONOR, CAN I ASK YOU A

9   QUESTION PROCEDURALLY ABOUT HOW WE SHOULD BE RAISING THOSE

10  DISPUTES? WE HAVE AT LEAST ONE DISPUTE THAT IS RIPE FOR A

11  MOTION TO COMPEL. I KNOW UNDER THE CASE MANAGEMENT ORDER

12  THERE WAS AN INSTRUCTION TO CALL THE MAGISTRATE FIRST TO

13  TRY AND HAVE THEM RESOLVE IT INFORMALLY. I UNDERSTAND

14  THAT YOU INTEND TO INVOLVE YOURSELF AND BE THE DECIDER OF

15  THESE DISCOVERY DISPUTES, SO, YOU KNOW, WE THINK IT MIGHT

16  MAKE THE MOST SENSE JUST TO FILE THE MOTIONS RATHER THAN

17  HAVING A PRE-CALL. THE PARTIES HAVE MET AND CONFERRED

18  EXTENSIVELY ON A LOT OF THESE ISSUES, AND SO I JUST WANT

19  TO UNDERSTAND PROCEDURALLY HOW YOU WOULD LIKE US TO GO

20  FORWARD.

21          THE COURT: IT SOUNDS LIKE THERE'S GOING TO BE

22  A LOT OF DISAGREEMENT ABOUT PRODUCTION OF DOCUMENTS AND

23  REDACTIONS AND THINGS LIKE THAT THAT, THAT HASN'T BEEN

24  RAISED YET, THAT HASN'T BEEN LITIGATED YET, THAT I

25  ANTICIPATE CAUSING A LOT OF PROBLEMS DOWN THE ROAD IF WE

1    DON'T HAVE THEM RAISED SOON.

2             I'M REALLY KIND OF SURPRISED THAT THERE'S ALL

3    THESE DISPUTES THAT ARE BREWING AND THAT HAVE REPRESENTED

4    COULD CAUSE A LOT OF DELAY TO THE CASE THAT HASN'T BEEN

5    BROUGHT TO THE COURT'S ATTENTION YET TO GET RESOLVED

6    BECAUSE I FORESEE ME ENTERING A NEW SCHEDULING ORDER AND

7    THEN EVERYBODY FIGHTING FOR THE NEXT SIX MONTHS AND

8    SAYING, WELL, WE CAN'T EVEN FINISH PHASE TWO'S ESI BECAUSE

9    THEY WON'T GIVE US WHAT WE WANT, AND WE HAVEN'T FILED A

10   MOTION YET, BUT.  YOU KNOW, I FEEL LIKE WE'RE GOING TO BE,

11   WE'RE NEVER GOING TO GET THIS CASE TO TRIAL IF WE DON'T

12   WORK OUT THESE DIFFERENCES SOONER RATHER THAN LATER;

13   RIGHT.  I MEAN, WHAT'S -- YOU KNOW, HIS HEARD, A LOT OF

14   THESE DISAGREEMENTS, WHAT'S YOUR THOUGHT ON SOME OF THESE

15   THINGS?  IS IT --

16            MS. KURTZ:  YEAH.  I MEAN, I THINK THAT WHILE

17   HE HAS SEPARATED OUT A LOT OF THE DISAGREEMENTS, I THINK A

18   LOT OF IT BOILS DOWN TO A FEW SUBSTANTIVE ISSUES THAT

19   AREN'T ACTUALLY AS COMPLEX DOCUMENT-BY-DOCUMENT TYPE OF

20   REVIEW AS POSSIBLE.  FOR EXAMPLE, THE SHARED SAVINGS

21   ISSUE, THAT IS AN ISSUE THAT UNDERLIES, YOU KNOW, SOME OF

22   THE REDACTION ISSUES, YOU KNOW, OUR RESPONSES TO CERTAIN

23   DISCOVERY REQUESTS, YOU KNOW, THE REQUEST FOR ADDITIONAL

24   INFORMATION AND DATA.  I THINK THE COURT CALLING A BALL OR

25   A STRIKE ON WHETHER THIS INFORMATION IS RELEVANT AND TO

1   WHAT EXTENT IT'S RELEVANT, THAT ACTUALLY WILL NOT BE THAT

2   DIFFICULT FOR THE PARTIES THEN TO RESOLVE, OKAY, DO WE

3   NEED TO UNREDACT DOCUMENTS, DO WE NEED TO, YOU KNOW, AGREE

