UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED HEALTHCARE SERVICES, INC., UNITEDHEALTHCARE INSURANCE COMPANY, and UMR, INC., <br><br> Plaintiffs, <br><br> vs. <br><br><br> TEAM HEALTH HOLDINGS, INC., AMERITEAM SERVICES, LLC, and HCFS HEALTH CARE FINANCIAL SERVICES, LLC, <br><br> Defendants. | Case No. 3:21-cv-00364-DCLC-DCP |

**UNITED'S SUPPLEMENT IN SUPPORT OF**
**MOTIONS FOR LEAVE TO FILE DOCUMENTS UNDER SEAL**

Pursuant to the Court's April 1, 2025 Order regarding the parties' discovery motions and motions to seal (ECF No. 126), Plaintiffs UnitedHealthcare Insurance Company, United Healthcare Services, Inc., and UMR, Inc. (collectively "Plaintiffs" or "United") hereby supplement their motion for the Court to seal a limited set of documents in connection with their oppositions to TeamHealth's motions to compel discovery and release confidentiality designations. ECF Nos. 104, 107.

**I.    THE INFORMATION REQUESTED TO BE SEALED.**

United moved to seal the following limited set of documents, which are subject to the parties' Protective Order (ECF No. 53): eleven sentences from its Response in Opposition to TeamHealth's Motion to Compel Discovery (ECF No. 104, pp. 9-10); paragraphs 7, 9-11, and

12(a)-(d) of the Declaration of Joseph Clark (filed both at ECF Nos. 104-6 and 107-5); and Exhibit 3 of United's Response in Opposition to TeamHealth's Motion to Release Confidentiality Designations and Remove Confidentiality Designations (ECF No. 107-3). Additionally, United moves to seal Exhibit 10 to Defendants' Motion to Release Confidentiality Designations and Remove Improper Confidentiality Redactions, which was also addressed in TeamHealth's Motion to for Leave to File Documents Under Seal in connection with its Reply. (ECF Nos. 103-10, 120).[1]

    **a. Exhibit 3 to United's Opposition to Release Confidentiality Designations (ECF No. 107-3) and Exhibit 10 to Defendants' Motion to Release Confidentiality Designations (ECF No. 103-10).**

Exhibit 3 to United's Opposition to TeamHealth's Motion to Release Confidentiality Designations contains a sample Administrative Services Agreement ("ASA") between United and one of its third-party customers. *See* ECF No. 107 at 5; ECF No. 107-3.[2] ASAs are confidential and proprietary contracts between United and its customers. *See* ECF No. 107 at 5-8.

United's corporate customers who have self-insured health plans (i.e., customers who sponsor and fund their own health plans) pay United to administer their plans for their employees under the terms of an ASA. *See* ECF No. 107 at 5. Such customers are often referred to as "Administrative Services Only" ("ASO") customers. *Id.* Each ASO customer has a separate and unique administrative services contract with United, the individualized terms of which are reflected in their relative ASAs. *Id.*; ECF No. 107-5 at ¶ 4. Each ASA has distinctive, confidential

---

[1] United understands that the Court will hold in abeyance its ruling on TeamHealth's motion to seal that was filed in connection with its Motion to Release Confidentiality Designations. *See* ECF No. 126 at 2. However, because TeamHealth filed a separate motion to seal Exhibit 10 to its Motion to Release Confidentiality Designations in connection with its Reply, *see* ECF No. 120, United addresses this exhibit in an abundance of caution here.

[2] Similarly, Exhibit 10 to Defendants' Motion to Release Confidentiality Designations (ECF No. 103-10) contains the ASA between United and TeamHealth.

terms that are negotiated between United and the ASO customer. *Id.* Such terms include financial and pricing information, such as administrative services fees, program fees, financial performance metrics, and drug reimbursements. *Id.* These terms are specific to each ASO customer and not shared with other customers or United's competitors in the market. *Id.*

ASAs also often contain proprietary information concerning United's customers. *Id*. This includes, for example, a customer's internal coverage policies, which may reflect analysis of a customer's aggregated employee health data. *Id.* For this and other reasons, several ASAs expressly prohibit United or the ASO customer from disclosing the ASA or its terms. *Id.* And when productions must be made, such as through discovery in this litigation, the ASAs can require both notice and consent from the customer prior to production. *Id.*

For these reasons, United and its customers treat their respective ASAs as highly confidential, as they contain myriad sensitive information. *Id.* For United, this includes ASO customer contracting and pricing terms that are clearly intended to be kept secret, because if they were released, other health insurers (i.e., United's competitors) would have easy access to the specific terms United offers its customers, which would competitively harm United. *Id.* Access to this kind of private information by United's competitors could give them an advantage over United in negotiating financial terms with these same customers in the future. *Id.* Additionally, disclosure of ASAs would allow United's ASO customers to view one another's pricing and coverage terms, which would not only harm United, but also harm these third-party ASO customers. *Id*.

