UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITEDHEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE CO., and UMR, INC.,<br><br>      Plaintiffs,<br><br>v.<br><br>TEAM HEALTH HOLDINGS, INC., AMERITEAM SERVICES, LLC, and HCFS HEALTH CARE FINANCIAL SERVICES, INC.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   No. 3:21-CV-364-DCLC-DCP<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Compel Discovery [Doc. 164]. Defendants responded in opposition to the motion [Doc. 170], and Plaintiffs filed a reply [Doc. 171]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion [**Doc. 164**].

**I.    BACKGROUND**

On October 21, 2021, Plaintiffs filed the Complaint [Doc. 1]. "[Plaintiffs] provide health insurance or claim administration services under a variety of plans and policies [*Id.* ¶ 25]. They explain that this case involves "payments made from . . . Plaintiffs' fully insured and self-funded plans" [*Id.*]. "Plaintiffs both fund and administer their fully insured plans[,]" and "pay claims submitted to these plans out of their own assets" [*Id.* ¶ 26]. With respect to "Plaintiffs' self-funded plans, or Administrative Services Only ('ASO') plans[,]" these "are funded by contributions from

Case 3:21-cv-00364-DCLC-DCP   Document 217   Filed 10/24/25   Page 1 of 18
PageID #: 3765

their respective sponsor employers and member employees" [*Id*. ¶ 27]. Plaintiffs state that they "provide claim administration services for such plans pursuant to Administrative Services Agreements ('ASAs'), which identify the rights and obligations of . . . [Plaintiffs] and the plan sponsors" [*Id*.]. "[T]he ASAs give . . . Plaintiffs the exclusive discretion and authority to monitor and pursue overpayments of plans funds" [*Id*. ¶ 29].

According to the Complaint, "Plaintiffs process (or 'adjudicate') and pay approximately one million claims every day" [*Id*. ¶ 32]. Given that volume, Plaintiffs submit that their employees cannot review every claim they receive and that providers and billing companies generally do not submit medical records with insurance claims to Plaintiffs [*Id*. ¶¶ 32–33]. Plaintiffs' adjudication process is automated, meaning that they "rely on providers to supply truthful and accurate information with insurance claims, and require providers to attest to the accuracy of the claims they submit" [*Id*. ¶ 34].

Plaintiffs claim that Defendants "operate[] one of the largest emergency room staffing and billing companies in the United States" and that they "affiliate[] with or acquire[] medical groups across the country" [*Id*. ¶¶ 2–3]. Plaintiffs state that "[t]hese medical groups have contracts with hospitals or hospital systems under which the medical groups staff hospital emergency departments" [*Id*. ¶ 3]. Plaintiffs claim, however, that "[Defendants] handle everything related to coding and billing of claims from [their] centralized billing centers" [*Id*.]. Plaintiffs contend that "[Defendants] submit[] claims using the standard CM-1500 claim form or its electronic equivalent" [*Id*. ¶ 36]. With respect to the claim forms, Plaintiffs state there are "[c]ertain fields . . . that are particularity important to the amount . . . Plaintiffs pay on claims" [*Id*. ¶ 37]. Plaintiffs submit that "CPT codes are among the most important information included in a claim[,]" explaining that they "are standardized codes that denote the type and degree of care rendered to a

2

Case 3:21-cv-00364-DCLC-DCP   Document 217   Filed 10/24/25   Page 2 of 18
PageID #: 3766

patient" [*Id.* ¶ 38]. Plaintiffs further allege that these codes "are the principal way in which providers convey to insurers and claims administrators the services for which they seek payment" [*Id.*]. Also, Plaintiffs state, "The type and degree of care indicated by the CPT code(s) included in a claim is a primary determinate of what the . . . Plaintiffs will pay on the claim" [*Id.* ¶ 39].

