UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITEDHEALTHCARE SERVICES, INC.,<br>UNITED HEALTHCARE INSURANCE CO.,<br>and UMR, INC., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:21-CV-364-DCLC-DCP |
| | ) | |
| TEAM HEALTH HOLDINGS, INC.,<br>AMERITEAM SERVICES, LLC, and<br>HCFS HEALTH CARE FINANCIAL<br>SERVICES, INC., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is the parties' Joint Position Statement [Doc. 183-1]. Plaintiffs designated certain documents as Attorneys' Eyes Only ("AEO") or made redactions to documents, and Defendants challenge these designations. For the reasons explained below, the Court finds Plaintiffs have not established that Exhibits 1 to 12 should be marked as AEO, but they have met their burden with respect to Exhibit 13. The Court finds the redactions to Exhibits 14 to 19 are not warranted.

## I. BACKGROUND

On February 7, 2025, Defendants filed the Motion to Release Confidentiality Designations and Remove Improper Confidentiality Redactions ("Motion to Release") [Doc. 100]. Plaintiffs responded in opposition to this motion [Doc. 107], and Defendants filed a reply [Doc. 119]. On May 13, 2025, the parties appeared before the Court for a motion hearing on various matters,

including Defendants' Motion to Release [Doc. 100]. Defendants' Motion to Release raised various confidentiality challenges to Plaintiffs' Administrative Service Agreements ("ASAs") and other documents. With respect to the ASAs, the Court addressed the parties' dispute in its Memorandum and Order [Doc. 145]. The Court directed the parties to meet and confer about the remaining documents to determine whether they could be presented by category and sampling [*Id*. at 3, n.1].

After the parties met and conferred, on August 18, 2025, they filed their Joint Position Statement [Doc. 183-1]. The parties dispute the designations of four categories of documents: (1) Plaintiffs' Special Investigation Unit Investigations ("SIU"), wherein the documents reference matters relating to non-TeamHealth providers; (2) Plaintiffs' reimbursement rates; (3) Plaintiffs' internal out-of-network-reimbursement analysis; and (4) documents that Plaintiffs have redacted [*Id*. at 1]. They submitted exemplars of each category for the Court's *in-camera* review.

## II.    ANALYSIS

Federal Rule of Civil Procedure 26(c) governs protective orders. That Rule authorizes a court to enter an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Among the type of relief illustrated in subsection (c) is, as delineated in subsection (G), "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

Here, the parties agreed to, and the Court entered, a Stipulated Confidentiality and Protective Order [Doc. 53]. It allows the parties to designate information as "Confidential" or "Attorneys' Eyes Only" ("AEO") [*Id*. ¶ 3]. Specifically, it provides:

> a.    A Party may only designate as "CONFIDENTIAL" any document or any portion of a document, and any other thing, material,

testimony, or other information, that it reasonably and in good faith believes contains or reflects (a) proprietary, business sensitive, or confidential information that should otherwise be subject to confidential treatment pursuant to applicable federal or state law, or (b) Protected Health Information, Patient Identifying Information, or other HIPAA-governed information[.]

b.   A Party may only designate as "ATTORNEYS' EYES ONLY" any document or portion of a document, and any other thing, material, testimony, or other information, that it reasonably and in good faith believes contains highly competitive or commercially sensitive (i) trade secrets or (ii) proprietary and non-public information, and regardless of whether designated under (i) or (ii), the disclosure of which would significantly harm business advantages of the producing or designating Party or information concerning third-party pricing and/or reimbursement rates (i.e., reimbursement rates that providers other than Defendants have charged or accepted and that insurers and payors other than the Plaintiffs have paid for claims similar to those at issue in this case) and that disclosure of such information could reasonably be expected to be detrimental to the producing or designating party's interests.

[*Id*. ¶ 3(a)–(b)]. In addition, "The Party designating information as Confidential Information bears the burden of establishing the designated information is entitled to the level of protection sought under pursuant to the terms of this Protective Order" [*Id*. ¶ 10].

"An AEO designation is the most restrictive possible protective order, as it confines dissemination of discovery materials only to the opposing party's attorneys and other consultants/experts specified in the agreement." *Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-CV-0993, 2012 WL 5948363, at *4 (S.D. Ohio Nov. 28, 2012) (other quotations omitted), *cited in ACT, Inc. v. Worldwide Interactive Network, Inc.*, No. 3:18-CV-186, 2019 WL 5865623, at *8 (E.D. Tenn. Nov. 8, 2019)). "When this type of designation is challenged, the party seeking to uphold the designation has the burden of showing that such designation is proper and 'must describe the alleged harm it will suffer from any disclosure with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Home Fed.*

3

*Bank of Tenn. v. Home Fed. Bank Corp.*, No. 3:18-CV-379, 2020 WL 12863501, at *4 (E.D. Tenn. Mar. 12, 2020) (quoting *Penn*, *LLC*, 2012 WL 5948363, at *4 (internal quotations omitted)).

### A. Special Investigations Unit Documents

The parties submitted six exemplars for the Court's review from Plaintiffs' SIU [Doc. 183-1 p. 2]. Plaintiffs have designated these documents as AEO, and Defendants challenge these designations [*Id.*].

### 1. Exhibit 1 - UNITED_TH_TN 00140381

Plaintiffs claim that "Exhibit 1 is a spreadsheet containing information related to [their] investigation into approximately 1,000+ non-TeamHealth providers" [*Id.* at 3]. They state that "[t]he spreadsheet is not limited to emergency department providers, but rather involves a variety of different provider types including home health, laboratory and radiology, neurology, pharmacy, OBGYN, etc." [*Id.*]. In addition, Plaintiffs claim that "[t]he spreadsheet contains the non-TeamHealth providers' names, tax identification number, the fraud, waste, and abuse referral source and referral comments, data on overpayments recovered, and [Plaintiffs'] attempt to re-educate the provider" [*Id.*]. Plaintiffs argue that their "monitoring or investigation into other non-TeamHealth providers bears no relevance to the claims or defenses[,]" and they have "important policy interests in maintaining confidentiality over the identities of the providers [they have] and ha[ve] investigated and the names and sources that reported the suspected fraud" [*Id.*]. Plaintiffs state that Defendants' attorneys have this document, and therefore, they do not understand why Defendants' internal employees need it as well [*Id.*].

Defendants respond that Plaintiffs have not met their burden in showing an AEO designation is appropriate [*Id.*]. They claim that Plaintiffs have not "directly address[ed] which

category of AEO information SIU investigations fall into and therefore ha[ve] not shown 'good cause'" [*Id*. at 4]. While Plaintiffs assert relevancy grounds, Defendants contend that "relevance is not one of the permissible grounds for AEO designation under the Protective Order" [*Id*. at 4–5]. But regardless, Defendants claim the information is relevant [*Id*. at 5]. Plaintiffs' other point—Defendants' internal employees having access to this information—Defendants argue, "attempt[s] to shift the burden of justifying the AEO designation" [*Id*. at 6].

The Court has reviewed Exhibit 1. Plaintiffs have not sufficiently explained why Exhibit 1 should be designated as AEO pursuant to the definition the parties agreed to in the Protective Order [Doc. 53 ¶ 3(a)–(b)]. They do not explain whether the information is highly competitive or commercially sensitive (i) trade secrets, or (ii) proprietary and non-public information [*Id*.]. While it appears to be non-public information given that it relates to Plaintiffs' investigation of other providers, Plaintiffs do not explain whether disclosure would harm their business advantages and be detrimental to their interests.

Instead, Plaintiffs claim that they have "an important policy concern in maintaining confidentiality" [Doc. 107 p. 10 (citing *York v. American Med. Sys.*, 166 F.3d 1216, 1988 WL 863790 (6th Cir. 1998) (table opinion)].[1] But in that case, the Court of Appeals for the Sixth Circuit granted the defendant's motion for protective order allowing it to redact the names of patients, physicians, and hospitals from medical device reports. *York*, 1988 WL 863790, at *2. It reasoned that the United States Food and Drug Administration's regulations did not permit disclosure, and the magistrate judge acted in accordance with his discretion after balancing the relevant hardship the redactions would impose on the parties. *Id*. at *2–5. The facts of this case are therefore

---

[1] Both parties incorporate the original briefs related to this issue [Docs. 99, 100, 107, and 119], which the Court has reviewed.

inapposite from the present matter.[2]

Plaintiffs state, "The federal government relies on private payers to investigate provider fraud, especially as it relates to federally funded health plans like Medicare and Medicaid" [Doc. 107 p. 11 (citation omitted)]. According to Plaintiffs, "If the providers [they] suspect[] of fraud are 'cavalierly disclosed,' it may alert those providers and jeopardize ongoing investigations. And if the names and sources that originally reported the fraud are disclosed, it can both endanger those reporters and discourage individuals from reporting fraud in the future" [*Id.*]. But these arguments do not address why the material should be considered AEO under the parties' Protective Order. Moreover, to the extent Plaintiffs believe such information is confidential and should not be disclosed, they can designate it accordingly.[3]

As such, the Court finds Plaintiffs have not established that the AEO designation on Exhibit 1 is warranted.

### 2.     Exhibit 2 - UNITED_TH_TN 00140453

Plaintiffs state, "Exhibit 2 is a spreadsheet containing information related to [Plaintiffs'] investigation into thousands of non-TeamHealth providers" [Doc. 183-1 p. 6]. The parties' arguments regarding Exhibit 2 are nearly identical to their arguments about Exhibit 1 [*Id.* at 6–8].

For the same reasons as above, the Court finds Plaintiffs have not established that the AEO designation on Exhibit 2 is warranted.

---

[2]     The other case Plaintiffs rely on [*see* Doc. 107 p. 11 (citing *DISH Network, L.L.C. v. Sonicview USA, Inc.*, No. CIV. 09CV1553-L, 2009 WL 2579052, at *2 (S.D. Cal. Aug. 20, 2009))] relate to filings in the public record, and therefore, is not applicable.

[3]     Plaintiffs also claim that the information is not relevant [Doc. 183-1 p. 3]. They rely on their response in opposition to Defendants' Motion to Release [Doc. 107]. But in their opposition, they simply argue that their "investigations into other providers" are "entirely irrelevant to this case" [*Id.* at 11]. This is conclusory.

6

### 3.      Exhibit 3 - UNITED_TH_TN 00084568

Plaintiffs state that "Exhibit 3 is a spreadsheet tracking thousands of emergency department providers under investigation across [Plaintiffs'] various business lines including commercial, Medicare, and Medicaid" [*Id*. at 8]. Plaintiffs contend that it "contains non-TeamHealth providers' tax identification number in the 'TIN DATA' tab[.]" and that "[t]he tax identification number can be used to identify a provider's name, address, etc." [*Id*.]. They rely upon the same arguments that they made with respect to Exhibits 1 and 2 [*Id*. at 8–9].

Defendants also rely on the same arguments they made with respect to Exhibits 1 and 2 [*Id*. at 9–10].

The Court has reviewed Exhibit 3. Again, Plaintiffs have not identified whether Exhibit 3 contains highly competitive or commercially sensitive (i) trade secrets, or (ii) propriety and non-public information [Doc. 53 ¶ 3(b)]. But even if they had, they fail to explain how the disclosure of Exhibit 3 would significantly harm their business advantages and be detrimental to them [*See id*.]. For the same reasons as above, the Court finds Plaintiffs have not established that the AEO designation on Exhibit 3 is warranted.

### 4.      Exhibit 4 - UNITED_TH_TN 00140543

Plaintiffs state that "Exhibit 4 is an internal . . . document reflecting [their] investigation into nine non-TeamHealth ER physician groups, as well as [Defendants]" [Doc. 183-1 p. 10]. They have "redacted portions of the document that do not discuss [Defendants] specifically as [Plaintiffs'] monitoring or investigation into other non-TeamHealth providers bears no relevance to the claims or defenses asserted by [Defendants], nor do the reimbursement rates these providers received[,] which are reflected in the document" [*Id*.]. They state that they have "important policy interests in maintaining confidentiality over the identities of the providers [they are] and ha[ve]

7

investigated, as well as the reimbursement rates negotiated for each individual provider" [*Id.*]. But regardless, Plaintiffs state that they are "willing to reproduce as 'Confidential' with the redactions to remain" [*Id.*].

Defendants rely on the same arguments that they made with respect to the above exhibits [*Id.* at 10–11]. They add that "information reflecting reimbursement rates is not protected unless disclosure of the information to [Defendants] 'could reasonably be expected to be detrimental to the producing or designating party's interests'" [*Id.* at 11]. In addition, they argue that Plaintiffs have "similarly failed to articulate how disclosing. . . reimbursement rates from nearly a decade ago could possibly be detrimental to [their] present interests" [*Id.* (emphasis omitted)]. They argue that the unilateral redactions are not proper and that Plaintiffs' willingness to produce the document as 'Confidential' with the redactions shows that their "application of the AEO designation to this document in its redacted form is improper" [*Id.*].

The Court has reviewed Exhibit 4, which contains redactions. Even so, for the same reasons as above, the Court finds Plaintiffs have not established that the AEO designation on Exhibit 4 is warranted.

### 5. Exhibit 5 - UNITED TH TN 00081598

Plaintiffs state that "Exhibit 5 is an email chain containing information related to [their] investigation into a non-TeamHealth provider, as well as [Defendants]" [*Id.* at 12]. They make similar arguments as previously summarized—their "monitoring or investigation into other non-TeamHealth providers bears no relevance to the claims or defenses" and they have important policy interests in maintaining confidentiality over the identities of the providers [they are] and ha[ve] investigated and the names and sources that reported the suspected fraud" [*Id.*]. Plaintiffs

8

state, however, that they are "willing to reproduce a version of this document as 'Confidential' and with redactions applied as to the non-TeamHealth provider" [*Id*.].

Defendants rely on the same arguments as above [*Id*. at 12–13]. In addition, they state that Plaintiffs "fail[] to mention . . . that the other provider is . . . another large, private equity-owned emergency room provider that [Plaintiffs] ha[ve] accused, in a nearly identical public lawsuit, of operating as a nearly identical criminal RICO enterprise" [*Id*. at 12 (emphasis omitted)].

For the same reasons as above, the Court finds Plaintiffs have not established that the AEO designation on Exhibit 5 is warranted. And with respect to Plaintiffs' proposal, Defendants point out that the redacted entity is part of a public lawsuit. This too does not support an AEO designation.

### 6.     Exhibit 6 - UNITED_TH_TN 00083631

Plaintiffs state that "Exhibit 6 is an internal . . . email chain" [*Id*. at 13]. Plaintiffs contend that it "contains information related to [their] investigation into a non-TeamHealth provider" [*Id*.]. They rely on the same arguments as above [*Id*.]

Defendants rely on their same arguments as well [*Id*. at 13–14]. But they add that "this email threat is particularly relevant because it concerns . . . a subsidiary . . . and [Plaintiffs'] analysis of [the subsidiary's] use of 'CPT codes 99284 – 99285' (the same codes at issue in this case)" [*Id*. at 14]. "In other words," Defendants argue, "this email thread reflects how [Plaintiffs] targeted another large and private equity-owned ER provider's coding and billing practices in the context of the exact same CPT codes that are at issue in this case, providing compelling insight into [Plaintiffs'] 'sophistication,' its 'opportunity to discover the fraud,' and [Plaintiffs'] financial motivations for treating and [Defendants] differently than other providers" [*Id*.].

For the same reasons as explained above, the Court finds Plaintiffs have not established that the AEO designation on Exhibit 6 is warranted.

### B.    Documents Reflecting Plaintiffs' Reimbursement Rates

The parties submitted six exemplars relating to documents reflecting Plaintiffs' reimbursement rates [*Id*. at 14]. Plaintiffs have marked these documents as AEO, and Defendants dispute that designation [*Id*.].

### 1.    Exhibit 7 - UNITED TH TN 00081478

Plaintiffs state that "Exhibit 7 is a spreadsheet reflecting the claims data for various ER providers submitting claims to [them]. Tabs 'Pivot,' 'Data,' and 'Entity' reflect the names and tax identification numbers of non-TeamHealth providers" [*Id*. at 15]. The Data tab, Plaintiffs contend, "reflects [their] reimbursement rates for various non-TeamHealth providers in the form of 'billed,' 'eligible,' 'allowed,' and 'net paid' amounts. This type of reimbursement data is precisely the kind of information the parties contemplated when agreeing to the Protective Order" [*Id*.]. Plaintiffs assert, "Reimbursement rate data is not shared outside of [their] organization, and certainly not shared with other providers or payors in the industry" [*Id*.]. They also claim, similar to their arguments above, that reimbursement rates are not relevant in this case and that "[t]here is no reason [Plaintiffs'] employees need access to the reimbursement rates [Plaintiffs] provide[] to other non-TeamHealth providers" [*Id*.]. Plaintiffs argue that information about the other providers they were investigating is not relevant, and they have "important policy interests in maintaining confidentiality over the identities of the providers [they are] and ha[ve] investigated and the names and sources that reported the suspected fraud" [*Id*.].

Defendants respond that while Exhibit 7 "reflects provider reimbursement in an indirect and high-level form, the financial data is aggregated in such a way that makes discerning the

reimbursement rates impossible" [*Id.* at 16]. "For example," Defendants state, "Row 29 does set out a billed amount (27,499), an eligible amount (22,061), an amount allowed (17,069), and an amount paid (13,029)—but for 21 different visits" [*Id.* (emphasis omitted)]. They claim that "even for the rows that reflect a single visit, such as Row 1, the spreadsheet does not in any way indicate what services (and which CPT codes) were billed" [*Id.*]. Defendants assert, "[T]his data does not reflect the actual reimbursement rates so much as the total amount (or average total amount) that [Plaintiffs] paid per visit" [*Id.*]. They argue that as such, Plaintiffs have "not articulated how disclosure of this information poses any competitive risk" [*Id.*]. Defendants further submit that the data is old, explaining that reimbursement rates "are typically renegotiated every three to five years" and that this data is from January 1, 2018, to March 31, 2018 [*Id.*]. Defendants contend that such information is relevant and that its Plaintiffs' "burden to justify this restrictive designation" [*Id.* at 17].

The Court has reviewed Exhibit 7. The parties acknowledge that the Protective Order contemplates designating reimbursement rates as AEO. But here, Plaintiffs have not shown how the disclosure of Exhibit 7 could reasonably be expected to be detrimental to their interests. Instead, they assert that they do not share such information outside their organization [*Id.* at 15]. But that claim is insufficient for an AEO designation. Further, to Defendants' point, the aggregate nature of the information contained in Exhibit 7 "makes discerning the reimbursement rates impossible" [*Id.* at 16]. And Plaintiffs have not identified how the disclosure of reimbursements rates in 2018—seven years ago—is detrimental. The Court has addressed Plaintiffs' remaining arguments above. The Court therefore finds Plaintiffs have not established that the AEO designation on Exhibit 7 is warranted.

11

### 2. Exhibit 8 - UNITED_TH_TN 00083328

Plaintiffs state that "Exhibit 8 is a spreadsheet reflecting the ER providers on [Plaintiffs']
prepayment review for suspected fraud, waste, and abuse" [*Id*. at 17]. According to Plaintiffs,
"Columns A–C of the 'Pre-Pay Details' tab reflects non-TeamHealth provider names, tax
identification numbers, and a provider identification number, for those providers under pre- and
post-payment review by [Plaintiffs]. Column F reflects [Plaintiffs'] reimbursement rates for
various non-TeamHealth providers in the form of 'billed amounts'" [*Id*.]. They repeat their
arguments they made in support of their AEO designation for Exhibit 7 [*Id*. at 17–18].

Defendants respond that Plaintiffs fail to address how disclosure of Exhibit 8 is detrimental
to their interests [*Id*. at 18]. While they claim prejudice, Defendants argue that they do not explain
the prejudice [*Id*.]. According to Defendants, "[T]he data is from 2013 to 2015, meaning that the
reimbursement rates reflected in the spreadsheet are between ten to twelve years old" [*Id*.
(emphasis omitted)]. "[T]he usefulness of the data[,]" Defendants claim, "declines precipitously
over time" [*Id*.]. They argue, "Disclosure of reimbursement rates from a decade ago cannot
possibly pose any risk of harm to [Plaintiffs'] interests" and that "the financial data is aggregated
in such a way that makes discerning the reimbursement rates nearly impossible" [*Id*. (emphasis
omitted)]. Defendants repeat the arguments that they made in opposing the AEO designation in
Exhibit 7 [*Id*. at 18–19].

The Court has reviewed Exhibit 8. The Court finds Exhibit 8 is not appropriately designated
AEO for the same reasons Exhibit 7 is not AEO material. While Plaintiffs contend that Exhibit 8
contains reimbursement rates, they are from a decade ago, and Plaintiffs have not established
disclosure is detrimental to their interests. The Court therefore finds Plaintiffs have not established
that the AEO designation on Exhibit 7 is warranted.

### 3. Exhibit 9 - UNITED TH TN 00140848

Plaintiffs state that "Exhibit 9 is a monthly spreadsheet reflecting the providers on [their] prepayment review for suspected fraud, waste, and abuse in the state of Georgia" [*Id*. at 19]. According to Plaintiffs, "Column A reflects non-TeamHealth provider names under investigation and columns F–K reflect [Plaintiffs'] reimbursement rates for various non-TeamHealth providers via claims data information including billed amounts, allowed amounts, paid amount, etc. As depicted in Column E, most of the data also relates to CPT codes not at issue in this litigation (i.e., 99284, 99285)" [*Id*.]. They rely on the same arguments they made with respect to Exhibits 7 and 8 [*Id*. at 19–20].

Defendants respond that Plaintiffs fail to "address that the data is from 2015 to 2016" and that they fail to explain how disclosure prejudices them [*Id*. at 20]. They rely on the same arguments they made with respect to Exhibits 7 and 8 [*Id*.].

The Court has reviewed Exhibit 9. The Court finds that Exhibit 9 is not appropriately designated AEO for the same reasons Exhibits 7 and 8 are not AEO material. As such, the Court finds Plaintiffs have not established that the AEO designation on Exhibit 9 is warranted.

### 4. Exhibit 10 - UNITED_TH_TN 00140800

Plaintiffs state, "Like Exhibit 9, Exhibit 10 is a monthly spreadsheet reflecting the providers on [their] prepayment review for suspected fraud, waste, and abuse in the state of Georgia" [*Id*. at 21]. They assert, however, that "[u]nlike Exhibit 9, [Plaintiffs have] also redacted this version of the document in Exhibit 10" [*Id*.]. Plaintiffs claim that they "agree[] to reproduce Exhibit 10 to be consistent with Exhibit 9 (i.e., removing redactions but keeping the AEO designation)" [*Id*.]. And they rely on the same reasons in support of the argument relating to Exhibit 9 [*Id*.].

13

Defendants respond that they have "not receiv[ed] an unredacted version of this spreadsheet from [Plaintiffs]" [*Id.*]. In any event, Defendants state that "the AEO designation applied to this document remains inappropriate and unsupported for the same reasons in [their] position on Exhibit 9" [*Id.*].

The Court has reviewed Exhibit 10, which is an excel sheet with the word "Redacted" in all the rows and columns. The parties rely on their arguments that they made with respect to Exhibit 9. As such, the Court finds Plaintiffs have not established that the AEO designation on Exhibit 10 is warranted.

### 5. Exhibit 11 - UNITED_TH_TN 00083327

Plaintiffs state that "Exhibit 11 is . . . [their] internal spreadsheet" [*Id.* at 21]. They claim, "Tab 'Sheet 3' reflects [Plaintiffs'] confidential reimbursement rates for certain non-TeamHealth providers" [*Id.*]. Specifically, they contend, "Column D reflects the 'gross' claim amount per individual claim for a variety of different providers" [*Id.*].

Defendants respond that "the financial data is aggregated in such a way that makes discerning the reimbursement rates impossible" [*Id.* at 22]. According to Defendants, "'Sheet 3' does reflect the 'gross' claim amount, [but] it does not in any way indicate what services (and which CPT codes) were billed. In other words, this data does not reflect actual reimbursement rates so much as the total amount (or average total amount) that [Plaintiffs] paid per visit" [*Id.*]. They argue that "[e]ven if this data did reflect reimbursement rates (which it does not), [Plaintiffs have] not articulated how disclosure of this information could possibly pose any competitive risk" [*Id.*]. Defendants repeat the same arguments they made with respect to Exhibits 7 to 10, including that the data is from 2014 [*Id.* at 21–22].

14

The Court has reviewed Exhibit 11, and specifically Sheet 3. It reflects the gross amount billed, but it does not provide any other information. For similar reasons as above, the Court finds Plaintiffs have not established that the AEO designation on Exhibit 11 is warranted.

### 6. Exhibit 12 - UNITED_TH_TN 00083708

Plaintiffs state, "Exhibit 12 is a spreadsheet reflecting updated data for emergency room providers that would fall into the scope of [Plaintiffs'] SIU review" [*Id*. at 23]. According to Plaintiffs, "The vast majority of the providers identified in the document are non-TeamHealth providers. The 'E&I' 'C&S,' and 'M&R' tabs of the spreadsheet contain column F, which details the financial impact by individual claim level for non-TeamHealth providers. The 'financial impact' column reflects [Plaintiffs'] reimbursement rates" [*Id*.]. They rely on the arguments they made with respect to Exhibit 11 [*Id*.].

Defendants respond that Plaintiffs fail to address how disclosure would be detrimental to their interests [*Id*.]. They repeat their arguments made with respect to Exhibits 7 to 11 [*id*. at 23–24], and they claim that "the data is from early 2016" [*Id*. at 24]. Defendants argue that Plaintiffs have not established their burden in showing Exhibit 12 should be designated as AEO [*Id*.].

The Court has reviewed Exhibit 12. While Plaintiffs assert that Exhibit 12 reflects reimbursement rates, they have not explained how disclosure thereof would be detrimental to their interests. For the same reasons as above, the Court finds Plaintiffs have not established that the AEO designation on Exhibit 12 is warranted.

### C. Documents Reflecting Plaintiffs' Internal Out-of-Network Reimbursement Rates

The parties submitted one exemplar in this category, Exhibit 13—UNITED TH TN 00081405 [*Id*. at 24]. Plaintiffs state, "Exhibit 13 is an email summary of [their] internal analysis related to [Defendants'] settlement offers during the parties' negotiations related to reimbursement

15

rates for individual out-of-network claim" [*Id*. at 24–25]. Plaintiffs assert that "[t]he email reflects not only [their] reimbursement rates, but details [their] analysis and strategy for such negotiations" [*Id*. at 25]. According to Plaintiffs, "To this day, [the parties] have ongoing disputes and negotiations related to out-of-network reimbursement rates. Allowing non-TeamHealth lawyers to have access to [Plaintiffs'] analysis and strategy regarding out-of-network reimbursement negotiations would greatly prejudice [Plaintiffs] in those negotiations" [*Id*.]. They argue that "there is no need for [Defendants'] internal employees to have access [to] how [Plaintiffs] approach[] negotiations or the tools and strategies [they] use[] to evaluate offers from providers like [Defendants] for purposes of this case" [*Id*.].

Defendants respond, "Exhibit 13 reflects [Plaintiffs'] analysis of offers and acceptances connected with the Information Dispute Resolution (IDR) process implemented by the State of Texas to address disputes over the proper rate of payment for out of network emergency medicine claims" [*Id*.]. They call the information "stale," stating that Exhibit 13 "addresses offers and acceptances from 2021" [*Id*.]. "In any event," Defendants argue, "[They] already know[] offers from [Plaintiffs] were accepted, because that is what the IDR arbitrator ordered [Plaintiffs] to pay" [*Id*.]. Defendants contend that "the document merely addresses [Defendants'] own conduct" [*Id*.].

The Court has reviewed Exhibit 13. The Court finds Plaintiffs have shown that Exhibit 13 is appropriately designated as AEO. Exhibit 13 reflects information that is non-public. Plaintiffs represent that without the AEO designation, disclosure would harm them because they are still in disputes with Defendants and Exhibit 13 details Plaintiffs' strategies for negotiations with them [*Id*. at 25]. They claim that disclosing this information would prejudice Plaintiffs in those negotiations [*See id*.]. Defendants contend this information is stale, but it is from 2021. Further, Defendants argue that Exhibit 13 contains information about their own conduct, but it also contains

Plaintiffs' strategies. The Court therefore finds Plaintiffs have met their burden to designate Exhibit 13 as AEO.

### D. Documents Disputed on the Basis of Redactions Only

The parties presented six exemplar documents for the Court's review [*Id*. at 26]. Plaintiffs produced these documents as "Confidential" but redacted the documents "where non-TeamHealth provider information is discussed" [*Id*.]. Defendants challenge the redactions [*Id*.].

### 1. Exhibit 14 - UNITED TH TN 00083256

Plaintiffs state that Exhibit 14 is an internal spreadsheet [*Id*. at 26]. According to Plaintiffs, "The non-privileged redactions contained in Exhibit 14 relate to [their] investigation into a single non-TeamHealth provider" [*Id*.]. They repeat the arguments they made with respect to Exhibits 1–6 [*Id*.].

Defendants argue, "The Protective Order authorizes the redaction of only one type of information: non-TeamHealth-related PHI" [*Id*. (citing Doc. 53 ¶ 6)]. They claim that Plaintiffs' redactions have "no basis under the Protective Order" [*Id*. at 26–27 (emphasis omitted)]. According to Defendants, "Relevance is not an appropriate basis to redact information from documents" [*Id*. at 27]. But regardless, they contend, "the redacted information in this spreadsheet is clearly relevant" [*Id*.]. Defendants state, "While the name of this 'single provider' is redacted from the spreadsheet itself as well as the metadata, it is not redacted in the body of the parent email" [*Id*.]. They assert that Plaintiffs redacted the entity's name, although it "publicly sued [the redacted entity] based on nearly identical allegations of systematic upcoding amounting to criminal RICO fraud" [*Id*.].

In addition, Defendants claim that "the parent email enclosing Exhibit 14 reveals that this spreadsheet was provided as part of the documents various [Plaintiffs] employees would review

during [their] 'Team Health Check in call'" [*Id*.]. Because this shows Plaintiffs' sophistication, opportunity to discovery fraud, and the level of scrutiny they applied to Defendants' coding and billing practices, Defendants claim that Exhibit 14 is relevant [*Id*. at 28]. They argue that Plaintiffs have not justified redacting this information [*Id*.]. Defendants note that Plaintiffs earlier justified the redactions to "SIU's investigations into non-TeamHealth providers," claiming important policy interests, including not "jeopardiz[ing] ongoing investigations" , but maintain that is not a conceivable risk because Plaintiffs have already sued this entity [*Id*.].

The Court has reviewed Exhibit 14. Plaintiffs do not point to any provision in the Protective Order that permits these redactions [*See* Doc. 53]. Further, as Defendants point out, some courts have noted that "[i]mplicit in the text of the rule is a right to inspect the entire document as parties are required to 'produce documents as they are kept in the usual course of business.'" *Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2011 WL 13078603, at *7 (S.D. Ohio Aug. 8, 2011) (finding the redactions based on relevance improper) (quoting Fed. R. Civ. P. 34(b)(2)(E)(ii)); *see also Carr v. Lake Cumberland Reg'l Hosp., LLC*, No. 6:15-CV-138, 2018 WL 11422437, at *2 (E.D. Ky. Feb. 2, 2018) ("Numerous cases support the proposition that unilateral redaction by a producing party on the basis of relevance is not permitted." (collecting cases)). Further, Plaintiffs do not sufficiently explain why the name of the entity should be redacted given that they have filed a lawsuit against that entity. Similar to the Court's findings on Exhibits 1 to 6, the Court finds Plaintiffs have not established that the redactions to Exhibit 14 are warranted.

### 2. Exhibit 15 - UNITED_TH_TN 00140811

Plaintiffs state that Exhibit 15 is an internal spreadsheet that "contains redactions related to [their] investigation into over 200 non-TeamHealth providers" [Doc. 183-1 p. 29]. They repeat the arguments they made in support of their redactions for Exhibit 14 [*Id*.].

18

Defendants restate their arguments made in opposition of the redactions to Exhibit 14 [*Id.* at 29–30]. They add that "[t]his spreadsheet is from March of 2016, over nine years ago" [*Id.* at 30].

The Court has reviewed Exhibit 15. For the same reasons as noted about Exhibit 14, the Court finds Plaintiffs have not established that the redactions to Exhibit 15 are warranted.

### 3. Exhibit 16 - UNITED_TH_TN 00141465

Plaintiffs state that "Exhibit 16 is an internal . . . email chain[,]" and that the redactions "relate to [their] investigation into a single non-TeamHealth provider" [*Id.*]. They repeat the arguments they made in support of their redactions for Exhibits 14 and 15 [*Id.*].

Defendants repeat the arguments made in opposition of the redactions to Exhibits 14 and 15 [*Id.* at 30–31]. They add that they are "entitled to know what other providers were included in [Plaintiffs'] 'Post Exclusion Removal Monitoring' and why, including why [Plaintiffs] characterized TeamHealth as a 'heavy hitter'" [*Id.* at 31]. Defendants contend that "[w]ithout access to the redacted data, [they have] no point of comparison to evaluate how [Plaintiffs] treated [Defendants] versus other providers" [*Id.*].

The Court has reviewed Exhibit 16. For the same reasons as noted about Exhibit 14, the Court finds Plaintiffs have not established that the redactions to Exhibit 16 are warranted.

### 4. Exhibit 17 - UNITED_TH_TN 00143604

Plaintiffs state that Exhibit 17 is an internal email chain [*Id.* at 31]. They made "a single redaction to cover the names of five non-TeamHealth providers [Plaintiffs were] monitoring or investigating" [*Id.*]. They repeat the arguments they made in support of their redactions for Exhibits 14 to 16 [*Id.*].

Defendants restate their arguments made in opposition of the redactions to Exhibits 14 to 16 [*Id.* at 31–32]. They add, "The subject line of this August 2016 meeting agenda is 'ER Follow Up,' which certainly suggests that the other five providers whose names are redacted from the agenda are also ER providers" [*Id.* at 32]. Further, they claim, "Even putting aside the safeguards provided by the Protective Order, [they] cannot fathom how disclosure of the identities of providers under investigation nearly nine years ago threatens 'ongoing investigations'" [*Id.*].

The Court has reviewed Exhibit 17. For the same reasons as noted about Exhibit 14, the Court finds Plaintiffs have not established that the redaction to Exhibit 17 is warranted.

### 5. Exhibit 18 - UNITED_TH_TN 00083272

Plaintiffs state, "Exhibit 18 is the same type of spreadsheet as Exhibit 14" [*Id.*]. They reassert their position made in support of their redactions to Exhibit 14 [*Id.*].

Defendants respond, "While [Plaintiffs are] correct that this spreadsheet is of the same type as Exhibit 14, this spreadsheet shows how inconsistently [Plaintiffs have] treated the redacted information" [*Id.*]. According to Defendants, Exhibit 18's file name contains the identity of the redacted entity [*Id.*]. They rely on the same arguments they made in opposing the redactions to Exhibit 14 [*Id.*].

The Court has reviewed Exhibit 18. For the same reasons as noted about Exhibit 14, the Court finds Plaintiffs have not established that the redactions to Exhibit 18 are warranted.

### 6. Exhibit 19 - UNITED_TH_TN 00141465

Plaintiffs state that "Exhibit 19 is the exact same email chain as Exhibit 16[,]" and they reassert the position they made in support of their redactions to Exhibit 16 [*Id.* at 32–33].

Defendants reassert their position made about unilaterally redacting documents [*Id.* at 33]. They add that the "differences or similarities between investigations into other providers certainly

could shed light on [Defendants'] underlying theory that [Plaintiffs'] investigation of [Defendants] was about retaliation and cost cutting, not fraud" [*Id.*]. Defendants argue that "[w]ithout access to the redacted data, [they have] no point of comparison to evaluate how [Plaintiffs] treated [Defendants] versus other providers" [*Id.*].

The Court has reviewed Exhibit 19. For the same reasons as noted about Exhibit 14, the Court finds Plaintiffs have not established the redactions to Exhibit 19 are warranted.

## III. CONCLUSION

For the reasons explained above, the Court finds Plaintiffs have not established that Exhibits 1 to 12 should be designated as AEO, but they have met their burden with respect to Exhibit 13. The Court further finds the redactions to Exhibits 14 to 19 are not warranted. Plaintiffs **SHALL** de-designate Exhibits 1 to 12 and remove the redactions from Exhibits 14 to 19 and reproduce them to Defendants within **fourteen days.**

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge