| | | |
|---|---|---|
| UNITEDHEALTHCARE SERVICES, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | 3:21-CV-00364-DCLC-DCP |
| v. | ) ) | |
| TEAM HEALTH HOLDINGS, INC., et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' ("TeamHealth") Appeal of the Magistrate Judge's Order Denying Defendants' Motion for Protective Order (the "Motion"). [Doc. 218]. Plaintiffs ("United") have responded. [Doc. 230]. This matter is now ripe for resolution. For the following reasons, the Court finds the magistrate judge properly resolved the Motion. Accordingly, the Court **AFFIRMS** the magistrate judge's order [Doc. 213] and **DENIES** TeamHealth's Motion [Doc. 218].

## I.     BACKGROUND

During discovery, United served a subpoena on Bettinger, Stimler & Associates, LLC ("BSA"), a consulting firm that provides services related to emergency medicine coding and billing. [Doc. 138, pg. 2]. TeamHealth moved for a protective order to prevent disclosure of three documents generated by BSA in 2014: two spreadsheets reflecting audit results and a memorandum describing findings and recommendations (the "BSA Documents"). [Docs. 137, 138].

On October 20, 2025, Magistrate Judge Poplin denied the motion, concluding that TeamHealth had not carried its burden of establishing that the BSA Documents were protected by

the attorney-client privilege. [Doc. 213]. The magistrate judge found that the declaration submitted by Linda Thacker, TeamHealth's Associate General Counsel, was largely conclusory and failed to explain with sufficient specificity how BSA's work facilitated the provision of legal advice. The order further determined that the record suggested BSA had been engaged for compliance and quality-assurance purposes—functions the magistrate judge characterized as business rather than legal in nature. *Id*. at 6–7.

TeamHealth timely appealed, arguing that the magistrate judge erred in concluding that the BSA Documents were not protected by the attorney-client privilege. [Doc. 218]. According to TeamHealth, BSA was retained by in-house counsel to assist her in evaluating potential legal risks associated with CPT coding practices and to enable her to provide legal advice to the company regarding those risks. TeamHealth further contends that the magistrate judge improperly discounted Ms. Thacker's declaration and failed to recognize that consultants retained by counsel may fall within the scope of the privilege when their work is necessary to facilitate the rendering of legal advice. Although maintaining that the original declaration was sufficient, TeamHealth submitted a supplemental declaration from Ms. Thacker providing additional detail regarding the legal advice sought and the manner in which BSA's work informed that advice. [Doc. 220].

United responds that the magistrate judge correctly concluded that TeamHealth failed to meet its burden of establishing privilege. [Doc. 230]. In United's view, the record shows that BSA was engaged to conduct a routine coding audit for compliance and quality assurance purposes—activities that are fundamentally business in nature. It noted that the audit was "actually directed by its Chief Compliance Officer, Paul Gleis, and not Ms. Thacker, and that none of the evidence relied upon by TeamHealth corroborated its contention that BSA's audit was intended to aid Ms. Thacker's ability to provide legal advice to her client." [Doc. 230, pg. 3]. United further

argues that TeamHealth's supplemental declaration should not be considered because it was not presented to the magistrate judge when the motion was decided. [Doc. 230, pg. 4].

Accordingly, the Court must determine two related questions. First, whether the magistrate judge clearly erred in concluding that TeamHealth failed to establish that BSA's work was undertaken for the purpose of facilitating legal advice rather than ordinary business compliance. Second, the Court must determine whether it may consider the supplemental declaration submitted on appeal in evaluating TeamHealth's privilege claim.

## II.   STANDARD OF REVIEW

Because the magistrate judge's order resolves a discovery dispute, it is a nondispositive matter subject to review under Federal Rule of Civil Procedure 72(a). Under that rule, a district judge must modify or set aside any portion of the order that is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). This standard is highly deferential. "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quotation and citation omitted). A finding is clearly erroneous when, after reviewing the entire record, the Court is left with the "definite and firm conviction that a mistake has been committed." *Heights Cmty. Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). "[A]n order is contrary to the law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bisig*, 940 F.3d at 219 (internal quotation marks and citation omitted).

## III.   ANALYSIS

### A.   The Supplemental Declaration

As an initial matter, the Court must determine whether it should consider the supplemental declaration submitted with TeamHealth's appeal. [Doc. 220]. When reviewing a magistrate

3

judge's nondispositive order under Rule 72(a), a district court generally evaluates the ruling based on the record that was before the magistrate judge at the time the decision was made. *Moore v. Prevo*, 379 F.App'x 425, 428 n.6 (6th Cir. 2010); *see also The Glidden Co. v. Kinsella*, 386 F.App'x 535, 544 & n.2 (6th Cir. 2010) (declining to review an issue not presented to the magistrate judge). Although the Magistrate Judge Act, 28 U.S.C. § 636, permits de novo review when timely objections are filed, courts have recognized that, "absent compelling reasons" it does not allow parties to raise new arguments or present new evidence before the district court that were not presented to the magistrate judge. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Ms. Thacker's Supplemental Declaration includes additional detail regarding the privilege claim. It states that her client sought legal advice concerning legal risks arising from the application of CPT coding guidelines to patient encounters and that the advice involved interpreting and applying the American Medical Association's CPT guidelines governing Medicare, Medicaid, and privately insured services. [Doc. 219, pg. 9; Doc. 220 ¶ 4]. The declaration further states that TeamHealth's Chief Compliance Officer, Mr. Gleis, sought Ms. Thacker's legal advice on those issues and that, to assist in providing that advice, she retained BSA to conduct an audit, reviewed BSA's findings with the client, and used those findings in formulating legal advice. [Doc. 220, ¶¶ 4–6].

United contends that the Court should decline to consider the supplemental declaration because it was not presented to the magistrate judge. [Doc. 230, pgs. 5–8]. United also contends that even considering the additional evidence, TeamHealth fails to explain "*how* or *why* Ms. Thacker needed BSA to conduct a blind audit of its E/M coding, or how that audit was designed to facilitate her provision of legal advice to Mr. Gleis." *Id.* at 11 (emphasis in original).

Although the Court has discretion to consider supplemental declarations not presented to the magistrate judge, it declines to do so here. TeamHealth could have submitted this information when the privilege issue was litigated before the magistrate judge. There is no suggestion that the information concerning Ms. Thacker's purpose in seeking the materials in 2014 was unavailable at that time. Indeed, TeamHealth continues to argue that the magistrate judge erred even based on Ms. Thacker's original declaration. Under these circumstances, TeamHealth cannot claim unfair prejudice from the Court's decision to review the magistrate judge's order based solely on the record that was before her.

Allowing parties to introduce new evidence for the first time on appeal through a supplemental declaration would also undermine the magistrate judge's role in resolving discovery disputes in the first instance. Although a district court retains discretion to consider new evidence, under the appropriate circumstances, courts generally decline to do so absent a compelling reason why the evidence could not have been presented earlier. *Murr*, 200 F.3d at 902 n.1.

TeamHealth has not shown a compelling reason here. The supplemental declaration merely elaborates on the same privilege theory advanced before the magistrate judge and could have been submitted in support of the original motion. Accordingly, the Court declines to consider the supplemental declaration and will evaluate the magistrate judge's ruling based on the record that was before her when the motion for protective order was decided. *AES–Apex Employer Services, Inc. v. Rotondo*, 924 F.3d 857, 867 (6th Cir. 2019).

Because the magistrate judge's ruling concerns a discovery matter, the Court's review is limited to determining whether the decision was "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Under that deferential standard, the Court does not reconsider the issue as if it were

5

presented in the first instance but instead determines whether the magistrate judge's decision was reasonable based on the record before her.

**B.       Attorney-Client Privilege**

A party asserting the attorney-client privilege to bar discovery bears the burden of establishing it is applicable. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). The attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976) (holding, inter alia, that the mere transfer of a document to counsel does not render the document subject to the attorney-client privilege). The attorney-client privilege protects confidential communications made for the purpose of obtaining legal advice. *Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998). The privilege may extend to communications involving third-party consultants where the consultant's involvement is necessary to facilitate counsel's provision of legal advice. *See Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh*, No. 93–3084, 1994 WL 58999, at *5 (6th Cir. Feb. 25, 1994) (citing *United States v. Kovel*, 296 F.2d 918, 921–22 (2nd Cir.1961)); *Ciccio v. SmileDirectClub, LLC*, No. 3:19-CV-0845, 2022 WL 2182301, at *3 (M.D. Tenn. June 16, 2022). "Since the attorney-client privilege may serve as a mechanism to frustrate the investigative or fact-finding process, it creates an inherent tension with society's need for full and complete disclosure of all relevant evidence during implementation of the judicial process." *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 451 (6th Cir. 1983). It is therefore construed narrowly. *Id.*

The magistrate judge concluded that the BSA Documents were generated in furtherance of a business purpose and therefore fell outside the scope of the privilege. In reaching that conclusion,

6

the order emphasized that communications are privileged only if their primary purpose is legal rather than business advice.  [Doc. 213, at 6–7].

Here, Ms. Thacker's Original Declaration states that she served as General Counsel with responsibility for advising on compliance with federal and state laws, including laws governing coding for emergency medical services.  [Doc. 138-2, ¶ 2].  She explains that she retained BSA under the auspices of the attorney-client privilege to review medical claims and associated records in order to provide an independent assessment of coding practices, which she would then use to inform legal advice provided to her client.  *Id*. ¶¶ 3–4.

The Sixth Circuit has explained that when a communication contains both legal and non-legal content, courts must determine whether "the predominant purpose of the communication is to render or solicit legal advice."  *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (quoting *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)).  In making that determination, courts evaluate the communication in context—examining the purpose of the exchange, the nature of the advice sought or provided, and the relationship between guidance that requires legal expertise and guidance that could just as readily be provided by a non-lawyer.  *Id.* This inquiry is necessarily dynamic and focuses on whether the legal advice predominates over any business aspects of the communication.  *Id.*

Here, the magistrate judge concluded that TeamHealth failed to meet its burden of demonstrating that BSA's work was undertaken for the purpose of facilitating legal advice.  In reaching that conclusion, the magistrate judge relied primarily on the declaration of TeamHealth's in-house counsel, which stated in general terms that BSA had been retained to assist her in evaluating compliance risks associated with CPT coding practices.  [Doc. 213, pg. 6].  The magistrate judge found that this declaration was conclusory and did not adequately explain the

nature of the legal advice sought or how BSA's work enabled counsel to provide that advice. *Id.* The magistrate judge further noted that the record suggested BSA was engaged to perform a coding audit for compliance and quality assurance purposes—activities commonly associated with routine business operations. *Id.* at 6–7.

TeamHealth argues that the magistrate judge failed to consider *In re FirstEnergy Corp.*, 154 F.4th 431 (6th Cir. 2025), which addressed the scope of the attorney-client privilege in the context of internal corporate investigations. In *FirstEnergy*, the Department of Justice charged former Ohio House Speaker Larry Householder with bribery and issued subpoenas to FirstEnergy. *Id.* at 435. In response, the company and its board retained outside counsel to conduct internal investigations and advise the company regarding its potential criminal and civil liability. Shareholders later filed a securities class action and sought discovery of the investigative materials. The district court ordered their production, concluding that the investigations were conducted primarily for business purposes rather than legal advice. *Id.* at 438.

The Sixth Circuit reversed. Emphasizing the context in which the investigations were undertaken, the Sixth Circuit noted that they followed a criminal complaint implicating the company and the issuance of subpoenas. Facing that oncoming legal cloud, the company and the board needed the investigations to obtain legal advice and in anticipation of litigation. *Id*. at 437. The Sixth Circuit further explained that the fact that the company later relied on the results of the investigations in making business decisions did not defeat the privilege. *Id.* at 438 ("In the context of the legal threats that FirstEnergy faced—high-stakes criminal and civil allegations—it will be the rare company that will not also have business purposes for seeking essential legal advice.").

*FirstEnergy* does not alter the analysis here. Unlike the investigations in *FirstEnergy*, which were commissioned after the company faced subpoenas and a criminal complaint, the BSA

materials were generated in 2014 as part of a compliance and billing review before any litigation or governmental investigation was underway. *Id*. at 437. The documents at issue were not generated as part of an investigation undertaken by outside counsel in response to criminal charges, subpoenas, or comparable legal exposure. And the record does not reflect that counsel was retained to conduct an investigation for the purpose of assessing potential legal liability. Instead, the materials reflect work performed in connection with compliance and review of coding practices. In these circumstances, the context that drove the privilege analysis in *FirstEnergy* is not present. *FirstEnergy* does not depart from the Sixth Circuit's "predominant purpose" framework. *Alomari*, 626 F. App'x at 570. Rather, it illustrates *how* that test applies when a company commissions an investigation in response to imminent legal exposure.

Given the evidence before the magistrate judge, the Court cannot conclude that her determination was clearly erroneous. TeamHealth offered little to show that BSA was acting as an agent necessary to facilitate legal advice rather than as a consultant performing a compliance audit. Without such evidence, the magistrate judge reasonably concluded that TeamHealth had not satisfied its burden of establishing the privilege protected those documents from disclosure. Accordingly, the magistrate judge's conclusion that TeamHealth failed to demonstrate the applicability of the attorney-client privilege was not clearly erroneous or contrary to law.

III. CONCLUSION

For these reasons, the Court concludes that the magistrate judge did not clearly err in determining that TeamHealth failed to establish that the BSA Documents were protected by the attorney-client privilege. The record supports the magistrate judge's conclusion that the materials were generated in connection with compliance review rather than for the purpose of obtaining legal

9

advice. The magistrate judge's order [Doc. 213] is **AFFIRMED** and TeamHealth's Motion [Doc. 218] is **DENIED**.

      **SO ORDERED:**

s/ Clifton L. Corker  
United States District Judge

Case 3:21-cv-00364-DCLC-DCP   Document 434   Filed 04/06/26   Page 10 of 10 PageID #: 22703