| | |
|---|---|
| UNITEDHEALTHCARE SERVICES, INC., <br> UNITED HEALTHCARE INSURANCE CO., <br> and UMR, INC., <br><br>     Plaintiffs, <br><br> v. <br><br> TEAM HEALTH HOLDINGS, INC., <br> AMERITEAM SERVICES, LLC, and <br> HCFS HEALTH CARE FINANCIAL <br> SERVICES, INC., <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )      No. 3:21-CV-364-DCLC-DCP <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

On April 16, 2026, the parties appeared before the Court pursuant to the discovery dispute procedure set forth in the Scheduling Order [Doc. 43]. Attorneys Kendell Vonckx, Marcus Guith, and Maxwell Loos appeared on behalf of Plaintiffs. Attorneys Caldwell Collins, Gary Shockley, and Robert Meyer appeared on behalf of Defendants. The parties presented two primary discovery disputes: (1) objections to Rule 30(b)(6) topics, and (2) Defendants' alleged failure to preserve their Armor software.

## I. RULE 30(b)(6) TOPICS

The deposition of a corporate representative is governed by Rule 30(b)(6), which provides in relevant part:

> The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on

which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(5); *Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505, 2021 WL 1685955, at *4 (E.D. Tenn. Feb. 3, 2021). This rule "imposes burdens on both the discovering party and the designating party." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012).

The party seeking a Rule 30(b)(6) deposition "must describe the matters to be explored in the deposition with 'reasonable particularity' sufficient to enable the responding corporation or business entity to produce a representative witness who can testify to the entity's knowledge on the topics so identified." *Alvey v. State Farm Fire & Cas. Co.*, No. 517CV00023, 2018 WL 826379, at *3 (W.D. Ky. Feb. 9, 2018) (citation omitted). "The test for reasonable particularity is whether the request places the party upon 'reasonable notice of what is called for and what is not.'" *Id*. at *7 (quoting *St. Paul Reinsurance Co. v. Comm. Fin. Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000)). With respect to the responding organization, "it is obligated to produce a witness or witnesses knowledgeable about the subjects described in the notice and to prepare the witness or witnesses to testify not simply to their own knowledge, but the knowledge of the corporation." *Schnatter v. 247 Grp., LLC*, 343 F.R.D. 325, 331 (W.D. Ky. 2022) (citation omitted).

"[The] [a]pplicable 'rules of discovery require a court to consider whether a Rule 30(b)(6) deposition would be cumulative, duplicative, unreasonably burdensome, and disproportional to the needs of the case.'" *United States ex rel. Griffis v. EOD Tech., Inc.*, No. 3:10-CV-204, 2024 WL 4921518, at *7 (E.D. Tenn. May 10, 2024) (quoting *Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-

CV-505, 2020 WL 8254453, at *5 (E.D. Tenn. Nov. 23, 2020)), *objections overruled*, No. 3:10-CV-204, 2024 WL 4920596 (E.D. Tenn. July 8, 2024).

The parties generally claim that each other's topics seek irrelevant information that is not proportional the needs of the case.

### A.      Defendants' Objections

Defendants originally objected to Topic Nos. 4, 11, 12, 18, 22, 27, 28, 40, 41, 44, and 45. Later, on April 15, 2026, Defendants reported to Chambers via email that they had agreed to respond to Topic Nos. 27, 28, and 44. Further, during the hearing, Plaintiffs withdrew Topic No. 41. That leaves Topic Nos. 4, 11, 12, 18, 22, 40, and 45 in dispute.

*Topic No. 4*. It states: "TeamHealth's internal reporting or analyses describing, evaluating, or modeling the impact that changes in coding related to ER Services has or had on TeamHealth's revenue or profits."

Plaintiffs argued that this topic seeks relevant information that is proportional to the needs of this case. Defendants responded that this topic seeks cumulative discovery. They submitted that they have produced documents, Plaintiffs took many fact depositions, and Defendants produced a witness who testified on a subset of the topic. In addition, they stated that they responded to Requests for Admission ("RFAs") on similar topics.

After hearing from the parties, the Court finds this topic seeks relevant information that is proportional to the needs of the case. Generally, "producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Griffis*, 2024 WL 4921518, at *7 (quoting *Occidential Chem. Corp. v. 21st Century Fox Am., Inc.*, No. CV1811273, 2022 WL 2671198, at *6 (D.N.J. July 11, 2022)) (collecting cases). Defendants claimed that Plaintiffs took many fact witnesses' deposition, but "ordinarily, 'prior deposition

3

testimony from individual fact witnesses does not relieve a corporation []from designating a corporate spokesperson in response to a Rule 30(b)(6) notice of deposition.'" *Edwards v. Scripps Media*, Inc., 331 F.R.D. 116, 121 (E.D. Mich. 2019) (quoting *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, No. 2:15-CV-3023, 2018 WL 3358641, at *12 (S.D. Ohio July 10, 2018)). And Defendants acknowledged that they did not provide any formal deposition designations in response to this topic. The Court therefore finds Defendants' objections not well taken.

*Topic No. 11*. It states, "TeamHealth's understanding of coding standards for CPT Codes 99282-99285, 99291, and 99292 after January 1, 2023, including but not limited to, the CPT Evaluation and Management Code and Guideline Changes effective January 1, 2023, CPT Manual, CMS guidelines, and the Marshfield Clinic Scoring Tool."

The parties disputed whether this topic seeks relevant information that is proportional to the needs of the case. Plaintiffs stated that Defendants agreed to produce a witness on Topic No. 10 and that Topic No. 11 is a mirror image, except the time frame. Plaintiffs explained that Topic No. 10 addressed the time period before December 31, 2022, and Topic No. 11 seeks information after January 1, 2023.

Defendants responded that the claims at issue are from 2016 to 2023 and noted that there are only a few 2023 claims that are in dispute. Defendants further argued that Plaintiffs took discovery on this issue, including fact depositions and document production. In addition, Defendants submitted that they designated an expert on this issue, Rebecca Parker ("Dr. Parker"), and that Plaintiffs could have asked her about this topic during her deposition.

Plaintiffs represented that Dr. Parker testified that she did not know the answers to many of their questions.

4

After hearing from the parties, the Court finds this topic seeks relevant information that is proportional to the needs of this case. Defendants acknowledged that some of the disputed claims occurred in 2023. Further, while Defendants argued that they produced a witness on this topic, Plaintiffs represented that Dr. Parker testified she did not know many of the answers. And document discovery is not necessarily cumulative of a Rule 30(b)(6) witness. The Court finds Defendants' objections not well taken.

*Topic No. 12*. It states, "TeamHealth's prior use of the Marshfield Clinic Scoring Tool, and any subsequent decision to stop using the Marshfield Clinic Scoring Tool to code E/M claims for ER Services."

The parties disputed whether this topic seeks relevant information that is proportional to the needs of the case. Plaintiffs stated that the parties disagree on whether the Marshfield Clinic Scoring Tool ("Marshfield") was an industry standard. They claimed that Defendants used Marshfield for government claims but not commercial claims. This, Plaintiffs argued, undermined Defendants' argument that Marshfield is not the standard.

Defendants responded that there is no question that they used their Desktop Coding Grid ("Grid") to code the claims at issue. They submitted that they produced all their coding policies and procedures, and they denied that Marshfield is the industry standard. Instead, Defendants argued that the American Medical Association, Current Procedural Terminology ("CPT"), and the 1996 and 1997 Center for Medicare & Medicaid Services guides are the standard. How those are applied, Defendants represented, is different across the board. Defendants asserted that Plaintiffs know that they did not use Marshfield and that this topic is outside the temporal scope given that the disputed claims are from 2016 to 2023.

5

Plaintiffs claimed that the fact witnesses' testimony have varied. For instance, Plaintiffs stated that Dr. Lampert testified that Defendants used Marshfield for government claims and some other matrix for commercial claims, yet he could not explain that matrix. Plaintiffs further submitted that Paula Dearoff testified that Defendants did not use Marshfield. Later, Plaintiffs claimed that the Vice President of Coding testified that she does not remember if Defendants used Marshfield.

Defendants acknowledged that the testimony was different but explained it was due to the passage of time.

After hearing from the parties, the Court finds that this topic seeks relevant information that is proportional to the needs with certain limits. Plaintiffs may inquire about whether Defendants used Marshfield, and if they did use it, for what type of claims (e.g., government or commercial). To the extent Defendants testify that they used Marshfield, Plaintiffs may ask why they stopped using it. The Court therefore sustains in part Defendants' objection.

*Topic No. 18*. "TeamHealth's use of Bettinger, Stimler, and Associates (BSA Healthcare) as a consultant for TeamHealth's coding and billing of claims for ER Services, including but not limited to, the coding approach offered by BSA Healthcare, any modeling or chart studies of the coding approach offered by BSA Healthcare, BSA Healthcare's assistance in the development of the Desktop Coding Grid and analyses of how TeamHealth's use of the Desktop Coding Grid to guide assignment of CPT codes for ER Services impacts the frequency with which higher-level CPT codes are assigned to those services and use of the Desktop Coding Grid has on TeamHealth's revenue and profits related to emergency department services."

Plaintiffs acknowledged that this topic is a "mouthful." But they claimed that it seeks information about Defendants' retention of BSA to develop the Grid. They noted that United States

6

District Judge Clifton Corker recently compelled BSA to produce documents. Plaintiffs stated that those documents were produced on April 13, 2016, and this is Plaintiffs' first opportunity to ask witnesses about them.

Defendants responded that this topic actually encompasses six different topics rendering it over burdensome. They argued that they retained BSA before the disputed claims at issue in this case. They also retained BSA to perform an audit, which was also before the disputed claims at issue in this case. Defendants noted that this topic is duplicative of Topic Nos. 10, 13, and 14. Defendants submitted that Plaintiffs have also sought a deposition from BSA.

Plaintiffs stated that if this topic was limited to Defendants' use of BSA from 2009 to 2014 (through the second audit), that could limit the temporal issues. Plaintiffs noted that they need testimony on BSA's coding that turned into the Grid and any modeling or chart studies performed during that process. Plaintiffs represented that this constitutes the core of what Topic. No. 18 seeks.

Defendants maintained their objection, noting that this timeframe is before the disputed claims at issue and that it presents a burden in finding a witness given the passage of time.

After hearing from the parties, the Court finds this topic seeks relevant information that is proportional to the needs of this case with certain limits. The Court will limit this topic to Defendants' use of BSA from 2009 to 2014 (through the second audit), and Plaintiffs may only inquire about BSA's coding that led to the Grid and any modeling or chart studies during that process. While Defendants argue that BSA was involved before the claims at issue, BSA was involved in assisting with the creation of the Grid—the system that Defendants used to code the claims in dispute. The Court notes that Defendants also expressed concern finding an individual who could testify about this topic. The Rule 30(b)(6) "designee has a duty to reasonably obtain information from corporate documents, current or prior corporate employees, or any other sources

7

reasonably available to the corporation." *Griffis*, 2024 WL 4921518, at *3 (quoting *Schall v. Suzuki Motor of Am., Inc.*, No. 4:14CV-00074, 2017 WL 4050319, at *5 (W.D. Ky. Sept. 13, 2017)). As this Court has previously explained, "If the entity receiving the deposition notice does not possess knowledge of the matters listed in the deposition notice, 'then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to matters known or reasonably available to the organization." *Id.* (quoting *Bigsby v. Barclays Cap. Real Est., Inc.*, 329 F.R.D. 78, 81 (S.D. N.Y. 2019)). At this time, Defendants' concerns are speculative. *See Ellis v. Corizon, Inc.*, No. 1:15-CV-00304, 2018 WL 1865158, at *5 (D. Idaho Apr. 18, 2018) ("While [the defendant] may plead lack of institutional memory or knowledge as to a specific topic or topics, . . . it may do so only after it reviews 'all matters known or reasonably available to it.'") (quoting *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D. N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D. N.C. 1996)).

*Topic Nos. 22 and 40*. The former topic states, "TeamHealth's decision not to make changes to the Desktop Coding Grid as a result of LogixHealth's review of the Desktop Coding Grid[,]" and the latter topic states, "TeamHealth's efforts to evaluate the Desktop Coding Grid from a compliance perspective, including but not limited to, any analysis performed by LogixHealth, Charles River & Associates, or Edelberg & Associates."

During the hearing, Plaintiffs agreed to remove Edelberg & Associates from Topic No. 40. The parties acknowledged, however, that this topic relates to Plaintiffs' Fifth Motion to Compel [Doc. 350], which became ripe on April 15, 2026. Defendants asserted the attorney-client privilege and work product in response to these topics. The Court therefore declines to adjudicate these disputes in the context of an informal discovery dispute hearing. The parties may proceed with these topics at the deposition, but Defendants may note their objections on the record. *See* Fed. R. Civ. P. 30(c)(2).

8

*Topic No. 45*. It states, "TeamHealth's policies, practices, and procedures related to the fact that once TeamHealth acquires a medical group and starts billing under that medical group's Tax Identification Number ("TIN"), only TeamHealth uses that TIN to bill (as opposed to some other unaffiliated medical group)."

During the hearing, Defendants stated that they produced a spreadsheet that contains the information that Plaintiffs seek. It appeared to the Court that there was confusion about the information therein. The parties agreed to meet and confer about the spreadsheet in lieu of the Rule 30(b)(6) topic. Given that, the Court sustains Defendants' objections to this topic.

**B.      Defendants' Rule 30(b)(6) Notice**

The parties disputed Topic Nos. 4, 13, 14, 21, 25, 26, and 30.

*Topic No. 4*. It states, "Policies, procedures, guidance, criteria, analytics, or other authorities used by United in conjunction with payment or reimbursement for emergency medicine care and related services."

Defendants stated that they agreed to narrow this topic to emergency services only. They asserted that it seeks relevant information about Plaintiffs' damages and their unjust enrichment claim. According to Defendants, Plaintiffs must establish the difference between what they paid and what they should have paid. This topic, Defendants noted, also seeks information about the out-of-network methodology and how Plaintiffs applied it.

Plaintiffs responded that this topic is broad. They explained that out-of-network claims are frequently negotiated per claim. Further, they stated that this is not a case about reimbursements, but instead, how Defendants coded claims. Plaintiffs asserted that their expert, Dr. Kessler, provided their damages methodology. In doing so, he reviewed the billed amount and the amount

9

ultimately paid on approximately 528 claims on a line-by-line basis. Plaintiffs argued that this topic seeks information on over 400,000 claims and is therefore burdensome.

Defendants claimed that they dispute the underlying computation and that the main goal was to understand what has been produced with respect to the out-of-network claims so that they can determine how pricing and rates were considered before paying the claim.

After hearing from the parties, the Court finds this topic seeks irrelevant information that is not proportional to the needs of the case. The information Plaintiffs used to determine the amount that should be paid on a claim is not relevant to the issues in this case. But even if it was relevant, this topic is overly broad. Defendants claimed that they seek the methodology of how Plaintiffs determined what to pay. But Plaintiffs represented that each claim is negotiated individually. Preparing a Rule 30(b)(6) witness on over 400,000 claims is unduly burdensome. Further, as Plaintiffs explained at the hearing, Dr. Kessler performed the calculations, so Defendants have Plaintiffs' damages methodology. The Court sustains Plaintiffs' objections to this topic.

*Topic No. 13*. It states, "Each separate Plaintiff's status as an insurer, ASO, fiduciary, or assignee for each claim set out in United's Original [Initial] Sampling Frame and Revised Sampling Frame, as those terms are used in the reports of United's expert Dr. Bo Martin."

Defendants argued that this topic is relevant to Plaintiffs' standing. They stated that they have not agreed to a sampling protocol for damages or liability and each Plaintiff must establish standing. The data that Plaintiffs produced, Defendants asserted, does not establish which Plaintiffs are assignees or ERISA fiduciaries.

Plaintiffs responded that this topic seeks information that is disproportional to the needs of the case. They noted that it seeks information on over 400,000 claims. They argued that Defendants possessed sufficient information to file dispositive motions on this issue.

10

Defendants countered that Plaintiffs cannot claim any burden when they decided to file a lawsuit with over 400,000 claims. They reiterated that each Plaintiff must prove damages.

After hearing from the parties, the Court finds that this topic is overly broad because it seeks information on over 400,000 claims. The Court therefore sustains Plaintiffs' objection.

*Topic No. 14*. It states, "The existence, content, timing, terms, and scope of all assignments made by any self-insured or ASO plan to any Plaintiff, or any other United affiliate, purporting to authorize suit and recovery of damages on behalf of such self-insured plan or its members, including all assignments in any chain purporting to authorize any such suit by any Plaintiff for any claim at issue."

Defendants stated that this topic is relevant to Plaintiffs' standing. In order to establish standing, Defendants submitted that Plaintiffs rely on ASO agreements. But Defendants argued that some of the ASO agreements are not executed, and in others, they do not know the identity of the signor and whether the signor had authority to assign the claims.

Plaintiffs responded that this topic is broad because it relates to all the claims at issue—over 400,000. They submitted that they cannot prepare an individual on thousands of plan documents and assignments that are intertwined with one another. Further, Plaintiffs stated that the documents speak for themselves. Plaintiffs noted that if Defendants wanted to know the identity of who signed an ASO, that could be a narrower topic, which is not included in this topic.

After hearing from the parties, the Court finds that this topic is overly broad. As written, this seeks information about "the existence, content, timing, terms, and scope of all assignments[,]" which include thousands of documents. While ordinarily document production is not a substitute for a Rule 30(b)(6) witness, here, Defendants' topic asks information that can be gleaned from the document itself. During the hearing, Defendants stated that they also wanted to ask about the

11

signatory's authority to assign the claims, but that inquiry is not within the scope of the topic as written. The Court therefore sustains Plaintiffs' objections.

*Topic No. 21*. It seeks, "The organization of United and the relationship of each named Plaintiff to one another and the claims at issue in this case."

Defendants stated that this topic seeks information about Plaintiffs' organization and how they relate to one another. Because there are three Plaintiffs, Defendants want to ask whether harm to one flows to the others. Defendants acknowledged that they do not need a corporate history, and they would limit this topic to only the named Plaintiffs.

Plaintiffs responded that they have produced information about their corporate structure, and there is nothing else a witness could add. They stated that preparing a witness on their relationship and the claims would merely be asking the witness to look at documents.

Defendants submitted that the goal of this topic is to review the damages and connect each Plaintiff to their claimed damages.

After hearing from the parties, the Court finds that this topic seeks relevant information that is proportional to the needs of the case with some limitations. Defendants have agreed that their questions will be limited to the named Plaintiffs. Defendants may therefore ask about the relationship between each named Plaintiff. But the Court finds the topic overbroad to the extent it seeks information about all the claims at issue in this case as there are over 400,000. The Court therefore sustains in part Plaintiffs' objection.

*Topic No. 25*. It asks, "How United distinguished between or identified ASO claims and fully-insured claims at issue in this case, including those in the Initial Sampling Frame and Initial Sample and the Revised Sampling Frame and Revised Sample."

Defendants stated that the goal of this topic is to understand Plaintiffs' proof about how they distinguished between ASO claims and fully-insured claims. They argued that they are not obligated to accept Plaintiffs' word that some claims are subject to ASO agreements while others were fully insured. For example, Defendants represented that one claim was designated as fully insured, but it was later transferred under an ASO. Defendants submitted that the only evidence of the transfer was an unexecuted ASO. Defendants asserted that Plaintiffs must establish standing for their damages, and they questioned the accuracy of Plaintiffs' underlying data.

Plaintiffs claimed that this topic would require reconstruction of complex systems. They challenged the relevancy of this request and its proportionality.

After hearing from the parties, the Court finds this topic is overly broad. As written, it seeks information on how Plaintiffs determined each claim, over 400,000, was either fully insured or subject to an ASO. The Court therefore sustains Plaintiffs' objection.

*Topic No. 26*. It seeks, "All steps taken by United to identify or revise any at-issue claims in this case, including but not limited to the claims described in the Ankura Sampling Memo of October 10, 2023; the Ankura Sampling Memo of November 2, 2023; the Initial Sampling Frame (as defined in the report of Dr. Bo Martin); the Revised Sampling Frame (as defined in the report of Dr. Bo Martin); the Initial and Revised Sample; and the timing and rationale for all changes to any list of at-issue claims."

Defendants stated that there have been several reiterations of the sampling frame. Given that, they question its reliability. In addition, Defendants noted that there are several claims that are in the sample that should not be included (e.g., in-network claims, secondary payor claims, pre-payment review claims, settled claims, and voided claims).

13

Plaintiffs responded that experts, at the direction of counsel, performed the process of narrowing the claims. As such, Plaintiffs submitted, any decision to include or exclude certain claims is protected. In addition, Plaintiffs stated that they produced the raw data.

The Court finds this topic is not appropriate for a Rule 30(b)(6) witness. Plaintiffs represented that the sampling was conducted by the experts at the direction of counsel, making Plaintiffs "efforts to designate a knowledgeable person unworkable." *Florida v. United States*, 342 F.R.D. 153, 157 (N.D. Fla. 2022) (citation omitted) (granting a protective order prohibiting a Rule 30(b)(6) topic, in part, because it "would likely require expert testimony"). Further, Defendants possess the raw claims data.

*Topic No. 30.* It seeks, "The presence of settled, par, pre-payment reviewed, post-payment reviewed, or independent dispute resolution ("IDR") claims in the Initial Sampling Frame, Initial Sample, Revised Sampling Frame, and Revised Sample, including but not limited to those described in the Boedeker report at pages 42–48 and spreadsheets cited in the accompanying footnotes."

Defendant stated that this topic seeks information about the integrity of Plaintiffs' data because there are many claims therein that should not be included. They represented that Plaintiffs' expert claimed that errors in the data would not change his conclusions.

Plaintiffs responded that this topic is similar to Topic No. 26. They contended that this is an expert issue but that it also raises concerns about the work product doctrine.

Defendants stated that the experts testified that they did not create the sample. Defendant argued that they need to know if there are claims in the data that should not be included.

For the reasons the Court sustained Plaintiffs' objections to Topic No. 26, the Court likewise sustains Plaintiffs' objections to Topic No. 30.

## II. ARMOR PROGRAM

By way of background, on February 19, 2026, the parties presented to the Court via telephone to address a discovery dispute relating to Plaintiffs' request to inspect Defendants' software, Armor, including versions of Armor as it existed before and after the changes to relevant CPT codes standards that took effect in 2023. During the February 19 hearing, Defendants represented that they may not possess the version that Plaintiffs seek to inspect. The Court instructed Defendants to determine whether they maintained the relevant version and report back to the Court. Defendants later reported that they no longer have the relevant version of Armor. In light of this representation, Plaintiffs agree that they cannot inspect Armor as originally requested.

Plaintiffs now make two requests. First, they request that the Court order Defendants to provide a formal declaration from an appropriate witness confirming that they have not archived or preserved any prior version of Armor beyond the version currently in use. Second, Plaintiffs ask that Defendants identify a corporate designee to address their alleged failure to preserve the prior operating versions of Armor relevant to this dispute, and to identify the steps taken to confirm that there is no version of Armor, except for the current, working version, that could be made available for inspection at this time. At the hearing, Plaintiffs stated that the parties agreed to a 14-hour limit for corporate testimony but asked that this topic, should it be allowed, not be included in the 14 hours.

Defendants responded that Armor has been subject to routine code releases and real-time changes and that preserving older versions is not feasible. They claimed that they have produced documents about Armor, Plaintiffs have questioned witnesses about it, and Topic Nos. 23 and 24 in Plaintiffs' Rule 30(b)(6) notice cover what they now seek. To the extent the Court allows this topic, Defendants objected to Plaintiffs' request that it not be included in the 14-hour limit.

15

The Court declines to order Defendants to submit a formal declaration as Plaintiffs have not provided any authority for that request. But to the extent Defendants have not, they **SHALL** supplement their response to the request for production as appropriate under Rule 26(e) within **ten days**.

With respect to Plaintiffs' request to include this topic in the Rule 30(b)(6) notice, "depositions about retention polices and procedures . . . are permitted when there is a potential issue of spoilation." *Edwards*, 331 F.R.D. at 125 (citation omitted). Here, Defendants acknowledge that they did not retain the prior version of Armor and explain why they did not, i.e., "routine code releases and real-time changes as part of continuous evaluation of, among other things, operational efficiency and best practices." The Court issues no opinion on whether Defendants were supposed to retain Armor and whether their failure to do so constitutes spoliation. But the Court will allow Plaintiffs to ask about the failure to preserve the prior operating versions of Armor relevant to this dispute and to identify the steps taken to confirm that there is no version of Armor, except for the current, working version. The Court has reviewed Topic Nos. 23 and 24 and the inquiry above is not duplicative. The Court, however, declines to provide Plaintiffs additional time to inquire about the preservation of Armor. All questioning about the preservation, or lack thereof, of Armor is subject to the 14-hour limit to which the parties previously agreed.

    **IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge

16