4   TO SOME LIMITED SEARCH TERMS ON THESE ISSUES; AND SO WHILE

5   IT IS A LOT OF INDIVIDUAL ISSUES BECAUSE OF HOW DOCUMENTS

6   ARE PRODUCED AND THE DIFFERENT TYPES OF DOCUMENTS THAT ARE

7   AT ISSUE IN THIS CASE, I THINK THAT IT BOILS DOWN TO A FEW

8   SUBSTANTIVE QUESTIONS --

9          THE COURT:  RIGHT.

10         MS. KURTZ:  -- THAT I THINK WILL ACTUALLY BE A

11   BIT EASIER FOR THE COURT TO HANDLE THAN YOU MIGHT THINK

12   WHEN YOU'RE HEARING LIKE THERE'S, YOU KNOW, 1,300 OR 2,000

13   DOCUMENTS IN DISPUTE.

14         THE COURT:  RIGHT.  SO I'M SECOND GUESSING

15   MYSELF WHETHER I SHOULD BE HANDLING THESE DISCOVERY

16   DISPUTES OR NOT.

17         MS. KURTZ:  FOR OUR PART I THINK THAT WE HAVE

18   ONE SIGNIFICANT ISSUE, WHICH IS WHETHER DISCOVERY INTO

19   INFORMATION PROVIDED BY TEAM HEALTH TO BLACKSTONE, WHICH

20   IS THEIR PUBLIC -- OR PRIVATE EQUITY OWNER, IS RELEVANT.

21   WE'VE DRAFTED UP THE MOTION ON THAT, I JUST HAVE TO REVIEW

22   IT AGAIN AND, YOU KNOW, GET FINAL CLIENT SIGN-OFF; BUT

23   THAT'S THE ONE KIND OF BIG ISSUE THAT I COULD SEE HAVING

24   AN IMPACT POTENTIALLY ON PHASE TWO DISCOVERY JUST BECAUSE

25   IF THE COURT GOES OUR WAY ON THAT ISSUE, IT WILL PROBABLY

1   BE A CUSTODIAN THAT WILL BE ADDED RELATED TO THAT.  SO,

2   YOU KNOW, FROM OUR -- MY POINT OF VIEW, YOU KNOW, ONCE THE

3   ISSUES ARE RIPE FOR A MOTION, I THINK IT PROBABLY MAKES

4   THE MOST SENSE TO JUST BE ABLE TO GO AHEAD AND FILE THE

5   MOTION RATHER THAN TO HAVE A, YOU KNOW, KIND OF INFORMAL

6   DISCOVERY CONFERENCE BECAUSE THE PARTIES HAVE MET AND

7   CONFERRED EXTENSIVELY ON THESE ISSUES, AND SO THAT WOULD

8   BE UNITED'S PREFERENCE IF THE COURT IS COMFORTABLE WITH

9   THAT APPROACH.

10         THE COURT:  OKAY.  YEAH, I THINK, I THINK

11   TEEING IT UP, YOU KNOW, AS LONG AS YOU ALL MEET AND CONFER

12   AND REPRESENT THAT YOU HAVE AND THEN FILING YOUR MOTION TO

13   COMPEL, IT'S PROBABLY THE QUICKEST WAY TO GET IT TEED UP

14   APPROPRIATELY.

15         OKAY.  WELL, THEN, IT SOUNDS LIKE WE'VE GOT A

16   LOT OF WORK TO DO ON THIS.  LET'S LOOK AT -- LET ME PULL

17   UP MY CALENDAR HERE.  IF I GIVE YOU ALL AN APRIL 2026

18   TRIAL DATE, I'M LOOKING AT THE CALENDAR, THAT'S A LONG

19   TIME FROM NOW, BUT IT WILL BE HERE BEFORE YOU KNOW IT.

20         GIVE ME ONE SECOND HERE, I'M GOING TO PULL UP

21   MY SPREADSHEET WHERE I CALCULATE THESE THINGS.

22         OKAY.  LET'S PRESUME I SET A TRIAL DATE OF

23   APRIL 6, BEGINNING APRIL 6, 2026, OKAY, THAT'S THE VERY

24   FIRST MONDAY IN APRIL, AND WE BUDGET THREE WEEKS FOR THIS,

25   ALL RIGHT.  THAT, THAT -- BACKING INTO YOUR, THE

1  ADDITIONAL TIME THAT YOU NEED TO COMPLETE ALL OF YOUR FACT

2  DISCOVERY, WHEN DO YOU THINK THAT WILL BE -- YOU THINK YOU

3  COULD FINISH ALL OF YOUR FACT DISCOVERY BY, BY THIS

4  SUMMER, OR WHAT'S YOUR THOUGHT ON THAT?

5          MS. KURTZ:  YOUR HONOR, I ACTUALLY REALLY LIKE

6  HOW YOU DO, MAKE YOUR SCHEDULING ORDERS WHERE THERE'S FACT

7  DISCOVERY AND EXPERT DISCOVERY THAT HAS, YOU KNOW, KIND OF

8  A CONCURRENT END DATE BECAUSE I DO THINK, YOU KNOW, WITH

9  EXPERT DISCOVERY SOMETIMES FACT ISSUES ARISE, AND IT'S

10 NICE TO HAVE THAT FLEXIBILITY TO TAKE A LITTLE BIT MORE

11 DISCOVERY.  I DO THINK THAT THE BULK OF FACT DISCOVERY,

12 THE DOCUMENT PRODUCTIONS, SOME DEPOSITIONS CAN BE

13 COMPLETED BY, YOU KNOW, EARLY SUMMER.  I THINK WE WOULD

14 PROPOSE AN OPENING EXPERT REPORT DEADLINE OF JUNE, MID

15 JUNE, AND I THINK THAT IS A -- IT IS A CHALLENGING BUT

16 REALISTIC GOAL; AND WITH HAVING THE ABILITY TO KIND OF DO

17 SOME CLEAN-UP DISCOVERY, SOME ADDITIONAL DEPOSITIONS

18 THROUGHOUT THE REST OF THE SUMMER UNTIL, YOU KNOW, THE

19 JOINT FACT AND EXPERT DISCOVERY DEADLINE, I DO THINK THAT

20 IS A FEASIBLE SCHEDULE.

21          MR. SHOCKLEY:  YES, YOUR HONOR.  AND LOOKING AT

22 OUR CURRENT DATES AND ADDING NINE MONTHS WOULD, AS

23 MS. KURTZ POINTS OUT, GIVE US A JUNE 13, 2025 PLAINTIFFS'

24 DISCLOSURE, EXPERT DISCLOSURE, IT WOULD GIVE US AN AUGUST

25 15 DISCLOSURE, AND THEN OUR COMBINED FACT AND EXPERT

1    DISCOVERY CUT-OFF WOULD BE OCTOBER 24 OF 2025, SO THAT

2    WOULD STILL LEAVE US A FULL SIX MONTHS PLUS IN FRONT OF

3    YOUR TRIAL DATE.  I, I THINK THAT'S REALISTIC.

4              AND I SHOULD ALSO NOTE I'M QUITE CONFIDENT THAT

5    THE EXPERTS ON BOTH SIDES HAVE BEEN WORKING THROUGHOUT

6    THIS PERIOD.  WE'RE NOT GOING TO FINISH FACT DISCOVERY

7    BEFORE THEY GET STARTED, THAT'S PROCEEDING ON PARALLEL

8    TRACKS.

9              THE COURT:  OKAY.  SO YOUR SUGGESTION IS

10   PLAINTIFFS' EXPERT DISCOVERY -- I MEAN, REPORTS WILL BE

11   PRODUCED BY JUNE THE 13TH OF 2025?

12             MS. KURTZ:  YES, YOUR HONOR.

13             MR. SHOCKLEY:  THAT'S THE PLUS NINE MONTHS DATE

14   ROUGHLY.

15             MS. KURTZ:  I'M NOT SURE WHETHER THAT'S A

16   WEEKEND OR A HOLIDAY -- IT'S NOT A HOLIDAY, BUT, YES, THAT

17   GENERAL TIME.

18             THE COURT:  IT'S FRIDAY THE 13TH.

19             MS. KURTZ:  PERFECT.

20             THE COURT:  APROPOS.

21             AND THEN YOU ALL, WHAT, WANT --

22             MR. SHOCKLEY:  SIXTY DAYS AFTER THAT, OR AUGUST

23   15, 2025, WAS THE PLUS NINE FROM THE EXISTING DATE.

24             THE COURT:  NOW, TELL ME WHY YOU THINK YOU NEED

25   60.

1              MR. SHOCKLEY:  IT'S THE AMOUNT WE HAD IN

2    ORIGINALLY, AND, OF COURSE, WE DON'T KNOW WHAT THEIR

3    EXPERTS -- WHICH EXPERTS THEY'RE GOING TO PRESENT AND WHAT

4    THEY'RE GOING TO OPINE ON UNTIL JUNE 13TH, SO WE THINK 60

5    DAYS IS A REASONABLE AMOUNT OF TIME TO TURN AROUND A

6    RESPONSE TO THOSE, WHATEVER THEY ARE AND HOWEVER MANY

7    THERE ARE, WHETHER THERE'S ONE OR A DOZEN.

8              MS. KURTZ:  THERE WILL BE MORE THAN ONE BUT

9    LESS THAN A DOZEN, I PROMISE YOU.

10             THE COURT:  YOU DO WHAT NOW?

11             MS. KURTZ:  I WAS JUST SAYING THERE WILL BE

12   MORE THAN ONE EXPERT BUT LESS THAN A DOZEN.

13             THE COURT:  OKAY.

14             MR. SHOCKLEY:  WHICH NARROWS IT DOWN.

15             THE COURT:  SO YOU MIGHT END UP HAVING SEVEN OR

16   EIGHT OR NINE EXPERTS ON THIS?

17             MS. KURTZ:  NO.  I CAN'T IMAGINE MORE THAN

18   FOUR.

19             THE COURT:  OKAY.  ALL RIGHT.  ALL RIGHT, SO

20   THAT WOULD PUT -- SEE, BASED ON A TRIAL DATE OF APRIL 6TH,

21   I HAVE AS A GENERAL RULE ALL DISCOVERY BEING COMPLETED,

22   AND THIS IS MY STANDARD ORDER THAT I FOLLOW, ABOUT 165

23   DAYS BEFORE THE TRIAL BECAUSE THEN THAT ALLOWS YOU ALL TO

24   FILE YOUR SUMMARY JUDGMENT MOTIONS AND THINGS LIKE THAT,

25   DISPOSITIVE MOTIONS, THAT WOULD PUT YOUR DISCOVERY

1    CONCLUSION AT OCTOBER 23RD OF 2025.

2              MR. SHOCKLEY:  AND THAT MATCHES UP, YOUR HONOR,

3    WITH THE PLUS NINE DATE WE HAD, WHICH IS OCTOBER 24.

4              THE COURT:  MM-HMM, MM-HMM.  SO LET'S LOOK AT

5    THIS.  SO IF YOUR EXPERT DISCLOSURES ARE BY AUGUST 15,

6    2025, AND DO YOU ALL ANTICIPATE ANY REBUTTAL EXPERTS OR

7    THINGS LIKE THAT?

8              MS. KURTZ:  IT'S HARD TO SAY, BUT I BELIEVE

9    THAT IN THE ORIGINAL SCHEDULE WE BUILT IN A MONTH FOR

10   REBUTTAL REPORTS.

11             THE COURT:  RIGHT.

12             MS. KURTZ:  I WOULDN'T BE SURPRISED IF THERE

13   WAS SOME LIMITED REBUTTAL.

14             THE COURT:  ALL RIGHT.  THAT WOULD THEN BE

15   SEPTEMBER THE 15TH OF 2025, ANY REBUTTAL EXPERTS, AND THEN

16   YOU STILL HAVE ANOTHER MONTH TO COMPLETE ALL YOUR

17   DISCOVERY.  DO YOU THINK THAT WILL WORK?

18             MS. KURTZ:  I DO, YOUR HONOR.

19             MR. SHOCKLEY:  I DO, YOUR HONOR.  AND I WOULD

20   ALSO EXPECT ONCE, ONCE THE REPORTS START SHOWING UP IN

21   JUNE, THAT WE WOULD BE ABLE TO SCHEDULE DATES CERTAIN FOR

22   THOSE EXPERTS.  EVEN IF WE HAVEN'T IDENTIFIED THEM YET, WE

23   CAN SAY, WE'LL DO THIS PERSON ON THIS DATE AND GO AHEAD

24   AND GET THOSE SET ON THE CALENDAR.

25             THE COURT:  OKAY.  WELL, THAT WOULD PUT YOUR

1   DISPOSITIVE MOTION DEADLINE AT DECEMBER 7, 2025, AND, AND

2   THAT'S PROBABLY DOABLE.

3           WELL, I GUESS WHAT ELSE CAN I DO TO HELP GET

4   THIS CASE MOVING?  DO YOU ALL HAVE ANY IDEAS?

5           MS. KURTZ:  I HAD A THOUGHT ON THE DISCOVERY

6   DISPUTES.  I MEAN, I THINK IT WILL DEPEND ON WHEN, YOU

7   KNOW, EACH PARTY CAN GET THEIR MOTIONS ON FILE, BUT I LIVE

8   IN MINNESOTA, I'D BE HAPPY TO COME TO GREENEVILLE, YOU

9   KNOW, FOR AN OMNIBUS HEARING IF IT WOULD BE EASY FOR YOU

10  ONCE THE DISPUTES ARE FULLY BRIEFED JUST TO HAVE EVERYONE

11  DEAL WITH ALL THE ISSUES AT ONE TIME, HEAR FROM US IN

12  PERSON, HAVE THAT BACK-AND-FORTH, SO THAT WAS ONE, THAT

13  WAS THE ONE THING THAT I WAS THINKING MIGHT BE HELPFUL.

14          THE COURT:  I THINK, I THINK THAT'S A GOOD IDEA

15  IS IF YOU HAVE A NUMBER OF DIFFERENT ISSUES THAT YOU THINK

16  ARE ALL -- YOU ALREADY KNOW THERE'S GOING TO BE A DISPUTE

17  ABOUT IS, IS TEE THEM ALL UP, TEE THEM UP SOONER RATHER

18  THAN LATER SO YOU CAN AT LEAST -- I CAN GIVE YOU, LIKE YOU

19  SAID, A BALL OR A STRIKE AND YOU MOVE ON, AND, AND, AND

20  THAT WILL BE A PRETTY EFFICIENT WAY TO DO IT TOO, IF WE

21  CAN JUST COME IN HERE, HAVE AN ARGUMENT FOR A DAY.  BACK

22  WHEN I WAS A MAGISTRATE JUDGE ON SOME OF THESE KIND OF

23  CASES, THERE WAS A DISAGREEMENT, WE JUST BROUGHT EVERYBODY

24  IN, WE ROLLED UP OUR SLEEVES AND FOR THE NEXT SIX HOURS WE

25  SAT DOWN AND ARGUED OVER, YOU KNOW, INTERROGATORIES AND,

1  YOU KNOW, ALL THIS KIND OF STUFF, AND THAT MIGHT BE THE
2  BEST WAY TO DO IT.
3          MR. SHOCKLEY:  AND, YOUR HONOR, WE'RE HAPPY TO
4  DO THAT.  IT'S EASIER FOR ME TO GET HERE THAN IT IS FOR
5  SOME OTHER FOLKS, BUT, OBVIOUSLY, I'M ALWAYS HAPPY TO COME
6  TO GREENEVILLE.
7          I KNOW WE'VE GOT A SCHEDULE WHERE WE SUBMIT I
8  BELIEVE EVERY 60 DAYS A STATUS REPORT TO THE COURT, THE
9  OTHER IDEA THAT I HAD IS MAYBE AS PART OF THAT WE GO AHEAD
10 AND TEE THOSE UP EVERY 60 DAYS SO WE DON'T GIVE YOU A
11 DOZEN ISSUES IF THERE'S FOUR OUTSTANDING, AND THAT WAY WE
12 CAN EITHER HAVE THOSE RESOLVED OR IN FRONT OF THE COURT
13 EVERY 60 DAYS.
14         THE COURT:  RIGHT.  RIGHT.  I'VE ENJOYED THE
15 STATUS REPORTS BECAUSE THAT'S GIVEN ME A GOOD FEEL FOR
16 WHERE YOU ALL, HOW YOU ALL ARE PROGRESSING AND MOVING
17 THINGS ALONG; BUT AS FAR AS LIKE, YOU KNOW, THESE
18 DISCOVERY DISPUTES, I THINK YOUR THOUGHT IS CONSISTENT
19 WITH WHAT SHE'S SAYING IS LIKE LET'S COME IN HERE, HAVE --
20 JUST GET THESE THINGS RESOLVED, AND THEN YOU ALL GO ON AND
21 MARCH AND FIGURE IT OUT WHAT TO DO.
22         MR. SHOCKLEY:  CORRECT.
23         THE COURT:  OKAY.  YEAH, I THINK THAT'S
24 PROBABLY A GOOD WAY TO DO IT.  I MEAN, OBVIOUSLY THERE MAY
25 BE SOME OTHER ISSUES THAT POP UP THAT YOU CAN'T

1   ANTICIPATE, BUT ON THE BIG ISSUES, AT LEAST, THAT ARE

2   CLEARLY OBSTACLES WE NEED TO GET THOSE ADDRESSED SOONER

3   RATHER THAN LATER.  OKAY, SO WE'LL DO THAT.

4          I GUESS I DON'T -- I'M NOT GOING TO SET A TIME

5   DEADLINE FOR YOU ALL TO FILE A MOTION TO COMPEL OR

6   ANYTHING, I DON'T THINK THAT'S NEEDED AT THIS POINT, BUT

7   WE ALL HAVE AN UNDERSTANDING THAT YOU KNOW WHAT YOU'RE

8   FIGHTING ABOUT, TEE IT UP AND LET'S SEE IF WE CAN'T GET IT

9   RESOLVED SOONER RATHER THAN LATER.

10         WHAT ELSE?  WHAT ELSE CAN YOU ALL THINK OF THAT

11  WILL HELP YOU ALL MOVE THIS THING ALONG?

12         MR. SHOCKLEY:  YOUR HONOR, FOR THE DEFENDANT I

13  BELIEVE THAT'S ALL WE HAVE FOR TODAY; AND WHILE IT MAY NOT

14  APPEAR THIS WAY TO THE COURT, I WILL SAY THAT THE PARTIES

15  HAVE WORKED TOGETHER TO RESOLVE A NUMBER OF THESE ISSUES,

16  AND IT MAY WELL BE BEFORE WE'RE BACK HERE THAT WE CAN

17  RESOLVE SOME OF THE OTHERS THAT ARE OUTSTANDING AS WELL.

18         THE COURT:  WELL, THAT WOULD BE -- YOU KNOW,

19  BECAUSE YOU DON'T KNOW WHAT I'M GOING TO DO, I MIGHT JUST

20  GO CRAY-CRAY ON YOU, AND I CAN'T BELIEVE HE DID THAT.  SO,

21  YEAH, I ALWAYS ENCOURAGE -- OBVIOUSLY YOU GUYS KNOW YOUR

22  CASE, YOU ARE GOOD AND EXPERIENCED LITIGATORS.  YOU ALL

23  HAVE -- I KNOW MR. SHOCKLEY HAS APPEARED IN FRONT OF ME

24  BEFORE.  I DON'T KNOW THAT I HAVE -- YOU'VE APPEARED IN

25  FRONT OF ME BEFORE.

1          MS. KURTZ:  JUST IN THIS CASE ON VARIOUS STATUS
2    CONFERENCES.
3          THE COURT:  OKAY, AND -- BUT MY GOAL HERE IS TO
4    GET THIS CASE RESOLVED BECAUSE IT IS GETTING SOME AGE ON
5    IT, AND, AND IT LOOKS LIKE TO ME WE HAVE AN UNDERSTANDING
6    ABOUT THERE'S SOME ISSUES THAT WE'VE GOT TO RESOLVE.  I'LL
7    TRY TO RESOLVE THEM AS QUICKLY AS I CAN AND GIVE YOU ALL
8    THE ANSWERS -- GIVE YOU ANSWERS TO THE QUESTIONS ASKED,
9    WHETHER YOU LIKE IT OR NOT; AND THEN AS FAR AS LIKE ANY
10   POTENTIAL FOR SETTLEMENT, OBVIOUSLY, I THINK WE'RE WAY,
11   WAY, WAY PAST, WE'RE NOT CLOSE TO YOU ALL TALKING BECAUSE
12   YOU'RE STILL SO EARLY IN THE DISCOVERY PROCESS.
13         MR. SHOCKLEY:  I WILL SAY, YOUR HONOR, AS
14   MS. KURTZ DID, THESE ARE PARTIES WHO HAVE DARKENED THE
15   DOORS OF MANY COURT ROOMS ACROSS THE UNITED STATES --
16         THE COURT:  RIGHT.
17         MR. SHOCKLEY:  -- AND, AND HAVE TALKED ABOUT A
18   LOT OF ISSUES FOR A LONG TIME.  I DON'T THINK IT'S A CASE
19   THAT'S LIKELY TO SETTLE, BUT THEY -- THESE PARTIES
20   CERTAINLY KNOW HOW TO SETTLE CASES WHEN THEY WANT TO.
21         THE COURT:  RIGHT, RIGHT, I UNDERSTAND.
22         OKAY.  WELL, I'LL REVISE THE SCHEDULING ORDER
23   AND GIVE YOU A TRIAL DATE OF APRIL THE 6TH OF 2026, AND
24   DON'T EXPECT THAT THAT WILL BE CONTINUED THOUGH.
25         MS. KURTZ:  THANK YOU, YOUR HONOR.

1          THE COURT:  OKAY.

2          MR. SHOCKLEY:  UNDERSTOOD, THANK YOU.

3          THE COURT:  ALL RIGHT.  WELL, THANK YOU ALL

4     VERY MUCH.  I HOPE THIS WAS HELPFUL.

5          MS. KURTZ:  IT WAS EXTREMELY HELPFUL.  WE

6     APPRECIATE IT.

7          MR. SHOCKLEY:  THANK YOU.

8          THE COURT:  ALL RIGHT.  VERY GOOD.

9        (PROCEEDINGS ARE CONCLUDED AT 10:02 A.M.)

10    I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

11    THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

12

13
      KAREN J. BRADLEY/S                    01/03/2025
14    SIGNATURE OF COURT REPORTER           DATE

15

16

17

18

19

20

21

22

23

24

25