b. **The Eleven Sentences from United's Opposition to TeamHealth's Motion to Compel (ECF No. 104, pp. 9-10).**

United has redacted and seeks to keep sealed eleven sentences from its Opposition to TeamHealth's Motion to Compel. ECF No. 104, pp. 9-10. These eleven sentences discuss two things. First, they detail concerning the specific terms of United's ASA with TeamHealth's

majority owner—who is one of United's ASO customers and *not* a named party to this lawsuit. Second, they discuss certain specific ways that some of United's ASO customers have negotiated fees for United to administer their health plans. For example, they contain information related to "shared savings fees"—a negotiated term through which an ASO customer pays United a percentage of the savings that United obtains per claim—as well as other fee arrangements, confidential performance obligations, and proprietary contractual terms. *Id.*

### c. Paragraphs 7, 9-11, and 12(a)-(d) of the Declaration of Joseph Clark (ECF Nos. 104-6 and 107-5).

Finally, United has also redacted and seeks to keep sealed eight short paragraphs from the Declaration of Joseph Clark. ECF Nos. 104-6 and 107-5.[3] Paragraphs 7, 9-11, and 12(a)-(d) of his declaration explain the fee arrangements and other proprietary contractual terms discussed by the eleven redacted sentences mentioned above, and they are confidential for the same reasons. For example, they provide specific examples and background facts concerning how the negotiated fee arrangements work, including a brief discussion concerning the ASA terms for TeamHealth's owner, who is not a named party to this lawsuit. These paragraphs reflect United's confidential pricing and sales information, as well as sensitive commercial and financial structural information. *Id.*

## II. ARGUMENT.

United seeks to seal a discrete and limited selection of sensitive, proprietary information: eleven sentences in a brief, two confidential contracts, and eight short paragraphs from a declaration. The Sixth Circuit has found that such proprietary business and financial information— especially material that concerns third parties—is properly the subject of a motion to seal.

---

[3] Joseph Clark is the Commercial Chief Actuary and Healthcare Economics lead at UnitedHealthcare. ECF No. 104-6 ¶ 1.

In the Sixth Circuit, there is a "strong presumption in favor of openness as to court records." *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). As such, when a party moves to seal court documents or records, it bears a "heavy" burden to "overcome that presumption." *Id.* To meet this burden, the party moving to seal "must show three things: (1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Ellis v. Clinton Cty. Bd. of Commissioners*, No. 1:23-CV-341, 2024 WL 4453397, at *1 (S.D. Ohio Sept. 24, 2024) (quoting *Kondash v. Kia Motors America, Inc.*, 767 F. App'x 635, 638 (6th Cir. 2019)); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, No. 18-MD-02818, 2023 WL 319922, at *1 (E.D. Mich. Jan. 19, 2023) (quoting the same language in *Kondash*). In showing these three things, "[t]he proponent of sealing therefore must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Shane*, 825 F.3d at 305-06 (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002)). Further, as this Court has previously held, "[i]n this District, discrete redacting of documents or selective sealing is generally preferred over the wholesale sealing of documents." *Cosby v. KPMG, LLP*, No. 3:16-CV-121-TAV-DCP, 2020 WL 3547925, at *2 (E.D. Tenn. June 29, 2020) (citing E.D. Tenn. L.R. 26.2).

There are certain categorical content-based exceptions (i.e., categories of proprietary or confidential information) that outweigh the right to public access, including "certain privacy rights of participants or third parties [and] trade secrets[.]" *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983). The presumption that court records will remain open to the public can be overcome by a showing that "disclosure will work a clearly defined and serious injury." *Shane*, 825 F.3d at 307 (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)). "While the existence of a trade secret will generally satisfy a party's burden of showing a

compelling reason for sealing documents, even if a trade secret does not exist, a court may still find a compelling reason exists[.]" *In re Gen. Motors*, 2023 WL 319922, at *1 (quoting *Kondash*, 767 F. App'x at 638). Additionally, "harm to third parties whose only involvement in the case is business dealings with the defendant is a sufficiently justifiable reason to seal the records." *Kentucky v. Marathon Petrol. Co. LP*, No. 3:15-CV-354, 2018 WL 3130945, at *7 (W.D. Ky. June 26, 2018) (citing *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 477 (6th Cir. 1983)).

    **a. United has a Compelling Interest in Sealing Documents Containing Proprietary Business and Financial Information.**

Courts in the Sixth Circuit have held that "parties have a compelling interest in sealing documents that 'might harm a litigant's competitive standing' and/or 'reveal internal strategy to a party's competitors." *In re Gen. Motors*, 2023 WL 319922, at *3 (quoting *McClure v. Leafe*, 2019 WL 13201174, at *1 (E.D. Mich. Aug. 20, 2019)) (citation cleaned up). Motions to seal documents are often granted where, "if disclosed, [the documents] could compromise the party's interest in remaining competitive in the field and could also inflict financial harm[.]" *Counts v. Gen. Motors, LLC*, 2021 WL 4241014, at *2 (E.D. Mich. Mar. 15, 2021) (citation omitted); *see also Proctor & Gamble Co. v. Ranir, LLC*, 2017 WL 3537195, at *3 (S.D. Ohio Aug. 17, 2017) (granting motion to seal after finding that moving party had a "compelling interest" in redacting "sales trends and analysis," "pricing strategy," "marketing strategy," "sales and marketing data," and "strategic business plans."). As to confidential contracts and agreements, courts have found a party has a "compelling interest" in sealing contracts which "contain heavily negotiated and protected [] rates between [parties] and . . . which allow [the moving party] to form competitive strategies and compete in the marketplace." *Eimers v. Lindsay Corp.*, No. 1:19-CV-44-TRM-CHS, 2022 WL 894604, at *5 (E.D. Tenn. Mar. 26, 2022) (granting motion to seal). This is especially true where

a contract's rates are "individualized," are only offered to "specific" customers, and "are not shared with competitors in the market." *Id.*[4]

Here, both the ASAs and any discussions about their contractual terms and financial structure are highly proprietary and contain trade secrets. As explained above, the ASAs contain negotiated terms and obligations that are unique to each respective customer, as well as include confidential pricing information and sensitive information concerning customers' fee arrangements. *See* ECF No. 107 at 5. Such information should be sealed. *See In re Gen. Motors*, 2023 WL 319922, at *5; *Eimers*, 2022 WL 894604, at *5.[5]

This specific Court has previously found that similar information warranted sealing. *See, e.g., NMP Rsch., Inc. v. Extreme Networks, Inc.*, No. 3:20-CV-451-CEA-DCP, 2025 WL 684468, at *2-3 (E.D. Tenn. Mar. 3, 2025) (sealing an expert report that "discusses Defendant's confidential pricing and sales information" and another report that "refers to and discusses sensitive commercial and financial information regarding Defendant's sales and revenue[.]"); *Univ. of Tenn. Rsch. Found. v. Caelum Biosciences, Inc.*, No. 3:19-CV-508-CEA-DCP, 2024 WL 3870255, at *2 (E.D. Tenn. Aug. 19, 2024) (granting a request to seal "confidential financial terms" of a party's contract).

---

[4] One court recently specifically granted the sealing of an insurer's ASAs after determining that ASAs contain "information that is the type of business information that might harm a litigant's competitive standing if they were made publicly available." *Edleson v. Travel Insured Int'l, Inc.*, No. 21-CV-323-WQH-SBC, 2023 WL 8251336, at *12 (S.D. Cal. Nov. 20, 2023) (citation omitted).

[5] This is especially true for Exhibit 3 to United's Opposition to TeamHealth's Motion to Release Confidentiality Designations, which contains a sample ASA between United and one of its third-party customers. ECF No. 107-3. A party clearly has a "sufficiently justifiable reason" to keep confidential its contracts with third parties. *Marathon Petroleum*, 2018 WL 3130945, at *7 (citing *Knoxville News-Sentinel*, 723 F.2d at 477).

United heavily protects its confidential contracts with its ASO customers, including information concerning the underlying administrative fee arrangements, financial terms, and business guarantees. *See* ECF No. 107 at 5. These items are proper subjects for sealing, as they comprise proprietary business, strategic, and financial information that is not publicly known and that United actively protects from publication. United would suffer significant economic damages and other business-related harms if these documents were not kept sealed.

### III. CONCLUSION.

For these reasons, United respectfully requests that the Court seal the aforementioned documents.

Dated: April 16, 2025  By: */s/ Jamie R. Kurtz*

Michael J. King (BPR 015523)
Kendell G. Vonckx (BPR 035139)
**Paine Tarwater Bickers, LLP**
900 South Gay Street, Suite 2200
Knoxville, Tennessee 37902-1821
T: (865) 525-0880
mking@painebickers.com
kvonckx@painebickers.com

Jamie R. Kurtz (MN BPR 391792)
Marcus A. Guith (MN BPR 399520)
**Robins Kaplan LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402–2015
T: (612) 349–8500
jkurtz@robinskaplan.com
mguith@robinskaplan.com

Paul D. Weller (PA BPR 61175)
**Robins Kaplan LLP**
1325 Avenue of The Americas, Suite 2601
New York, New York 10022
T: (212) 980-7400
pweller@robinskaplan.com

*Counsel for Plaintiffs UnitedHealthcare Insurance Company, United Healthcare Services, Inc., and UMR Inc.*