According to Plaintiffs, "[Defendants] block[] attempts by insurers and claims administrators to contract directly with [their] affiliated medical-groups, and demand[] independence from hospitals within which [they] operate[] in [their] dealings with insurers and claims administrators" [*Id.* ¶ 48]. They state that recently, "[Defendants have] gained notoriety . . . for [their] aggressive pursuit of profit at the expense of patient and insurers alike" and that "[p]rivate equity firms generally, and Blackstone specifically, apply significant pressure to the companies they acquire (such as [Defendants]) to maximize near-termprofits" [*Id.* ¶¶ 50–51]. Plaintiffs allege that "[Defendants'] own compensation structure amplifies this incentive" [*Id.* ¶ 52].

Plaintiffs state that "[t]his lawsuit principally concerns a form of insurance fraud called 'upcoding'" [*Id.* ¶ 55]. They allege that "[u]pcoding occurs when a provider submits a claim to an insurer or claims administrator utilizing an inaccurate billing code in order to obtain higher payment" and that "[t]he provider uses the billing code to deceive the insurer or claims administrator into overpaying by misrepresenting the type or degree of services rendered" [*Id.* ¶ 56]. Plaintiffs contend that "[Defendants] have systematically upcoded claims for emergency room services" [*Id.* ¶ 58]. Plaintiffs state that "providers generally bill emergency room services to insurers using consecutively numbered CPT codes from 99281 to 99285" and that "[h]igher numbers indicate more extensive and complex treatment billed at higher rates" [*Id.* ¶ 59]. "CPT codes 99285 and 99284 denote treatment of especially serious issues, typically requiring the

3

Case 3:21-cv-00364-DCLC-DCP   Document 217   Filed 10/24/25   Page 3 of 18
PageID #: 3767

physician's immediate, sustained, and undivided attention" [*Id.* ¶ 61]. The higher "CPT code 99285 is reserved for relatively rare cases in which the patient is at imminent risk of death or loss of physiological function[,]" and "CPT Code 99284 denotes emergency care for particularly severe and complex but non-life threatening medical issues" [*Id.* ¶¶ 62, 64].

Plaintiffs allege that they began reviewing Defendants' conduct in light of "allegations that [Defendants] engaged in abusive billing practices" [*Id.* ¶ 67]. Plaintiffs focused their review on claims utilizing CPT Codes 99284–99285 [*Id.*]. After finding that Defendants were using CPT Code 99285 at a rate far higher than other providers, Plaintiffs requested and received medical records, which Plaintiffs allege did not support the CPT Code 99285 [*Id.* ¶¶ 68–69].[1]

Plaintiffs claim that "[Defendants] deliberately upcoded claims utilizing CPT codes 99285 and 99284 . . . in order to deceive . . . Plaintiffs into overpaying for emergency room services and to reap windfall profits at the . . . Plaintiffs' and their customers' and members' expense" [*Id.* ¶ 88]. Plaintiffs state that they were damaged by Defendants' upcoding, explaining that it "is a particularly insidious form of fraud that is difficult to uncover and resource-intensive to investigate" and that here, "the number of affiliates through which [Defendants have] carried out [their] scheme, as well as [their] failure to disclose the identities of all of [their] affiliates, further obscured [their] systematic upcoding" [*Id.* ¶ 104].

In addition, Plaintiffs assert that they have been damaged by Defendants "extravagantly high bill[ing] charges" [*Id.* ¶ 111]. They state that Defendants also file litigation against patients "[w]hen insurers have declined to pay" and that they conceal charity care from patients, which "'is a form of financial assistance for low-income patients'" [*Id.* ¶¶ 117–18 (citation omitted)].

---

[1] Plaintiffs cite examples of Defendants' alleged upcoding in paragraphs 73–86 [Doc. 1 ¶¶ 73–86].

Furthermore, Plaintiffs accuse Defendants of billing for services performed by non-physicians as if the service was performed by physicians [*Id.* ¶ 123]. And finally, Plaintiffs state that Defendants also engage in "a practice called pass-through billing in order to maximize payments from insurers" [*Id.* ¶ 131]. Plaintiffs assert:

> Pass-through billing occurs when one provider bills for medical services that were in reality rendered by another provider. Typically, the billing provider has a contract with an insurer while the rendering provider does not. Pass-through billing deceives the insurer into paying for services performed by the non-contracted provider at rates it has negotiated with the contracted provider when it might otherwise pay less or not at all.

[*Id.* ¶ 132].

Based on the above, Plaintiffs allege fraud, negligent misrepresentation, violations of Tenn. Code Ann. §§ 56-53-102, 103, and 107, violations of the Tennessee Consumer Protection Act and other state consumer protection statutes, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and conspiracy to violate civil RICO, 18 U.S.C. § 1962(d) [*Id.* ¶¶ 137–201, 211–36]. They seek declaratory relief, injunctive relief, unjust enrichment, and other damages [*Id.* ¶¶ 202–10, 237–40; *see also* p. 54].

In a prior motion to compel, Plaintiffs sought an order compelling Defendants to respond to Request for Production ("RFP") Nos. 15 and 17, which stated:

> Request No. 15: All Documents relating to any federal, state, or regulatory investigation into Your billing and coding practices for ER claims, including all records You have supplied to any federal, state, or regulatory body as part of any such investigation or inquiry, such as Documents produced in response to a civil investigative demand.
>
> Request No. 17: All Documents, such as business plans, internal revenue projections, financial reports, communications, and regular reports, relating to the number or percent of claims billed using CPT codes 99285, 99291 and 99292.

5

Case 3:21-cv-00364-DCLC-DCP   Document 217   Filed 10/24/25   Page 5 of 18
PageID #: 3769

[Doc. 165 pp. 1–2, nn.1–2]. The parties appeared before the Court on May 13, 2025, for a motion hearing on their various motions to compel [Doc. 141]. Three days later, on May 16, 2025, the Court entered a Memorandum and Order ("May Order") [Doc. 145]. With respect to RFP No. 15, the Court stated:

> At this time, the Court finds RFP No. 15 too broad. RFP No. 15 states, All Documents relating to any federal, state, or regulatory investigation into Your billing and coding practices for ER claims, including all records You have supplied to any federal, state, or regulatory body as part of any such investigation or inquiry, such as Documents produced in response to a civil investigative demand" [Doc. 96-1 p. 11]. The wording in this RFP is not limited to the specific allegations in this case—overutilizing CPT codes 99285 and 99284 and certain billing practices [Doc. 1 ¶¶ 123, 131]. *See Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP 99-690-C-D/F, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) ("'Cloned discovery,' requesting all documents produced or received during other litigation or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the instant case."); *cf. In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922, 2012 WL 3791716, at *16 (C.D. Cal. Mar. 12, 2012) ("These requests seek, in broad terms, all documents relating to any potential or ongoing regulatory oversight or investigation by any 'Government' relating to unintended acceleration. With certain qualifications, these requests may lead to the discovery of relevant information, and accordingly they should be produced.").
>
> The Court therefore declines to order Defendants to supplement their response to RFP No. 15.

[*Id*. at 21–22 (footnote omitted)]. In a footnote, the Court stated, "It is not lost on the Court that Defendants also requested such discovery from the Plaintiffs [*See* Doc. 98 p. 12]. To the extent this becomes an issue again, the Court strongly encourages the parties to meet and confer in good faith" [*Id*. at 22, n.5].

With respect to RFP No. 17, the Court found:

> [A]s worded, [it] is overly broad. While Plaintiffs provide examples of what they are seeking (i.e., business plans, internal revenue

projects, etc.), it still seeks all documents that relate to the number or percent of claims billed using certain codes—two of which do not appear to pertain to this action. Indeed, CPT codes 99291 and 99292 are mentioned twice in the Complaint [ Doc. 1 ¶¶ 96–97] in relation to the *Hernandez* action, and not what allegedly occurred here.

[*Id*. at 24].

Following entry of the Court's May Order, Plaintiffs served Defendants with their Fifth Set of RFPs, which included RFP Nos. 89 and 90 [Doc. 165 p. 2]. Plaintiffs contend that RFP Nos. 89 and 90 are "narrowed versions of [RFP] Nos. 15 and 17" [*Id*.]. Specifically, they seek:

> REQUEST NO. 89: Documents relating to any federal, state, or regulatory investigation into Your billing and coding practices for emergency department professional services relating to CPT codes 99[281]–99285.
>
> REQUEST NO. 90: Business plans, internal revenue projections, and financial reports that discuss, analyze, reflect or relate to the impact that coding has on Your revenue and profits attributable to ER services, and any communications relating to the same. For the avoidance of doubt, United seeks documents where TeamHealth analyzed, modeled or discussed how increasing (or decreasing) claims coded utilizing CPT codes 99285 and/or 99284 would, or did, impact Your revenue or profits for ER services.

[*Id*. at 3 (alteration in original and citation omitted)]. According to Plaintiffs, Defendants "responded with lengthy objections to both [RFPs] and refused to produce any responsive documents" [*Id*. (citation omitted)].

Plaintiffs seek an order compelling Defendants to respond to RFP Nos. 89 and 90 [Doc. 164]. They generally claim that RFP Nos. 89 and 90 seek relevant information that is proportional to the needs of the case [Doc. 165 pp. 5–11].

Defendants respond in opposition [Doc. 170]. They contend that Plaintiffs did not comply with the procedure outlined in the Scheduling Order for resolving discovery disputes [*Id*. at 5–6]. They argue that Plaintiffs' motion should therefore be denied [*Id*. at 6]. Defendants dispute

7

Plaintiffs' argument that RFP Nos. 89 and 90 seek relevant information that is proportional to the needs of the case [*Id*. at 6–17].

Plaintiffs reply, stating that "Judge Corker instructed the parties on the record at a case scheduling conference in November 2024, that so long as they met and conferred about their discovery issues, they could dispense with an informal discovery conference before filing their motions [Doc. 171 p. 2 (citing Doc. 91 p. 35)]. In addition, they argue that the Court has already determined Plaintiffs' discovery requests to be relevant and that Defendants cannot show that the discovery is disproportional to the needs of the case [*Id*. at 3–7].

## II. ANALYSIS

Prior to addressing the merits of the motion, the Court must address Defendants' argument that Plaintiffs did not comply with the discovery dispute process. The Amended Scheduling Order requires that "[p]rior to filing motions to compel, the parties shall contact chambers of the assigned Magistrate Judge to notify the Court of a dispute and schedule a time for a telephone conference to attempt to resolve the dispute" [Doc. 89 p. 2]. In addition, Judge Corker's preferences state, "Discovery disputes are generally handled by conference call with the assigned magistrate judge with all attorneys present on the call." *Judicial Preferences*, Clifton L. Corker, United States District Judge, United States District Court for the Eastern District of Tennessee, https://www.tned.uscourts.gov/content/clifton-l-corker-united-states-district-judge (last visited Oct. 21, 2025).

Plaintiffs did not comply with this procedure; however, they point to a hearing before Judge Corker, wherein he allowed the parties to file motions raising discovery issues after they have met and conferred [Doc. 91 p. 35]. Given that, the Court finds it appropriate to consider the matter.

The Court notes, however, that the parties have resorted to both avenues: contacting the undersigned on some discovery disputes but filing motions on others. To avoid inconsistencies with procedure, and to adjudicate discovery disputes expeditiously, the undersigned will address future discovery disputes in accordance with the procedure outlined in the Scheduling Order and Judge Corker's Judicial Preferences.

Turning to the merits of the motion, Federal Rule of Civil Procedure 26(b)(1) provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)); *see also Burrell v. Duhon*, No. 518CV00141, 2019 WL 5260481, at *2 (W.D. Ky. Oct. 17, 2019) ("The spirit and purpose of the Federal Rules of Civil Procedure demonstrate that the relevance threshold is a relatively low one." (citation omitted)). And courts have defined the term "relevant" as it is used in Rule 26(b)(1) to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in in the case." *Barrio Bros., LLC v. Revolucion, LLC*, No. 1:18-CV-02052, 2021 WL 282549, at *3 (N.D. Ohio Jan. 28, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

9

Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims." *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97, 2016 WL 7976040, at *1 (E.D. Ky. Apr. 14, 2016). "[T]he [C]ourt retains the final discretion to determine whether a discovery request is broad or oppressive." *Id.* (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

Under Rule 37(a), a party may move to compel discovery of relevant information. *Shelbyville Hosp. Corp. v. Mosley*, No. 4:13-CV-88, 2017 WL 1155046, at *2 (E.D. Tenn. Mar. 27, 2017) (citing Fed. R. Civ. P. 37(a)). The party moving to compel "bears the initial burden of proving that the information sought is relevant[.]" *Id.* (quoting *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). Once the party shows relevancy, "the burden shifts to the party resisting discovery to demonstrate 'why the request is unduly burdensome or otherwise not discoverable.'" *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235, 2016 WL 5869580, at *4 (W.D. Tenn. Oct. 5, 2016) (quoting *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 310 (W.D. Tenn. 2008)).

A. **RFP No. 89**

Plaintiffs argue that "it is well-settled that courts permit discovery into governmental investigations under similar circumstances presented here" [Doc. 165 p. 5]. They state that the Court's May Order "did not take issue with this premise, nor did the Court question the relevancy of the [r]equest itself" [*Id.* (citation omitted)]. Plaintiffs submit that their previous request "generally referred to government investigations into [Defendants'] 'billing and coding practices[,]'" but that "[RFP] No. 89 cured this issue by expressly cabining the scope to government investigations" [*Id.* (citation omitted)]. According to Plaintiffs, Defendants "attempt[]

10

to limit the Court's [May] [O]rder even further by suggesting that [RFP] No. 89 remains overbroad because 'these are the primary codes used by emergency medicine providers'" [*Id.* at 6 (citation omitted)]. They argue:

> But [Plaintiffs'] allegations in this case are that [Defendants] upcoded claims by overutilizing CPT code 99285 (and 99291/99292) for claims that should have been billed at lower levels. In other words, [Plaintiffs] could not further narrow this Request to government investigations specifically related to [Defendants'] use of CPT code 99285 because CPT Codes 99281–99285 are all interrelated. For example, it is beyond dispute that [Defendants] could bill a claim using CPT code 99285, but where the clinical records indicate that the patient did not in fact receive certain care, or that the care provided to the patient was not necessary, the 99285 claim should have been downgraded and billed using one of the lower lever CPT codes, 99281–99284. Thus, a government investigation into [Defendants'] billing and coding practices for emergency department professional services relating to these CPT codes is directly probative of the upcoding allegations in this case, such that it is proportional to the needs of the case.

[*Id.*].

In addition, Plaintiffs assert that Defendants "may also attempt to argue that this case involves only commercial claims, so any government investigation into [their] billing and coding of CPT codes 99281–99285 is somehow different and unlikely to lead to the discovery of admissible evidence" [*Id.*]. They submit, however, that this argument "is a red herring because [Defendants], by [their] own admission, used the same coding standards for commercial and governmental claims" [*Id.*].

Defendants respond that "RFP [No.] 89 is precisely the type of cloned discovery request that courts regularly deny" [Doc. 170 p. 7 (footnote omitted)]. Calling RFP No. 89 a "fishing expedition," Defendants claim that Plaintiffs "make[] no effort to articulate how the fishing license [they] seek[] is reasonably calculated to inform the propriety of any claim or defense in [their]

11

Case 3:21-cv-00364-DCLC-DCP   Document 217   Filed 10/24/25   Page 11 of 18
PageID #: 3775

case" [*Id*. (emphasis omitted)]. They further submit that RFP No. 89 seeks information that is not proportional to the needs of the case [*Id*. at 15–17].

Plaintiffs reply that while the Court found the previous request overbroad, it implicitly found that the request sought relevant information [Doc. 171 p. 3]. Plaintiffs argue that RFP No. 89 seeks relevant documents, noting "[a]ny documents produced in connection with a government investigation into [Defendants'] potential abuse of CPT code 99285 would tend to establish the same sort of things that [Plaintiffs] must prove in this matter, including [Defendants'] efforts to knowingly and intentionally defraud [Plaintiffs] into paying more than [they] should have for emergency medicine claims" [*Id*.]. "This is because," Plaintiffs add, "[Defendants] maintain[] that [they] app[y] the same standards, policies, and procedures for coding CPT codes 99281–99285 across all payors (including governmental payors)" [*Id*.]. Plaintiffs state that the Court previously noted that Defendants also requested similar documents [*Id*. at 3–4]. In addition, Plaintiffs assert that Defendants cannot show that RFP No. 89 seeks information that is disproportional to the needs of the case [*Id*. at 5–7].

As noted above, RFP No. 89 seeks, "[d]ocuments relating to any federal, state, or regulatory investigation into Your billing and coding practices for emergency department professional services relating to CPT codes 99[281]–99285" [Doc. 165 p. 3 (second alteration in original and citation omitted)].[2] The parties argue whether RFP No. 89 seeks relevant information that is proportional to the needs of the case. Plaintiffs cite to cases supporting their position [Docs.

---

[2] The Court notes that Defendants sought similar discovery from Plaintiffs in their RFP No. 39, "Produce all documents and communications related to investigations or inquiries by any state or federal regulatory agency or body regarding Plaintiffs' attempted or actual implementation of any downloading policies, procedures or guidance" [Doc. 101-1 p. 27]. Plaintiffs also objected, in part, on relevancy [*Id*.]. Later, Plaintiffs stated that they did not have any documents [Doc. 146 p. 42]. Despite this, the parties dispute relevancy—Plaintiffs now claiming that governmental investigations are relevant, while Defendants argue otherwise.

12

165 p. 5 (citing *Munoz v. PHH Corp.*, No. 1:08-cv-0759, 2013 WL 684388, at *4 (E.D. Cal. Feb. 22, 2013) (compelling the production of documents produced to a federal agency "investigating the same alleged wrongful conduct as is alleged by Plaintiffs");[3] *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 110–11 (S.D.N.Y. 2013) (compelling production of documents turned over to the government in investigations of the conduct at issue in the case, in addition to "investigations of broader practices or issues that are not explicitly tied to loans in this case but are nevertheless pertinent"); *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922, 2012 WL 3791716, at *16-17 (C.D. Cal. Mar. 12, 2012) (compelling production of documents concerning regulatory investigations into the subject matter of the litigation)].

Defendants cite to cases supporting their position [Doc. 170 pp. 6–7 & p. 6, n.4 (citing *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:19-CV-0722, 2020 WL 12968432, at *5 (M.D. Tenn. Apr. 23, 2020) ("Indeed, '[a]sking for all documents produced in another matter is not generally proper. The propounding party cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for.'" (quoting *Goro v. Flowers Foods, Inc.*, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019)); *Stellato v. Medtronic Minimed, Inc.*, No. 619CV2180ORL37, 2021 WL 3134685, at *3 (M.D. Fla. Feb. 2, 2021) ("The Court finds that what is essentially a request for much of (if not all) discovery from an entirely separate case, without any limitation—for example, as to subject matter or content—is not appropriately tailored to produce relevant and proportional discovery in this case."); *In Re CenturyLink Sales Pracs. & Sec. Litig.*, No. CV 18-296, 2020 WL 8256364, at *7 (D. Minn. Oct. 28, 2020) ("Simply producing

---

[3] Defendants point out that *Munoz* "placed the burden on the party resisting discovery to establish the irrelevancy of the information sought rather than placing the burden on the party seeking discovery to establish its relevancy" [Doc. 170 p. 8 (emphasis and citations omitted)].

all of the documents and other information [the non-party] provided to governmental entities in connection with civil investigative demands or the prosecution of litigation against [the defendant], although it may make things easy for [the non-party], would likely result in the production of large chunks of information that is irrelevant to this lawsuit while not necessarily producing information that is."); *TravelPass Grp., LLC v. Caesars Ent. Corp.*, No. 5:18-CV-153, 2020 WL 698538, at *6 (E.D. Tex. Jan. 16, 2020) ("[A]sking for all documents produced in another matter is not generally proper."); *New Jersey Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, No. 08 CIV. 5653, 2012 WL 13135408, at *1 (S.D.N.Y. Mar. 2, 2012) ("'Copy cat' or 'monkey see/monkey do' requests may be appropriate where the scope and contours of separate lawsuits and discovery demands are the same, or nearly the same. But the Government's investigation is far broader than the limited subject matter of this lawsuit . . .").

Here, the Court notes that "there is no bar to the production of 'cloned discovery.' Rather, the issue is, as always, whether the requested documents are relevant to plaintiffs' claims and, if so, whether their production is proportional to the needs of the case." *Garner v. Amazon.com, Inc.*, No. C21-0750, 2023 WL 6038011, at *2 (W.D. Wash. Sept. 15, 2023); *see also In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21 C 305, 2023 WL 4181198, at *7 (N.D. Ill. June 26, 2023) ("Ultimately, 'the appropriateness of cloned discovery depends upon the circumstances' of each case." (quoting *Forth v. Walgreen Co.*, No. 17 C 2246, 2019 WL 10255628, at *7 (N.D. Ill. July 10, 2019)); *Humana Inc. v. Teva Pharms. USA, Inc.*, No. 6:21-CV-72, 2021 WL 8651837, at *1 (M.D. Fla. Oct. 19, 2021) ("Generally, cloned discovery has not been compelled, even absent a showing of undue burden, unless the requesting party shows that all the cloned discovery is relevant." (citation omitted)).

The Court finds that Plaintiffs have not met their burden in showing the requested information is relevant. They seek documents relating to any investigation into Defendants' billing practices relating to CPT codes 99281–99285. But in writing the request that way, that is—asking for everything related to billing practices about these codes—the Court cannot discern whether this request would produce relevant information about the specific allegations in this case, which generally pertain to upcoding or overutilization of codes. *See Fort Worth Employees' Ret. Fund*, 297 F.R.D. at 110 ("[The plaintiffs] are not entitled to all documents relating to [residential-mortgage-backed security business] that the defendants have turned over to 'any government body or agency' pursuant to subpoena."); *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922, 2012 WL 3791716, at *16 ("The allegations in the Complaint, and the Court's Order, focus on the causes (and concealment) of defects relating to unintended acceleration. To the extent that [the defendant] has been the subject of any other 'potential' or 'ongoing' regulatory oversight not related to unintended acceleration, its relevance is, at best, questionable . . ."). Without more specificity, "[Plaintiffs] cannot carry [their] burden of establishing relevancy because [they do] not even know what documents [they have] asked for." *Pictsweet Co.*, 2020 WL 12968432, at *5. And if Plaintiffs are unable to identify what they need, the Court is certainly not in the position to do so. Indeed, Plaintiffs have not significantly explained whether a particular document to or from an investigative agency is relevant, *see In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 2023 WL 4181198, at *7, nor have they explained the "significant factual and legal overlap" between this case and any investigations. *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16CV02200, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017).

Based on the above, the Court finds Plaintiffs have not met their burden in showing RFP No. 89 seeks relevant information, and therefore, the Court denies their request at this time.

B.     RFP No. 90

Plaintiffs state that they "served [RFP] No. 90 to address the Court's overbreadth concerns" [Doc. 165 p. 8].[4] They argue that the documents they seek "would tend to show [Defendants'] motive and intent to engage in [their] fraudulent upcoding scheme under the relevant decisional authorities" [*Id*. (citations omitted)]. Further, Plaintiffs submit that they "carefully drafted the language of [RFP] No. 90 to track the Court's own language from its order compelling [Defendants] to produce certain post-acquisition financial materials [they] shared with Blackstone" [*Id*. at 9]. According to Plaintiffs, "[T]he Court ordered [Defendants] to produce: 'Documents discussing revenue growth opportunities as it relates to upcoding, Documents related to the impact that coding as on Your annual revenue and profits attributable to ER services, and any communication related to the same'" [*Id*. at 9–10]. They contend that they now "seek[] internal documents" [*Id*. at 10 (emphasis omitted)]. In addition, Plaintiffs assert that Defendants cannot show that RFP No. 90 seeks information that is disproportional to the needs of this case [*Id*. at 9–11].

Defendants respond that RFP No. 90 does not seek relevant information, noting that "[t]he general intent to profit is not interchangeable with the specific intent to defraud" [Doc. 170 p. 11 (citation omitted)]. They assert that such discovery does not show that they "intentionally misrepresented material facts by applying incorrect CPT codes to emergency medicine claims [they] submitted to Plaintiffs" [*Id*. at 12 (citation omitted)]. "[Their] motivation[,]" Defendants contend, "to see profit from [their] business endeavors, if reflected in any document, is not relevant

---

[4]     Plaintiffs note, 'The Court previously observed that [Plaintiffs'] prior [RFP] No. 17 included CPT codes 99291 and 99292" [Doc. 165 p. 7]. They state that "[t]hese CPT codes denote critical care above and beyond that represented by CPT code 99285[,]" that the parties understand "that critical care claims are included within the universe of claims at issue, and that [Plaintiffs] seek[] damages for improperly submitted critical care claims" [*Id*. at 7–8 (citation omitted)].

16

to whether [Defendants] defrauded [Plaintiffs]" [*Id*. at 13]. According to Defendants, in order "[t]o prevail on [their] fraud theory, [Plaintiffs] must prove that [Defendants] coded emergency medicine claims with an 'intent to deceive or cheat for the purpose of causing a financial loss to another or bringing about a financial gain to [their selves]" [*Id*. at 14 (citations omitted)]. They contend that "[t]he effort is in no way aided by the unremarkable showing that [Defendants] sought to operate [their] business at a profit" [*Id*. at 14–15 (citation omitted)]. Defendants further claim that RFP No. 90 seeks information that is disproportional to the needs of the case [*Id*. at 15–17].

Plaintiffs reply, stating that Defendants fail to address the Court's previous order allowing a similar discovery request [Doc. 171 pp. 4–5]. They assert that "[i]t is simply not true that documents responsive to RFP No. 90 could only evince [Defendants'] intent to make a profit, and not [their] motive, opportunity to specifically upcode emergency medicine claims with the intent of inducing [Plaintiffs] to pay more for those services" [*Id*. at 5].

As noted above, RFP No. 90 seeks:

> Business plans, internal revenue projections, and financial reports that discuss, analyze, reflect or relate to the impact that coding has on Your revenue and profits attributable to ER services, and any communications relating to the same. For the avoidance of doubt, United seeks documents where TeamHealth analyzed, modeled or discussed how increasing (or decreasing) claims coded utilizing CPT codes 99285 and/or 99284 would, or did, impact Your revenue or profits for ER services.

[Doc. 165 p. 3 (citation omitted)]. Plaintiffs point out that on May 16, 2025, the Court allowed them to seek documents that Defendants provided to Blackstone, which discussed revenue growth opportunities relating to upcoding and that related to the impact that coding had on Defendants' annual revenue and profits, and any communications related to the same [Doc. 146 pp. 7–12]. The instant discovery request seeks the same information that Defendants internally possess. The Court

17

finds no reason to depart from its earlier ruling. As noted above, this case relates to Plaintiffs' claims that Defendants upcoded claims and did so to make a profit [*See* Doc. 1].

Further, Defendants have not shown that RFP No. 90 seeks information that is disproportional to the case. *See Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208, 2016 WL 10788070, at *8 (W.D. Ky. Oct. 11, 2016) ("It is the party resisting discovery that still bears the burden to show that the discovery sought is disproportionate.") (collecting cases)). Instead, they argue that there is "minimal probative value of the information" requested and assert that they "have already spent considerable time" responding to other discovery requests [Doc. 170 p. 15]. They have not shown, however, how RFP No. 90 is disproportional to the needs of this case.

Based on the above, the Court therefore **ORDERS** Defendants to respond to RFP No. 90 on or before **November 13, 2025**.

### III. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Third Motion to Compel Discovery [**Doc. 164**].

**IT IS SO ORDERED.**

ENTER:

*/s/ Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge